**EXHIBIT A**

August 19, 2011

VIA E-MAIL, FEDERAL EXPRESS, AND CERTIFIED MAIL RRR# 70102780000193650654

Mr. David L. Miller
Miller, Scamardi & Carrabba
6525 Washington Avenue
Houston, Texas, 7707-2112
dmiller@millerscammardi.com

RE:    Lawyers' Professional Liability Policy Nos. LAP-0978-07 and LAP-1734-08;
        DISH Network's Professional Liability Claim against T. Wade Welch and Associates,
        Claim No. 0AA4181783; and
        Request for Investigation by Colorado Supreme Court Office of Attorney Regulation,
        Claim No. 0AA548973

Dear Mr. Miller:

I am writing to inform you that OneBeacon Insurance Company ("OneBeacon") has determined that a material misrepresentation was made in the application dated December 6, 2007 and signed by owner, T. Wade Welch, for Lawyers' Professional Liability Policy No. LAP-0978-07 issued to T. Wade Welch & Associates (the "Welch Firm") for the period December 20, 2007 to December 20, 2008 (the "2007 Policy"). Particularly, Question Number 42 in said application read as follows:

> 42.    Have you or any member of your firm ever been disbarred, refused admission to    practice law, suspended, reprimanded, sanctioned, fined, placed on probation,    held in contempt or the subject of any disciplinary complaint, grievance or action    by any court, administrative agency or regulatory body? (If yes, please provide    full details on a separate sheet).

Mr. Welch checked the box indicating "No" to Question Number 42.

Additionally, a material misrepresentation was made in the application dated December 19, 2008 and signed by owner, T. Wade Welch, for Lawyers' Professional Liability Policy No. LAP-1734-08 issued to the Welch Firm for the period December 20, 2008 to December 20, 2009 (the "2008 Policy"). Specifically, Question Number 42. in said application read as follows:

> 42.    Have you or any member of your firm ever been disbarred, refused admission to    practice law, suspended, reprimanded, sanctioned, fined, placed on probation,    held in contempt or the subject of any disciplinary complaint, grievance or action    by any court, administrative agency or regulatory body? (If yes, please provide    full details on a separate sheet).

Mr. Welch checked the box indicating "No" to Question Number 42.

Notwithstanding the above representations by Mr. Welch, OneBeacon became aware on or after May 31, 2011 that, sometime during or before 2005, the United States District Court for the District of Colorado levied personal monetary sanctions in excess of $62,000 against T. Wade Welch and Ross Wooten, an employee of the Welch Firm, pursuant to 28 U.S.C. § 1927 for unreasonably and vexatiously multiplying the proceedings in the case captioned *Dominion Satellite, Inc. v. EchostarSatellite, L.L.C.*. The trial court's factual findings and the sanctions were upheld on appeal in *Dominion Satellite, Inc. v. Echostar Satellite, L.L.C.*, 430 F.3d 1269 (10th Cir. 2005).

Failure to disclose the aforementioned sanctions and fines on the insurance applications in response to the questions set forth above constitutes material misrepresentation in the applications for the 2007 Policy and the 2008 Policy (collectively, the "Policies"). Notice is hereby given under Texas Insurance Code § 705.005 that OneBeacon refuses to be bound by the Policies. As a result, there is no coverage for Claim No. 0AA481783 and Claim No. 0AA548973. Enclosed is a check in the amount of $113,701.00 for return of the premiums paid for the Policies.

If you have any questions, please do not hesitate to contact me.

Sincerely,

Paul M. Ablan
President – Professional Liability Group
OneBeacon Professional Insurance
199 Scott Swamp Road
Farmington, CT 06032
pablan@onebeaconpro.com

**EXHIBIT B**

DISTRICT COURT, ARAPAHOE COUNTY, COLORADO

Court Address: 7325 South Potomac Street
Centennial, Colorado 80112

| Plaintiff: AIR COMMUNICATIONS & SATELLITE, INC., et al.<br><br>vs.<br><br>Defendant: ECHOSTAR SATELLITE LLC, f/k/n EchoStar Satellite Corporation | Case Number:<br><br>2000 CV 3130<br><br>Div.: 201 |
| --- | --- |

---

ORDER -- Re: EchoStar's Motion to Vacate or Modify the Court's 1/5/09
Adverse Inference and Evidence Preclusion Order
and
Class Motion for Additional Discovery Sanctions

---

Having reviewed "EchoStar's Motion to Vacate or Modify Order Imposing Trial Sanctions," and "Class Motion for Additional Sanctions," including the responses, replies and surreply briefs, and otherwise being fully advised of the premise of the Motions, the Court finds as follows:

A.  Standards of Review.

(1)  Reconsideration of previous Orders of the Court.

1.   A party's request for the trial court to reconsider a previous, pre-judgment ruling (in the same case, whether or not the same judge) generally falls within the "law of the case" doctrine "providing that courts must generally follow prior rulings in the same case." In re Estate of Walter, 97 P.3d 188, 191 (Colo. App. 2003).

> A prior ruling on a question of law made at one stage of a case becomes binding precedent to be followed in successive stages of the same litigation. The ruling must be followed as the law of the case unless the court determines that it is no longer sound because of changed conditions, factual errors in the previous ruling, intervening changes in the law, or manifest injustice resulting from the original ruling.

People v. Allen, 885 P.2d 207, 212 (Colo. 1994)(citations omitted).



EXHIBIT
7

### (2)    General rules -- Rule 37(b)(2) sanctions.

2.    In addition to the outline of both the purpose and implementation of sanctions available to the trial court for discovery violations under C.R.C.P. 37(b)(2) in the Court's 1/5/09 Order, ¶¶ 1-6 (which is incorporated by reference as though set forth herein), the Court provides the following outline of "default" as a discovery sanction under the Rule:

a.    In general, the imposition of Rule 37(b)(2) sanctions must be tempered by the severity of the violation and the prejudice to the affected party:

> Generally, sanctions under C.R.C.P. 37 "should be applied in a manner that effectuates proportionality between the sanction imposed and the culpability of the disobedient party." If Rule 37 sanctions are warranted in a case, "the trial judge must craft an appropriate sanction by considering the complete range of sanctions and weighing the sanction in light of the full record in the case." When discovery abuses are alleged, courts should carefully examine whether there is any basis for the allegation and, if sanctions are warranted, impose the least severe sanction that will ensure there is full compliance with a court's discovery orders and is commensurate with the prejudice caused to the opposing party.

Pinkstaff v. Black & Decker (U.S.) Inc., 211 P.3d 698, 702 (Colo. 2009)(citations omitted).

b.    The dispositive sanction of default or dismissal of claims is only imposed in the most extreme circumstances:

> The harshest of all sanctions is dismissal or entry of a default judgment, which should be imposed only in extreme circumstances.
>
> In [Nagy v. District Ct., 762 P.2d 158 (Colo. 1988)], the court held that to impose the sanction of a default judgment against a party for failure to comply with a discovery rule or order, the trial court must make a specific finding of one of three factors on the part of the disobedient party. These factors are:
>
> (1) willfulness or deliberate disobedience of discovery rules; (2) bad faith conduct which is a flagrant disregard or dereliction of one's discovery obligations; or (3) culpable conduct which is more than mere inadvertence or simple negligence but is gross negligence.

Newell v. Engel, 899 P.2d 273, 276 (Colo. App. 1994)(citations omitted). In addition, the trial court may also consider factors other than the conduct of the offending party before entering a default as a discovery sanction:

> We have identified five factors that a district court must consider before dismissing a case or declaring a default:

2

(1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its docket; (3) the risk of prejudice to the other party; (4) the public policy favoring the disposition of cases on their merits; and (5) the availability of less drastic sanctions.

Adriana Intern. Corp. v. Thoeren, 913 F.2d 1406, 1412 (9th Cir. 1990)

    c.     Such extreme circumstances do, however, arise in discovery violation cases, but any decision to enter a default must still be tempered by the prejudice resulting from the offending party's conduct: "Further, the trial court has discretion in choosing discovery sanctions under C.R.C.P. 37, and the finding of willful disobedience justifies imposition of default." Audio-Visual Systems, Inc. v. Hopper, 762 P.2d 696, 697 (Colo. App. 1988).

    d.     Although the burden of proof in assessing default as a discovery sanction in lieu of a lesser sanction is not clear under Colorado state law, the Court finds the reasoning of former federal Magistrate judge Schlatter persuasive in a federal case decided under Colorado law:

> I conclude that the burden of proof for sanctions should be as stringent as the circumstances require. If a judge intends to order a dismissal or default judgment because of discovery violations, the judge should do so only if the judge is impressed to do so by evidence which is clear and convincing. To do otherwise would be to contravene the strong public policy which favors adjudication of cases on their merits. The burden of proof under which a trial is governed is "preponderance of the evidence." To remove from a party the right to have a trial in the first place should require much more than a mere preponderance. Dismissal, default judgment and even presumptions and orders of preclusion are sanctions which deny a party's full rights to a trial on the merits. The elimination of valued rights should not occur in the absence of a degree of proof which reflects the very serious nature of the decision.

> . . . I conclude that dispositive sanctions should only be granted where the moving party persuades the judge to do so by evidence which is clear and convincing, and I conclude that lesser sanctions may be imposed where the judge is persuaded by a preponderance of the evidence. However, in either case, the burden of proof remains with the moving party.

Gates Rubber Co. v. Bando Chemical Industries, Ltd., 167 F.R.D. 90, 108-109 (D.Colo. 1996)(citations omitted).

**B.    Class' Motion for EchoStar's Default on Liability.**

3.    The briefs of the parties are replete with case law fact patterns both supporting and rejecting default as an appropriate sanction for repeated and egregious discovery violations. The only helpful conclusion from these cases in guiding this Court's decision is a validation of the general rule that "[t]rial courts enjoy broad discretion to impose sanctions for spoliation of evidence, even if the evidence was not subject to a discovery order permitting sanctions under C.R.C.P. 37." Castillo v. The Chief Alternative, LLC, 140 P.3d 234, 236 (Colo. App. 2006).

4.    Ironically, the *presumption* of prejudice which the Court found in its 1/5/09 Order, ¶¶ 11-12, was based on the *absence* of documentation which was subject to EchoStar's "draconian" document destruction policy. 1/5/09 Order, ¶ 7. With the revelation on December 31, 2008 that over 1 million documents/e-mails were preserved on the laptop and "hard copy" office files of Mary Davidson, an EchoStar department head, and that the "Davidson laptop" had been in the possession of EchoStar and/or its former counsel since January 2003, that presumption is now the *fact* of prejudice to the Class, at least during the period when the documents were being withheld. Gates Rubber Co. v. Bando Chemical Ind., Ltd., 167 F.R.D. 90, 104 (D.Colo. 1996).

5.    Although the Court does not disagree with the Class' argument that (1) the concealment and mishandling of Davidson's laptop before and after litigation commenced, (2) the concealment and mishandling of Davidson's "hard copy" desk files before and after litigation commenced, and (3) EchoStar's and former counsel's actions in concealing the information on the Davidson laptop provide grounds for the entry of default against EchoStar by the Court, the sanction of default is not mandated by such conduct, but is within the discretion of the Court. Castillo, 140 P.3d at 236.

6.    The Court DENIES the Class' Motion for default on liability for the following reasons:

    a.    Notwithstanding the fact that neither the Class nor the Court has any assurance that all of the relevant and material documents generated and/or received by EchoStar during the period at issue have been disclosed (*see* ¶¶ 8 & 9 below), the destruction of the remaining electronic communications which were not preserved by Ms. Davidson will not prevent the Class from presenting its case at trial.

    b.    In fact, the addition of the evidence preserved by Ms. Davidson to the Class' case-in-chief apparently adds to, rather than subtracts from the Class' ability to pursue its claims against EchoStar.

    c.    "The discretion to be exercised by the courts is one which must balance the rights and obligations of the parties against one another, and against the needs for a fair trial." Gates Rubber, 167 F.R.D. at 102. If the conduct of EchoStar and its former counsel so crippled the Class' ability to mount its case against EchoStar that no other

*remedial* sanction but default would preserve the Class' right to a fair trial, the Court might more seriously consider entering default as a *remedial* sanction, but such is not the case here. The Court finds that, just as the Class was able and in fact willing to move forward with its case prior to December 31, 2008, when the Davidson laptop was disclosed, so it is now able to pursue its claims against EchoStar at trial with the addition of the information disclosed on the Davidson laptop.

   . c.    The apparent grossly negligent, if not willful discovery violations by EchoStar and/or former counsel may more fairly and appropriately be addressed by the Court in a *punitive* sanction involving modifications to the adverse inference instruction to be given by the Court to the jury, and in *additional* restrictions on the admission and use of the compromised "Davidson evidence," (as addressed more completely in the Court's ruling on EchoStar's Motion to vacate or modify the Court's 1/5/09 Order below).

> On the one hand, judges must be careful to tailor the remedy to the problem, and "take pains neither to use an elephant gun to slay a mouse nor to wield a cardboard sword if a dragon looms." The sanction to be applied needs to be one which is "'appropriate to the truth-finding process, not one that ... serve[s] only further to suppress evidence.'"

Gates Rubber, 167 F.R.D. at 106-107 (citations omitted).

    C.    **EchoStar's Motion to Vacate or Mollify the Adverse Inference Instruction and Evidentiary Restrictions.**

7.    EchoStar's primary argument to vacate or mollify the Court's 1/5/09 Order imposing an adverse inference instruction to the jury and restrictions upon the admission of evidence by EchoStar is simply stated:

> This motion seeks to resolve the tension that has emerged between one of the Court's prior sanction orders and a significant change in the facts upon which the order was based. In its January 5, 2009 Order Re Adverse Inference and Evidence Preclusion ("Order"), the Court imposed an adverse inference jury instruction and an evidence preclusion order against EchoStar for the destruction of emails and other electronic documents between and about, the plaintiff-retailers and EchoStar. EchoStar has now produced these documents, which total more than 1.5 million pages, and is asking the Court to revisit one of its prior orders in light of this material change in facts.

[EchoStar's Reply at 2 (emphasis added)].

8.    Based on the (essentially identical) sworn statements of EchoStar's former employees (submitted by EchoStar), EchoStar admits that not all of the electronic mail

5

to and from the Direct and Indirect Retailers was rescued from automatic destruction under the EchoStar document destruction program by Ms. Davidson:

a.     The affidavits of Nancy Doherty and Denyse Anderson (former EchoStar employees working with and for Mary Davidson) indicate that e-mails were retained or destroyed by Ms. Davidson in a two-step process:  (1) At Ms. Davidson's sole discretion, her "habit was to save all non-trivial work related emails" on her computer; and (2) when her hard drive capacity was exceeded, "Ms. Davidson would save old emails into .pst email archive files on her laptop."  [Affid. of Doherty and Anderson, ¶¶ 7 & 8].

b.     In January 2003 (after the period at issue in this case), Ms. Davidson's laptop (presumably containing those e-mails which she initially chose to save, and which she subsequently chose to archive) was taken and held by EchoStar management [Class Motion for Additional Sanctions at 19-20].

c.     On March 17, 2005, EchoStar then gave the Davidson laptop to EchoStar's former counsel, and the contents (including presumably the archived e-mails) were reviewed "for information responsive to discovery in this case." [*Id.* at 21-22].

d.     On December 31, 2008, EchoStar disclosed the existence of electronic and "hard copy" information from what was later identified as the Davidson laptop [EchoStar's Motion at 2-3].

9.     Based on this factual chronology, the Court (and certainly the Class) has <u>no evidence</u> that: (1) all of the electronic communications between EchoStar and the Direct and Indirect Retailers was saved from automatic destruction by Ms. Davidson from November 23, 1997 through August 9, 2002; (2) Ms. Davidson archived all of the saved e-mails to folders in her laptop; (3) EchoStar preserved all of the information on the Davidson laptop during its custody from January 2003 to March 17, 2005; and (4) EchoStar's former counsel preserved all of the information on the Davidson laptop during its custody and review from March 17, 2005 to December 31, 2008.  Again, the Court finds <u>no evidence</u> to confirm <u>any</u> of these allegations by EchoStar.

10.    Consequently, the factual findings of the Special Master in his May 8, 2006 "Amended Order" (as adopted by the Court in its 1/5/09 Order, ¶ 7) have changed only in *quantity*, but not in *quality*.

a.     The Court continues to find that EchoStar willfully and intentionally destroyed electronic communications with its Direct and Indirect Retailers during the period at issue between November 23, 1997 through August 9, 2002, with knowledge that such information was relevant to potential claims by the Retailers.

b.     The Court also now finds that, after litigation commenced in 2000, EchoStar and/or its former counsel willfully withheld both the knowledge and production of the Davidson laptop and its contents (electronic and hard copy), including electronic

6

communications with its Direct and Indirect Retailers during the period at issue between November 23, 1997 through August 9, 2002, until the subsequent disclosure of the existence of this information on December 31, 2008.

11.    Therefore, the Court has no grounds upon which to *reduce* or *modify* the terms and conditions of the Adverse Inference Jury Instruction ("AIJI") or evidentiary restrictions set forth in ¶¶ 18 and 27 of the Court's 1/5/09 Order.

        D.    Modification of the Adverse Inference Instruction and Evidentiary Restrictions.

              (1)    Adverse Inference Jury Instruction.

12.    Based on the evidence presented by both parties and the legal findings set forth above, the Court will modify the AIJI to reflect both the destruction of the electronic communications by EchoStar, and the disclosure of the Davidson laptop information on December 31, 2008.

13.    The final language of the AIJI will be determined by the Court prior to trial based upon input from both parties.  The timing of when the AIJI is presented to the jury, and the number of times that said instruction will be presented is within the sole discretion of the Court, within the following guidelines:

        As discussed above, the trial court has wide discretion to provide an adverse inference instruction. Additionally, "the form and style of the instruction are within the trial court's discretion."

**Aloi v. Union Pacific Railroad Corp.,** 129 P.3d 999,1004 (Colo. 2006)(citation omitted).

14.    As noted in ¶ 18.d. of the 1/5/09 Order, the following language is based on an instruction approved by the Supreme Court in Aloi, and is proposed by the Court:

        It is the duty of a party not to take action that will cause the destruction or loss of relevant evidence, hindering the other side from making its own examination and investigation of all potentially relevant evidence relating to whether that party's fault caused the incident in question.

        The Court has determined that, during the period of time between November 23, 1997 and August 9, 2002, EchoStar willfully destroyed e-mail communications with its Direct and Indirect Retailers, including the plaintiffs.
The Court has also determined that some of the e-mail communications between EchoStar and its Retailers (including the plaintiffs) was preserved by one of EchoStar's management employees on her laptop computer, and that EchoStar

took custody of the laptop computer and the information in January 2003, after litigation in this case commenced in October 2000.

The Court has further determined that EchoStar did not turn the laptop or its contents over to its former attorneys for more than two years, until March 17, 2005, and that EchoStar's former attorneys did not at that time disclose the existence of the laptop or its contents to the Plaintiffs. The Plaintiffs were first made aware of the existence of the laptop and the e-mail communications between EchoStar and its Retailers (including the Plaintiffs) on December 31, 2008; almost eight years after litigation in this case commenced.

You are instructed that, by reason of EchoStar's destruction of some of this electronic evidence, and the fact that EchoStar and its former attorneys did not disclose the remaining electronic evidence in the laptop computer until eight years after the litigation commenced, both the electronic evidence that was destroyed and the electronic evidence that was withheld is unfavorable to EchoStar.

      (2)    Restrictions on the admission and use of evidence.

15.    As noted in ¶ 23 of the 1/5/09 Order, in addition to an Adverse Inference Jury Instruction, Rule 37(b)(2)(B) permits the Court to enter an order preventing the offending party "from introducing designated matters in evidence."

Sanctions which preclude the admission of certain evidence . . . operate in the same fashion as a default judgment. They intrude into the "truth-finding process" of a trial, and represent "grave steps" for a trial judge to take. Such sanctions should be considered only with very great restraint.

**Gates Rubber Co. v. Bando Chemical Ind., Ltd.**, 167 F.R.D. at 106. The federal district court in **Gates** emphasized the fact-finding role of the trial court in crafting the correct Rule 37(b)(2) sanction to repair the damage caused by the spoliation of evidence, based on the "culpability of the offender" and "degree of prejudice or harm which resulted from the actions of the offender." *Id.* at 102. The Court considers that the same standard applies to evidence that has been willfully withheld from disclosure.

16.    In addition to the remedial purpose of Rule 37(b)(2) sanctions in "leveling the playing field" when evidence is destroyed or withheld, Rule 37(b)(2) also contemplates punitive sanctions intended to punish the offender for willfully, recklessly, or with gross negligence destroying or withholding evidence. **Pfantz v. Kmart Corp.**, 85 P.3d 564, 568-569 (Colo. App. 2003), *cert. granted.*[1]

---

[1] Although *certiorari* was granted in Pfantz by the Supreme Court on 3/15/04, no record exists that an opinion by the Supreme Court was ever issued.

17.    As noted by the Special Master in the 5/8/06 Amended Order at 12 (and as adopted in this Court's 1/5/09 Order, ¶ 24), the Court has held that EchoStar's destruction of the e-mail communications with its retailers is "highly prejudicial" to the plaintiffs. This rationale applies, even though many of the documents may have been resurrected from the Davidson laptop, because EchoStar cannot dispute that many other documents were automatically destroyed during the November 23, 1997 through August 9, 2002 period as a result of its "draconian" document destruction policy. Further, the fact that EchoStar and its former counsel had the Davidson laptop in their exclusive possession from January 2003 to December 31, 2008, raises especially troubling questions about what portion of Ms. Davidson's originally preserved e-mails were ultimately disclosed to the Class after December 31, 2008.

18.    As for the electronic and "hard copy" information which was preserved in the Davidson laptop and has now been disclosed to the Class, the Court also finds that the Class was "highly prejudiced" by EchoStar's failure to disclose the existence of this evidence for six years. The failure of the Court to impose some type of punitive sanction against EchoStar (for its own conduct from January 2003 to March 17, 2005, and former counsel's conduct from March 17, 2005 to December 31, 2008) for willfully concealing this evidence would assume that remediation to the Class in the form of (1) now being able to review the information and (2) being reimbursed for fees and costs is an adequate sanction. The Court cannot adopt that assumption.

19.    Based on the degree of the defendant's culpability in destroying some of the e-mail communications (willful) and in failing to disclose the existence of the balance of the e-mail communications in the Davidson laptop for six years (bad faith), and the degree of prejudice to the plaintiffs resulting from those actions (high), the Court finds that restrictions on EchoStar's admission and use of specific evidence is both necessary and justified in order to implement the Adverse Inference Jury Instruction, pursuant to Rule 37(b)(2)(A).

20.    Without additional evidentiary restrictions in place which will protect the Class from prejudice arising from the destroyed e-mail communications, and which will adequately punish EchoStar for its own conduct from January 2003 to March 17, 2005, and the conduct of former counsel from March 17, 2005 to December 31, 2008, the AIJI will be a sanction without consequence to EchoStar.

21.    With that said, the evidentiary restrictions which the Court will place on EchoStar are confined to those issues where the Class has been prejudiced by EchoStar's conduct (and the conduct of former counsel) involving communications between EchoStar and the Indirect and Direct Retailers during the November 23, 1997 through August 9, 2002 period. Evidence from other sources (i.e., not directly involving said communications), whether testimonial or documentary, may be introduced by EchoStar without restriction under this Order (subject to other evidentiary objections, as with all other evidence).

9

22.  Based on these premises, the Court will exclude and/or manage the following types of evidence at trial in the manner indicated:

a.  No evidentiary restrictions under this Order are placed on evidence introduced by EchoStar which is not part of a communication between EchoStar and the Indirect and Direct Retailers during the November 23, 1997 through August 9, 2002 period. Evidence from other sources (i.e., not directly involving said communications), whether testimonial or documentary, may be introduced by EchoStar without restriction under this Order (subject to other evidentiary objections, as with all other evidence).

b.  Forty-five (45) days prior to trial, the Class will finalize and file its exhibit list (hereinafter "Class Exhibit List"), including, *inter alia*, all exhibits from the Davidson laptop which will be uniquely and individually identified in the Class Exhibit List as from that source (hereinafter "Davidson Exhibits").

c.  Forty-five (45) days prior to trial, the Class will finalize and file its witness list ("will call" and "may call" divisions will be required)(hereinafter "Class Witness List").

d.  EchoStar may not introduce any Davidson Exhibits at trial, unless: (1) that exhibit is contained in the Class Exhibit List, or has otherwise been previously introduced by the Class at trial; or (2) that exhibit was previously disclosed in "normal" discovery to the Class prior to December 31, 2008.

e.  The testimony of defense expert and lay witnesses regarding or relying upon the impact on (or the reaction of) the Retailers to EchoStar's unilateral changes in their contractual relationships from November 23, 1997 through August 2, 2002, is excluded, except to the extent that such testimony is based on: (1) exhibits identified in the Class Exhibit List; or (2) witnesses listed on the Class Witness List.[2]

---

[2] The rationale underlying this restriction on expert and lay testimony is as follows: Lay witnesses are anticipated to testify as to their own recollections, impressions, etc., about the changes in the contracts, and experts are anticipated to rely on witness testimony and e-mail communications to form their opinions. Since the lay testimony and e-mail communications upon which the experts rely may have been contradicted or modified by documents destroyed by EchoStar, such lay testimony and expert opinions about these recollections and e-mail communications may only be based on evidence presented by the Class.

By Order of the Court this 2nd day of April, 2010.

John L. Wheeler
District Court Judge

[Note: Counsel for the moving party (or the party if unrepresented) is instructed by the Court to serve a copy of this order on any *pro se* party within ten (10) days of receipt.]

11

**EXHIBIT C**

FILED IN THE
DISTRICT COURT
ARAPAHOE COUNTY COLO

<table>
<tr><td>

DISTRICT COURT, ARAPAHOE COUNTY
STATE OF COLORADO
7325 S. Potomac Street
Englewood, CO 80112

Plaintiffs:
Air Communications & Satellite, Inc., et al

Defendant:
EchoStar Satellite Corporation

</td><td>

09 JAN -9  PH 3: 33
EFILED Document
CO Arapahoe County District Court 18th Jd
Filing Date: Jan 9 2009 12:34PM MST
Filing ID: 23265028
▲ CHAMBERS ONLY ▲

Case Number: 00 CV 3130

Division: 201

</td></tr>
</table>

## ORDER

THE SPECIAL MASTER having reviewed Plaintiffs' Motion for Emergency Relief to

Preserve Evidence and Request for Forthwith Hearing filed on January 4th, 2009, having reviewed

the file, and having conducted a status conference, enters the following order jointly proposed and

agreed by the parties:

    1)    Laptop Computer in the Possession of the T. Wade Welch law firm

        a.    Copying

EchoStar has disclosed the existence of a laptop computer, in the possession of the T. Wade

Welch law firm, that may contain discoverable information not previously produced in discovery.

On January 7, 2009, an employee of Plaintiffs' consultant, e-fense, Inc., and an employee of

EchoStar's consultant, Navigant Consulting, Inc., met at the law offices of T. Wade Welch located

at 2401 Fountainview, Suite 700, Houston, Texas 77057, for the purpose of making mirror image

backup copies of all electronically stored data on this laptop. At that meeting, the e-fense

representative explained the copying protocol to be used to the Navigant representative before the

copying occurred. The e-fense representative then made three identical mirror image copies of all

1


EXHIBIT
6

electronically stored data on the laptop, and, from one of the copies, he generated and printed a complete list of files on the laptop. The e-fense representative provided one copy of the mirror image backup and a copy of the list of files to the Navigant representative, along with a chain of custody form. The e-fense representative also placed in a package: 1) Plaintiffs' copy of the mirror image backup and Plaintiffs' copy of the list of files, as well as a chain of custody form, 2) the Special Master's copy of the mirror image backup and the Special Master's copy of the list of files, as well as a chain of custody form, and 3) the laptop computer files, as well as a chain of custody form, for delivery, via Federal Express mail, addressed to:

> Special Master Howard M. Kirshbaum
> Judicial Arbiters Group
> 1601 Blake Street, Suite 400
> Denver, Colorado 80202-1328

b. Privilege Review

Plaintiffs have requested EchoStar to expeditiously review the file list for any claim of privilege. If any privilege is claimed in any of the file names, EchoStar shall promptly prepare and file a privilege log in compliance with C.R.C.P. 26(c)(5). If no privilege is claimed, EchoStar and Plaintiffs will jointly request the Special Master to release Plaintiffs' copy of the file list to Plaintiffs' counsel. If any privilege is claimed in any of the file names, along with the filing of its privilege log, EchoStar will provide Plaintiffs a redacted copy of the file list, with the only redactions being the file names for which privilege is claimed. Plaintiffs reserve the right to seek relief with respect to any claims of privilege.

With respect to the files, EchoStar shall identify on a daily basis any files that have been reviewed and for which no claim of privilege is made. With EchoStar's identification of any files

or portions of files as discoverable and non-privileged, EchoStar shall transmit a copy of those files, made from EchoStar's mirror image copy, to Plaintiffs' counsel. If any claim of privilege or non-discoverability is made with respect to any files or portions of files, EchoStar shall promptly prepare and file a privilege log in compliance with C.R.C.P. 26(c)(5). Plaintiffs reserve the right to seek relief with respect to any claims of privilege or non-discoverability. Upon the conclusion of EchoStar's review, the parties shall confer further regarding a method for release of Plaintiffs' mirror image copy in the possession of the Special Master, redacted for privilege.

   2)   Documents in the Possession of T. Wade Welch law firm

        a.   Removal and Shipment

        EchoStar's Denver counsel have disclosed a large number of documents, possibly as many as 80 to 100 or more than 100 boxes, in the possession of the T. Wade Welch law firm, that may contain discoverable information not previously produced in discovery. On January 8, 2009, at approximately 11:00 a.m., a business partner of Litigation Solution, Inc. (LSI), Lighthouse Legal, shall be permitted to enter the premises of the of the law offices of T. Wade Welch located at 2401 Fountainview, Suite 700, Houston, Texas 77057, for purposes of securing all of the boxes for shipment, via Federal Express delivery, to the offices of LSI in Denver, Colorado. Before removal of the boxes from the premises for shipment, LSI's designated agent may videotape the storage of the boxes to create a record of their location, condition and appearance at the T. Wade Welch law firm.

        b.   Inspection, Bates Labeling, Scanning and Future Secured Storage.

        The boxes of documents shall be delivered to LSI's Denver office. Following delivery of the documents to Denver, counsel for both sides will set a time to meet to inspect the condition of the

3

documents and for EchoStar's Denver counsel to generally examine the contents of the boxes in the presence of Plaintiffs' counsel. Following this meeting, unless otherwise agreed by the parties, the originals will be Bates labeled and then scanned by LSI. The original documents will be stored in a secure location at LSI's Denver offices until further order of the Special Master and the disks containing the scanned documents will be provided as set forth in subparagraph c. below.

c.   Review for Discoverability, Work Product and Privilege.

Unless the parties agree to a different procedure following the above described meeting, on a continuing basis until the scanning of the documents is completed, LSI shall deliver to EchoStar disks containing scanned images of the documents.  EchoStar shall review those disks for discoverability, work product and privilege, identifying for LSI the documents for which any protection is claimed, so that LSI can prepare and transmit to Plaintiffs' counsel disks containing non-privileged documents. EchoStar shall identify any documents for which protection is claimed, including any assertion that any documents or any portion of any documents and shall prepare and file a privilege log in compliance with C.R.C.P. 26(c)(5) within ten (10) business days of the receipt of each disk from LSI. In addition to listing any claims of privilege and work product, EchoStar will list any claims of non-discoverability on the privilege log.  Plaintiffs reserve the right to seek relief with respect to any claims of privilege, work product or non-discoverability.

3)   Electronically Stored Information at EchoStar

EchoStar's Denver counsel have disclosed the existence of electronically stored information on file servers at EchoStar and tape backups stored in locked containers at EchoStar and in offsite storage.  EchoStar has restored data from five (5) 2002 back up tapes and has delivered those tapes to the Special Master.  EchoStar's counsel is currently reviewing the file servers and restored data

4

to determine whether there exists any other discoverable information not previously produced. The parties have agreed to confer further regarding preservation and restoration of back up tapes and Plaintiffs' request for mirror image copying, for preservation purposes, of file servers at EchoStar that potentially contain relevant information not previously produced in discovery.

4)    Preservation Order

The Court and the Special Master have previously entered orders with regard to the duty to preserve evidence. The Special Master reiterates and restates those prior orders.

5)    Costs

By agreement of the parties, EchoStar is ordered to pay the costs incurred in connection with the imaging and shipping the images of the laptop hard drive on January 7, 2009 and the cost of shipping, Bates labeling, scanning, and storage of the boxes of paper documents located at the T. Wade Welch firm. If Plaintiffs wish to move for additional costs as a result of the matters addressed in this order, they shall first confer with counsel for Defendant to attempt to reach agreement on those costs, and if agreement cannot be reached, Plaintiffs may file an appropriate motion.

DONE this 8th day of January, 2009.

Howard M. Kirshbaum

Howard M. Kirshbaum
Special Master

5

## CERTIFICATE OF MAILING AND FACSIMILE

I hereby certify that on this, the 8th day of December, 2008, I faxed by facsimile transmission and deposited in the United States mail, postage pre-paid, a true and correct copy of the foregoing Order to the following:

Robert F. Hill, Esq.
Hill & Robbins, P.C.
1441 Eighteenth Street, Suite 100
Denver, Colorado 80202-5932
FAX: 303-296-2388

John Purvis, Esq.
Purvis Gray Murphy, LLP
1050 Walnut Street, Suite 501
Boulder, Colorado 80302
FAX: 303-440-3688

Joseph H. Boyle, Esq.
Damon Meeks, Esq.
David M. Noll, Esq.
T. Wade Welch & Associates
2401 Fountainview, Suite 215
Houston, Texas 77057
FAX: 713-952-4994

Shelley B. Don, Esq.
Watson W. Galleher, Esq.
Don Galleher & Saliman, P.C.
1737 Gaylord St.
Denver, CO 80206
FAX: 303-572-0900

Fred Thompson, Esq.
Fred Baker, Esq.
Motley Rice, LLC
28 Bridgeside Blvd.
Mt. Pleasant, SC 29464
Fax: 843-216-9440

Todd A. Jansen, Esq.
Law Office of Todd A. Jansen
2455 S. Oakland Circle
Aurora, CO 80014
FAX: 303-337-1007

John B. Moorhead, Esq.
Paul Karlsgodt, Esq.
Baker & Hostetler, LLP
303 E. 17th Avenue, Suite 1100
Denver, CO 80203
FAX: 303-861-7805

Jeffrey Chase, Esq.
Lawrence Katz, Esq.
Jacobs Chase Frick Kleinkopf & Kelley, LLC
1050 17th Street, Suite 1500
Denver, CO 80265

*Original sent to:*

Honorable Michael J. Spear
Arapahoe County District Court
Arapahoe County Justice Center
7325 S. Potomac Street
Division 201
Centennial, Colorado 80112
VIA MAIL ONLY

Lisa DeLeon, Administrative Clerk
JUDICIAL ARBITER GROUP, INC.

**EXHIBIT D**

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ONEBEACON INSURANCE COMPANY, | : | CIVIL ACTION NO. |
| Plaintiff, | : | 4:11-cv-03061-GHM |
| | : | |
| V. | : | |
| | : | |
| T. WADE WELCH & ASSOCIATES ET AL., | : | |
| | : | |
| Defendants. | : | |

## DECLARATION OF DAVID M. DINEEN

I, David M. Dineen, do depose and state as follows:

1.      I am over the age of eighteen, and I make the statements contained herein under the pains and penalties of perjury.

2.      I am employed by the plaintiff in the above-captioned action, OneBeacon Insurance Company ("OneBeacon"), and my title is Claims Counsel.

3.      I have reviewed OneBeacon's claims file regarding Claim No. 0AA548973, and the statements contained herein are based on that review and/or my personal knowledge of Claim No. 0AA548973.

4.      Claim No. 0AA548973 is a claim made by OneBeacon's insured, T. Wade Welch & Associates, pursuant to Lawyers' Professional Liability Policy Number LAP-1734-08 (the "2008 Policy"), which policy was issued by OneBeacon to T. Wade Welch & Associates for the policy period of December 20, 2008 to December 20, 2009.

5.      In connection with Claim No. 0AA548973, T. Wade Welch & Associates requested that OneBeacon provide coverage to it under the 2008 Policy for certain

proceedings related to the matter captioned *Air Communication & Satellite, Inc. v. Echostar Satellite Corporation*, Case No. 00CV3130 (Colo. St. Dist. Ct., Arapahoe County).

6. Prior to rescinding the 2008 Policy, OneBeacon provided coverage for Claim No. 0AA548973 under the 2008 Policy. As a result, OneBeacon paid out a sum of money on behalf of T. Wade Welch & Associates in excess of $21,000.00 in connection the proceedings referred to above, which amount was not enough to exhaust the limits of the coverage for that claim.

Signed under the pains and penalties of perjury at Boston, Massachusetts, this 12th day of December, 2011.

_____
David M. Dineen

**EXHIBIT E**

## TOLLING AGREEMENT

This Tolling Agreement ("Agreement") is made and entered into by and between Dish Network L.L.C. f/k/a EchoStar Satellite Corp. ("Dish"), on the one hand, and Chad Hagan, on the other, collectively the "Parties".

WHEREAS, Hagan, as an associate of T. Wade Welch and Associates, provided legal advice and services to Dish in connection with the lawsuit know as *Air Communication & Satellite, Inc., et al. v. EchoStar Satellite Corporation, District Court, Arapahoe County, Colorado, Case Number 2000CV3130* (the "Legal Services");

WHEREAS, Dish is considering whether it may have claims against Hagan relating to the Legal Services; and

WHEREAS, Dish has not commenced or threatened to commence a proceeding to assert any claims or causes of action against Hagan at this time.

THEREFORE, Dish and Hagan agree as follows:

1.    The Parties agree that each and every statute of limitations, statute of repose and time based defense including the equitable defense of laches or any other defense based upon the passage of time (hereinafter a "Time Based Defense") applicable to any claim or causes of action that Dish has or may have against Hagan relating to or arising from the Legal Services, shall be tolled and suspended for the period between the date this Agreement is fully executed by all Parties (the "Effective Date"), through the Termination Date defined in paragraph 5 below.

2.    This Agreement is not intended to limit, expand or modify any legal or equitable right, obligation or defense of any party hereto except those relating to a Time Based Defense.

3.    This Agreement shall not revive any claims which, prior to the Effective Date, may have been barred by a Time-Based Defense.

4. Dish covenants that during the term of this Tolling Agreement it will not commence any proceeding against Hagan relating to or arising out of the Legal Services.

5. Subject to paragraph 16, below, this Agreement will terminate ninety (90) days after receipt of a final, non-appealable judgment in *Air Communication & Satellite, Inc., et al. v. EchoStar Satellite Corporation, District Court, Arapahoe County, Colorado, Case Number 2000CV3130,* unless terminated earlier by providing notice, which notice shall be effective and constitute a termination of this Agreement sixty (60) days after notice is sent by the terminating party (the "Termination Date"). Notice shall be sent by the terminating party as follows:

If to Dish:

DISH Network L.L.C.
Attention:    Jeffrey Blum, Esq.
              Emily Pastorius, Esq.
9601 South Meridian Boulevard
Englewood, CO 80112

with a copy to:

Jeffrey Chase, Esq.
Jacobs Chase Frick Kleinkopf & Kelley, LLC
1050 17th St., Suite 1500
Denver, CO 80265

If to Hagan:

Chad Hagan
Hagan Noll & Boyle
2 Memorial City Plaza
820 Gessner, Suite 940
Houston, Texas 77024

6. By entering into this Agreement, none of the Parties hereto makes any admissions or representations with regard to the date or dates any applicable statute of limitations or statute of repose may expire.

2

7. By entering into this Agreement, none of the Parties are waiving, and this Agreement shall not act as a waiver, of any applicable privileges, including the attorney-client privilege, the attorney-work production doctrine/privilege or any other applicable privilege or right to confidentiality that the Parties may be entitled to under applicable law.

8. Except as otherwise expressly provided herein, nothing in this Agreement shall constitute a waiver, release or relinquishment of any right, claim, cause of action, counterclaim or defense of any of the Parties.

9. This Agreement does not constitute an admission or acknowledgment of liability on the part of Hagan. Nor does it constitute an admission or acknowledgment on the part of Dish or Hagan that any statute of limitations or statute of repose has run or is running that would require Dish to commence and/or file an action or proceeding.

10. Neither this Agreement nor any action taken pursuant to this Agreement shall be offered or received in evidence in any action or proceeding for any purpose other than the issue of a Time Based Defense.

11. This Agreement shall be binding upon and inure to the benefit of the Parties, their predecessors, past and future affiliates, successors, assigns and heirs.

12. This Agreement shall be governed by the laws of the State of Colorado.

13. This Agreement is fully integrated and sets forth the entire agreement between the Parties relating to the timeliness of the assertion of claims with respect to the Legal Services. The Parties warrant and represent there are no prior agreements or understandings between the Parties relating to the timeliness of the assertion of any claims with respect to the Legal Services. This Agreement cannot be modified, changed or amended, except in a writing signed by all Parties effected by any such modification, change or amendment.

14.     Each provision of this Agreement shall be interpreted in such a manner as to be effective and valid under applicable law, but if any provision under this Agreement is held to be prohibited or unenforceable in any jurisdiction, such provision shall, as to such jurisdiction, be ineffective only to the extent of such prohibition or unenforceability without invalidating the remainder of such provision or the remaining provisions hereof or affecting the validity or enforceability of such provisions in any other jurisdiction.

15.     This Agreement may be executed in counterparts, each of which shall constitute an original and all of which taken together shall constitute a single instrument.

16.     Unless terminated earlier pursuant to the provisions of paragraph 5, above, this Agreement shall expire two years from the date of its execution unless the Parties otherwise agree in writing.

AGREED TO BY:

DISH NETWORK L.L.C.

By:_____

Title: Executive Vice President & General Counsel

Execution
Date:_____12/15/2009_____

CHAD HAGAN

_____

Execution
Date:_____12/9/09_____

4

## TOLLING AGREEMENT

This Tolling Agreement ("Agreement") is made and entered into by and between Dish Network L.L.C. f/k/a EchoStar Satellite Corp. ("Dish"), on the one hand, and David Noll, on the other, collectively the "Parties".

WHEREAS, Noll, as an associate of T. Wade Welch and Associates, provided legal advice and services to Dish in connection with the lawsuit know as *Air Communication & Satellite, Inc., et al. v. EchoStar Satellite Corporation, District Court, Arapahoe County, Colorado, Case Number 2000CV3130* (the "Legal Services");

WHEREAS, Dish is considering whether it may have claims against Noll relating to the Legal Services; and

WHEREAS, Dish has not commenced or threatened to commence a proceeding to assert any claims or causes of action against Noll at this time.

THEREFORE, Dish and Noll agree as follows:

1.     The Parties agree that each and every statute of limitations, statute of repose and time based defense including the equitable defense of laches or any other defense based upon the passage of time (hereinafter a "Time Based Defense") applicable to any claim or causes of action that Dish has or may have against Noll relating to or arising from the Legal Services, shall be tolled and suspended for the period between the date this Agreement is fully executed by all Parties (the "Effective Date"), through the Termination Date defined in paragraph 5 below.

2.     This Agreement is not intended to limit, expand or modify any legal or equitable right, obligation or defense of any party hereto except those relating to a Time Based Defense.

3.     This Agreement shall not revive any claims which, prior to the Effective Date, may have been barred by a Time-Based Defense.

4. Dish covenants that during the term of this Tolling Agreement it will not commence any proceeding against Noll relating to or arising out of the Legal Services.

5. Subject to paragraph 16, below, this Agreement will terminate ninety (90) days after receipt of a final, non-appealable judgment in *Air Communication & Satellite, Inc., et al. v. EchoStar Satellite Corporation, District Court, Arapahoe County, Colorado, Case Number 2000CV3130*, unless terminated earlier by providing notice, which notice shall be effective and constitute a termination of this Agreement sixty (60) days after notice is sent by the terminating party (the "Termination Date"). Notice shall be sent by the terminating party as follows:

If to Dish:

DISH Network L.L.C.
Attention: Jeffrey Blum, Esq.
Emily Pastorius, Esq.
9601 South Meridian Boulevard
Englewood, CO 80112

With a copy to:

Jeffrey Chase, Esq.
Jacobs Chase Frick Kleinkopf & Kelley, LLC
1050 17th St., Suite 1500
Denver, CO 80265

If to Noll:

David Noll
Hagan Noll & Boyle LLC
2 Memorial City Plaza
820 Gessner, Suite 940
Houston, Texas 77024

6. By entering into this Agreement, none of the Parties hereto makes any admissions or representations with regard to the date or dates any applicable statute of limitations or statute of repose may expire.

7. By entering into this Agreement, none of the Parties are waiving, and this Agreement shall not act as a waiver, of any applicable privileges, including the attorney-client privilege, the attorney-work production doctrine/privilege or any other applicable privilege or right to confidentiality that the Parties may be entitled to under applicable law.

8. Except as otherwise expressly provided herein, nothing in this Agreement shall constitute a waiver, release or relinquishment of any right, claim, cause of action, counterclaim or defense of any of the Parties.

9. This Agreement does not constitute an admission or acknowledgment of liability on the part of Noll. Nor does it constitute an admission or acknowledgment on the part of Dish or Noll that any statute of limitations or statute of repose has run or is running that would require Dish to commence and/or file an action or proceeding.

10. Neither this Agreement nor any action taken pursuant to this Agreement shall be offered or received in evidence in any action or proceeding for any purpose other than the issue of a Time Based Defense.

11. This Agreement shall be binding upon and inure to the benefit of the Parties, their predecessors, past and future affiliates, successors, assigns and heirs.

12. This Agreement shall be governed by the laws of the State of Colorado.

13. This Agreement is fully integrated and sets forth the entire agreement between the Parties relating to the timeliness of the assertion of claims with respect to the Legal Services. The Parties warrant and represent there are no prior agreements or understandings between the Parties relating to the timeliness of the assertion of any claims with respect to the Legal Services. This Agreement cannot be modified, changed or amended, except in a writing signed by all Parties effected by any such modification, change or amendment.

3

14.     Each provision of this Agreement shall be interpreted in such a manner as to be effective and valid under applicable law, but if any provision under this Agreement is held to be prohibited or unenforceable in any jurisdiction, such provision shall, as to such jurisdiction, be ineffective only to the extent of such prohibition or unenforceability without invalidating the remainder of such provision or the remaining provisions hereof or affecting the validity or enforceability of such provisions in any other jurisdiction.

15.     This Agreement may be executed in counterparts, each of which shall constitute an original and all of which taken together shall constitute a single instrument.

16.     Unless terminated earlier pursuant to the provisions of paragraph 5, above, this Agreement shall expire two years from the date of its execution unless the Parties otherwise agree in writing.

AGREED TO BY:

DISH NETWORK L.L.C.

By:_____

Title:Executive Vice President &
      General Counsel
Execution
Date:_____12/15/2009_____

DAVID NOLL

_____

Execution
Date:____12/9/2009_____

4

<u>TOLLING AGREEMENT</u>

This Tolling Agreement ("Agreement") is made and entered into by and between Dish Network L.L.C. f/k/a EchoStar Satellite Corp. ("Dish"), on the one hand, and Joseph Boyle, on the other, collectively the "Parties".

WHEREAS, Boyle, as an associate of T. Wade Welch and Associates, provided legal advice and services to Dish in connection with the lawsuit know as *Air Communication & Satellite, Inc., et al. v. EchoStar Satellite Corporation, District Court, Arapahoe County, Colorado, Case Number 2000CV3130* (the "Legal Services");

WHEREAS, Dish is considering whether it may have claims against Boyle relating to the Legal Services; and

WHEREAS, Dish has not commenced or threatened to commence a proceeding to assert any claims or causes of action against Boyle at this time.

THEREFORE, Dish and Boyle agree as follows:

1.   The Parties agree that each and every statute of limitations, statute of repose and time based defense including the equitable defense of laches or any other defense based upon the passage of time (hereinafter a "Time Based Defense") applicable to any claim or causes of action that Dish has or may have against Boyle relating to or arising from the Legal Services, shall be tolled and suspended for the period between the date this Agreement is fully executed by all Parties (the "Effective Date"), through the Termination Date defined in paragraph 5 below.

2.   This Agreement is not intended to limit, expand or modify any legal or equitable right, obligation or defense of any party hereto except those relating to a Time Based Defense.

3.   This Agreement shall not revive any claims which, prior to the Effective Date, may have been barred by a Time-Based Defense.

4. Dish covenants that during the term of this Tolling Agreement it will not commence any proceeding against Boyle relating to or arising out of the Legal Services.

5. Subject to paragraph 16, below, this Agreement will terminate ninety (90) days after receipt of a final, non-appealable judgment in *Air Communication & Satellite, Inc., et al. v. EchoStar Satellite Corporation, District Court, Arapahoe County, Colorado, Case Number 2000CV3130,* unless terminated earlier by providing notice, which notice shall be effective and constitute a termination of this Agreement sixty (60) days after notice is sent by the terminating party (the "Termination Date"). Notice shall be sent by the terminating party as follows:

If to Dish:

> DISH Network L.L.C.
> Attention: Jeffrey Blum, Esq.
> Emily Pastorius, Esq.
> 9601 South Meridian Boulevard
> Englewood, CO 80112
>
> with a copy to:
>
> Jeffrey Chase, Esq.
> Jacobs Chase Frick Kleinkopf & Kelley, LLC
> 1050 17th St., Suite 1500
> Denver, CO 80265

If to Boyle:

> Joseph Boyle
> Boyle Noll & Boyle
> 2 Memorial City Plaza
> 820 Gessner, Suite 940
> Houston, Texas 77024

6. By entering into this Agreement, none of the Parties hereto makes any admissions or representations with regard to the date or dates any applicable statute of limitations or statute of repose may expire.

2

7.     By entering into this Agreement, none of the Parties are waiving, and this Agreement shall not act as a waiver, of any applicable privileges, including the attorney-client privilege, the attorney-work production doctrine/privilege or any other applicable privilege or right to confidentiality that the Parties may be entitled to under applicable law.

8.     Except as otherwise expressly provided herein, nothing in this Agreement shall constitute a waiver, release or relinquishment of any right, claim, cause of action, counterclaim or defense of any of the Parties.

9.     This Agreement does not constitute an admission or acknowledgment of liability on the part of Boyle. Nor does it constitute an admission or acknowledgment on the part of Dish or Boyle that any statute of limitations or statute of repose has run or is running that would require Dish to commence and/or file an action or proceeding.

10.    Neither this Agreement nor any action taken pursuant to this Agreement shall be offered or received in evidence in any action or proceeding for any purpose other than the issue of a Time Based Defense.

11.    This Agreement shall be binding upon and inure to the benefit of the Parties, their predecessors, past and future affiliates, successors, assigns and heirs.

12.    This Agreement shall be governed by the laws of the State of Colorado.

13.    This Agreement is fully integrated and sets forth the entire agreement between the Parties relating to the timeliness of the assertion of claims with respect to the Legal Services. The Parties warrant and represent there are no prior agreements or understandings between the Parties relating to the timeliness of the assertion of any claims with respect to the Legal Services. This Agreement cannot be modified, changed or amended, except in a writing signed by all Parties effected by any such modification, change or amendment.

3

14.    Each provision of this Agreement shall be interpreted in such a manner as to be effective and valid under applicable law, but if any provision under this Agreement is held to be prohibited or unenforceable in any jurisdiction, such provision shall, as to such jurisdiction, be ineffective only to the extent of such prohibition or unenforceability without invalidating the remainder of such provision or the remaining provisions hereof or affecting the validity or enforceability of such provisions in any other jurisdiction.

15.    This Agreement may be executed in counterparts, each of which shall constitute an original and all of which taken together shall constitute a single instrument.

16.    Unless terminated earlier pursuant to the provisions of paragraph 5, above, this Agreement shall expire two years from the date of its execution unless the Parties otherwise agree in writing.

AGREED TO BY:

DISH NETWORK L.L.C.

By:_____

Title: Executive Vice President &
      General Counsel

Execution
Date:   12/15/2009

JOSEPH BOYLE

Execution
Date:   12/09/09

4