**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| **ONEBEACON INSURANCE COMPANY** | § | **Civil Action No.** |
| | § | **4:11-CV-03061-GHM** |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | |
| | § | |
| **T. WADE WELCH & ASSOCIATES,** | § | |
| **ROSS W. WOOTEN, T. WADE WELCH,** | § | |
| **AND JOSEPH H. BOYLE** | § | |
| | § | |
| **Defendants.** | § | |

---

**DEFENDANTS T. WADE WELCH & ASSOCIATES AND T. WADE WELCH'S REPLY
TO ONEBEACON'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS'
MOTIONS TO DISMISS PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE
8(a), 9(b) & 12(b)(6)**

---

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

Come now, T. Wade Welch & Associates and T. Wade Welch, and file this Reply to OneBeacon's Memorandum of Law in Opposition to Defendants' Motions to Dismiss Pursuant to Federal Rules of Civil Procedure 8(a), 9(b), & 12(b)(6).[1]  (Dkt. No. 19).  In support thereof, T. Wade Welch & Associates and T. Wade Welch state as follows:

---

[1] This reply addresses OneBeacon's response relating to *Defendants T. Wade Welch & Associates and T. Wade Welch's Motion to Dismiss Pursuant to Federal Rules of Civil Procedure 8(a), 9(b) & 12(b)(6)*.  The Welch Defendants filed a separate reply relating to the *Motion to Dismiss OneBeacon's Fifth Cause of Action Pursuant to Federal Rule of Civil Procedure 12(b)(1)*.  *See* Dkt. No. 33.

<u>**TABLE OF CONTENTS**</u>

I.    **INTRODUCTION**………………………………………………………………..1

    A.    Nature And Stage of The Proceeding…………………………………………..1

    B.    Statement of Issues………………………………………………………………..1

        1.    ISSUE ONE:  Consistent with Fifth Circuit Precedent, can the Welch Defendants attach exhibits in support of its Motion to Dismiss when they are (1) documents central to OneBeacon's claim; (2) matters the Court may take judicial notice of; or (3) where there is no genuine dispute as to their authenticity?.........................................................................................1

        2.    ISSUE TWO:  In an attempt to deny coverage, can OneBeacon cherry-pick a few words out of their context  of  policy application Question 42 and the policy as a whole in violation of well-settled insurance contract interpretation law?.........................................................................................2

        3.    ISSUE THREE:  Must the Court follow Texas Supreme Court Precedent and Construe the Term "Sanction" by Reference to the Surrounding Words and in the Context of the Policy Application and the Policy as a Whole?.......................................................................................................2

        4.    ISSUE FOUR:   Must the Court Follow Fundamental Principles of Contract Interpretation and Construe the Application Question or Issue in Favor of the Insured if Question 42 is Ambiguous?..................................3

        5.    ISSUE FIVE:  Can OneBeacon, after failing to dispute that Veronica M. Bates—the attorney-in-charge on this case—had knowledge of the 2004 *Dominion* Attorneys Fees Order seven (7) months prior to the attempted rescission, fail to plead compliance with the 91-day notice requirement, and simply point to a hearsay letter that itself is a fraud in order to defeat a proper Rule 12(b)(6) Motion?....................................................................3

        6.    ISSUE SIX:  Can the immateriality of the 2004 *Dominion* Attorneys Fees Order be determined by this Court as a matter of law when OneBeacon wrote the initial policy on an application that does not mention the term "sanction" once and that OneBeacon does not take issue with?  ................4

        7.    ISSUE SEVEN:  Can OneBeacon allege fraud and intent to deceive based upon undisclosed "information and belief" in violation of the Federal Rules of Civil Procedure and Fifth Circuit precedent when it had access to the Welch Defendants information and files?  ...........................................5

8.      ISSUE EIGHT:  Must the Court follow OneBeacon's command that only Exclusion VII.A applied to Wooten's conduct when OneBeacon took control of the defense and then  notified the Welch Defendants in its purported reservation of rights letter that Wooten's conduct implicated the intentional act exclusion (VII.B) and the concomitant innocent insured exception with no reference to Exclusion VII.A? ...............................5

9.      ISSUE NINE:  Should the Court follow the Federal District Court for the District of Connecticut in finding that where a lawyer conceals wrongful acts from his partners and other lawyers that the innocent insured exception applies to the prior knowledge exclusion even where  the innocent insured exception is not explicitly set forth (but is in the intentional act exclusion)? ........................................................6

10.     ISSUE TEN:  Can OneBeacon be allowed to argue that "you" in the context of Exclusion VII really means "any of you" when it uses the phrase "any of you" and "each of you" in other portions of the policy when courts have held it is clear that "you" when not specifically mentioning all insureds means only the insured seeking protection under the policy? ........................................................7

11.     ISSUE ELEVEN:  When the evidence clearly shows it would be futile to do so, should OneBeacon be allowed to amend its complaint contrary to Fifth Circuit precedent and cause the Welch Defendants to incur additional unnecessary attorneys fees, expenses and harm?........................................8

II.    ARGUMENTS AND ANALYSES  ……………………………………………... 9

A.     OneBeacon Ignores that the Welch Defendants Attached Exhibits 3-12 Only to Show the Futility of OneBeacon's Re-Pleading; Regardless, the Court can Consider the Insurance Contracts, Matters it can take Judicial Notice of, and Items of Unquestioned Authenticity that are Central or Integral to OneBeacon's Claims for Relief When Dismissing OneBeacon's Claims ………………………………9

B.     Contrary to OneBeacon's Tortured and Revisionist Interpretation in Violation of Well-Settled Principles of Contract Interpretation, the term "sanction" in Question 42 of the 2007 and 2008 Policy Applications **Unambiguously** Relates to Bar Proceedings……………………………………………………………………10

1.      OneBeacon's Cherry-Picking of Certain Terms out of Context is Prohibited under Basic Principles of Contract Interpretation……………12

2.      The Welch Defendants Proffered Interpretation is the **Only** Reasonable Interpretation of Question 42 When Read in the Context of the Policy Application and Policy  as a Whole  …………………………………...17

3.  The Best Possible Outcome for OneBeacon is that Question 42 is Ambiguous; But Even Then the Court Must Construe Question 42 Strictly **Against** OneBeacon and in **Favor** of the Welch Defendants …………..20

C.  The 91-day Notice Period is an Essential Element of its Misrepresentation Claim; Moreover, OneBeacon's Argument Regarding Its Conscious Decision to Avoid Pleading the 91-day Requirement is Instructive in Revealing the Lengths it will go in Order to Avoid Stating Such in a Signed Pleading Subject to Rule 11 or a Declaration Subject to Penalty of Perjury   …………………………………….24

D.  Materiality  to the Risk Insured Can Be Determined as a Matter of Law, And There Can Be No Doubt that the 2004 *Dominion* Attorneys Fees Order is **Not** Material to the Risk Insured   …………………………………………...27

E.  OneBeacon's Allegation That It Has "Information and Belief" Regarding the Welch Defendants' Alleged Intent to Deceive Fails Heightened Pleading Requirements of Federal Rule of Civil Procedure 9(b), Warranting Dismissal…29

F.  OneBeacon's "One Bad Apple" Argument Regarding Wooten and Exclusion VII.A Makes Improper Assumptions, Cites No Relevant Case Law, and Relies on a Bait-and-Switch Defined Term   …………………………………………….31

G.  Even if Wooten's Alleged Knowledge Could Somehow be Inequitably  Imputed to the Welch Defendants, As a Matter of Law, Wooten's Conduct is Not a Prior Wrongful Act; Moreover, at Best for OneBeacon, Given the Subjective-Objective Test for Determining the Application of the Prior Knowledge Exclusion Wooten's Knowledge, that Knowledge is an as yet Unresolved Fact Question, So OneBeacon is in Breach of Its Duty to Defend as a Matter of Law   …………42

H.  OneBeacon's First, Second and Fourth Causes of Action Should be Dismissed with Prejudice Because the Deficiencies Cannot be Corrected………………….44

III.  **CONCLUSION**……………………………………………………………………47

# <u>TABLE OF AUTHORITIES</u>

## <u>Cases</u>

7-Eleven Inc. v. Puerto Rico-7 Inc.,
    Case No. 3:08-CV-00140-B, 2008 WL 4951502 (N.D. Tex. Nov. 19, 2008) ..................... 5, 30

American States Insurance Co. v. Bailey,
    133 F.3d 363 (5th Cir. 1998) .............................................................................. 43

AT&T Corp. v. Ryder,,
    2 S.W.3d 546 (Tex. App.—Austin 1999, pet. denied) ........................................... 14

Barnett v. Aetna Life Ins. Co.,
    723 S.W.2d 663 (Tex. 1987) ................................................................... 14, 38, 46

Berge Helene Ltd. v. GE Oil & Gas, Inc.,
    2009 WL 1835193 (S.D. Tex. 2009) ................................................................... 44

Blaylock v. American Guar. Bank Liab. Ins. Co.,
    632 S.W.2d 719 (Tex. 1982) ............................................................................. 21

Canutillo Indep. Sch. Dist. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.,
    99 F.3d 695 (5th Cir. 1996) ..................................................................... 2, 20, 37

City of Clinton v. Pilgrim's Pride Corp.,
    632 F.3d 148 (5th Cir. 2010) .......................................................................... 3, 26

Columbia Gas Transmission Corp. v. New Ulm Gas, Ltd.,
    940 S.W.2d 587 (Tex. 1996) ............................................................................. 21

Cruz–Mendez v. ISU/Ins. Servs. of San Francisco,
    722 A.2d 515 (N.J. 1999) ................................................................................. 21

Ehrgood v. Coregis Ins. Co.,
    59 F. Supp. 2d 438 (M.D. Pa. 1998)................................................................... 40

Fiess v. State Farm Lloyds,
    202 S.W.3d 744 (Tex. 2006) ............................................................................. 21

Foman v. Davis,
    371 U.S. 178 (1962) ........................................................................................ 45

Global Aerospace v. Pinson,
    208 S.W.3d 687 (Tex. App.—Corpus Christi 2006) .............................................. 13

Grain Dealers Mutual Ins. Co. v. McKee,
    943 S.W.2d 455 (Tex. 1997) ................................................................... 20, 21, 23

Gutierrez v. Ada,
    528 U.S. 250 (2000) ........................................................................................ 16

Gutierrez v. Logan,
    2005 WL 2121554 (S.D. Tex. 2005).............................................................. 44, 46

Hinna v. Blue Cross Blue Shield of Texas,
    2007 WL 3086025 (N.D. Tex. 2007) ........................................................... 4, 27, 28

Home Sav. & Loan v. Aetna Cas. & Sur. Co.,
    817 P.2d 341 (Utah App. 1991).......................................................................... 22

In re Capstead Mortgage Corp. Secs. Litigation,
    258 F. Supp. 2d 533 (N.D. Tex. 2003) ............................................................... 10

iv

In re VarTec Telecom, Inc.,
  2007 WL 2142499 (Bankr. N.D. Tex. 2007)....................................................... 3, 11, 25, 26, 45
Jarecki v. G.D. Searle Co.,
  367 U.S. 303 (1961) ................................................................................................. 16
Kelly Assocs., Ltd. v. Aetna Cas. & Sur. Co.,
  681 S.W.2d 593 (Tex. 1984) ..................................................................................... 3, 38
King v. Dallas Fire & Insurance Co.,
  85 S.W.3d 185 (Tex. 2002) ....................................................................................... 43
Mattis v. Dohman,
  260 F. App'x 458& n.2 (3rd Cir. 2008) ................................................................... 8, 45
Maher & Williams v. Ace American Ins. Co.,
  2010 WL 3546234 (D. Conn. 2010) ..................................................................... passim
Mercury Ins. Co. of Fla. v. Markham,
  36 So.3d 730 (Fla. App. 2010) ................................................................................. 21
Middlesex Mut. Assurance Co. v. Walsh,
  590 A.2d 957 (Conn. 1991) ..................................................................................... 21
National Union Fire Ins. Co. of Pittsburgh, Pa. v. Merchants Fact Motor Lines, Inc.,
  939 S.W.2d 139 (Tex. 1997) ..................................................................................... 43
Nat'l Union Fire inc. Co v. Hudson Energy Co.,
  811 S.W.2d 552 (Tex. 1991) ..................................................................................... 21
Odom v. Insurance Co. of State of Pa.,
  441 S.W.2d 584 (Tex. Civ. App.—Austin 1969) ................................................... 28
Pac. Indem. Co. v. Transp. Indem. Co.,
  81 Cal. App. 3d 649 (Ct. App. 1978) ..................................................................... 8, 41
Puckett v. U.S. Fire Ins. Co.,
  678 S.W.2d 936 (Tex. 1984) ..................................................................................... 21
Raytheon Co. v. Indigo Sys. Corp.,
  4:07-CV-109, 2008 WL 3852715 (E.D. Tex. Aug. 14, 2008) ............................... 45
Robinson v. Reliable Life Insurance Company,
  569 S.W.2d 28 (Tex. 1978) ................................................................................. passim
Southbelt Wrecker Serv. Inc. v City of League City, Tex.,
  Case No. Civ.A. H-05-3011, 2005 WL 3132183 (S.D. Tex. Nov. 22, 2005) ....... 8, 44
State Farm Fire & Cas. Co. v. Vaughan,
  968 S.W.2d 931 (Tex. 1998) ..................................................................................... 21
Techs., Inc.,
  930 F. Supp. 825 (E.D.N.Y. 1996) ......................................................................... 21
TIG Specialty Ins. Co. v. Pinkmonkey.com Inc.,
  375 F.3d 365 (5th Cir. 2004) ................................................................................... 21
Transport Indemnity Company v. Wyatt,
  417 So.2d 568 (Ala. 1982)............................................................................. 7, 8, 39, 41
Tuchman v. DSC Communications Corp.,
  14 F.3d 1061 (5th Cir. 1994) ................................................................................. 3, 26
Union Bankers Insurance Company v. Shelton,
  889 S.W.2d 278 (Tex. 1994) ..................................................................................... 27
United States ex rel. Doe v. Dow Chem. Co.,
  343 F.3d 325 (5th Cir.2003) ................................................................................. 5, 30

United States ex rel. Hebert v. Dizney,
    295 F. App'x 717 (5th Cir. 2008) ................................................................ 31
United States ex rel. Rafizadeh v. Cont'l Common, Inc.,
    553 F.3d 869 , n.6 (5th Cir. 2008) ............................................................... 5
United States ex rel. Thompson v. Columbia/HCA Healthcare Corp.,
    125 F.3d 899 (5th Cir. 1997) ...................................................................... 31
United States Fidelity & Guaranty Co. v. Goudeau,
    272 S.W.3d 603 (Tex. 2008) ................................................ 2, 13, 14, 15, 16
Westport Ins. Corp. v. Atchley, Russell, Waldrop & Hlavinka, LLP,
    267 F. Supp. 2d 601 (E.D. Tex. 2003)................................................... 40, 42
Womack v. Allstate Ins. Co.,
    156 Tex. 467, 296 S.W.2d 233 (Tex. 1957) .................................... 3, 12, 26

## Statutes

28 U.S.C. § 1927.................................................................................... 17, 23
Texas Insurance Code §§ 705.004, 705.005 ........................................ 11, 24, 26, 45

## Rules

Fed. R. Civ. P. 15................................................................................... 8
Fed. R. Civ. P. 9(b) ......................................................... 5, 29, 30, 31
Fed. R. Evid. 201(b)(2) ......................................................................... 10
Fed. R. Civ. P. 11 ........................................................................ 5, 24, 45
Fed. R. Civ. P. 12(b)(1)......................................................................... 16
Fed. R. Civ. P. 12(b)(6)................................................................. 1, 3, 9, 10
Colo. R. Civ. P. 251.3 ........................................................................... 16

## Other Authorities

Black's Law Dictionary (9th ed. 2009) ................................................ 17
Wright & Miller, 5C Fed. Prac. & Proc. § 1366 (3d ed. 2011) ............ 2, 9, 10

# I.     INTRODUCTION

A.     Nature And Stage Of The Proceeding

Plaintiff, OneBeacon Insurance Company ("OneBeacon") filed its Declaratory Judgment action against Defendants T. Wade Welch & Associates and T. Wade Welch (the "Welch Defendants"), Ross W. Wooten and Joseph H. Boyle, seeking to avoid its duties under certain insurance policies.  Wooten has answered. Boyle, although signing a waiver of service, has not responded.  The Welch Defendants waived service of summons and have not yet filed an answer. Instead, the Welch Defendants timely filed a Motion to Dismiss Pursuant to Federal Rules of Civil Procedure 8(a), 9(b) & 12(b)(6) on October 27, 2011.  Dkt. No. 19.  OneBeacon, after receiving two extensions from the Welch Defendants, filed its Response on December 12, 2011. Dkt. No. 32.

B.     Statement Of Issues

The Welch Defendants' motion to dismiss and memorandum in support present the following issues:

> 1.     ISSUE ONE:  Consistent with Fifth Circuit Precedent, can the Welch Defendants attach exhibits in support of their Motion to Dismiss when they are (1) documents central to OneBeacon's claim; (2) matters the Court may take judicial notice of; or (3) where there is no genuine dispute as to their authenticity?

Yes.  As the Welch Defendants specifically stated in their Memorandum, "Exhibits 3 through 12 are attached **solely** for the purpose of showing the Court that it can dismiss OneBeacon's causes of action against the Welch Defendants **with prejudice because amendment of the Complaint is futile**.  These exhibits are not necessary to simply dismiss the causes of action under Rule 12(b)(6)."  Dkt. No 20, Welch Def. Memo. Support at 4, n.3.  In any event, it is well-settled that:

Memoranda of points and authorities as well as briefs and oral arguments in connection with the motion, however, are not considered matters outside the pleadings for purposes of conversion. The same is true for various types of exhibits that are attached to the pleading, matters of which the district court can take judicial notice, and items of unquestioned authenticity that are referred to in the challenged pleading and are "central" or "integral" to the pleader's claim for relief.

Wright & Miller, 5C Fed. Prac. & Proc. § 1366 (3d ed. 2011).

2. ISSUE TWO:  In an attempt to deny coverage, can OneBeacon cherry-pick a few words out of their context in  policy application Question 42 and the policy as a whole in violation of well-settled insurance contract interpretation law?

No.   In approximately one page of briefing, OneBeacon offers no case law or corresponding legal authority to support its assertion that Question 42 "could not be more clear." When  the term "sanction" is read in the context of the surrounding words in Question 42, and read in context of the surrounding questions regarding professional liability issues and falling under the section title "PRIOR INSURANCE AND CLAIM HISTORY," its meaning becomes: it concerns bar disciplinary proceedings. *Canutillo Indep. Sch. Dist. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 99 F.3d 695, 700 (5th Cir. 1996) ("The contract is to be considered as a whole, with each part given effect and meaning.").  Moreover, attorneys fees, like intentional, felonious and fraudulent conduct, are not covered events under the policy.  Thus, there is no need to ask about these "non-events" under the policy.

3. ISSUE THREE:  Must the Court follow Texas Supreme Court Precedent and Construe the Term "Sanction" by Reference to the Surrounding Words and in the Context of the Policy Application and the Policy as a Whole?

Yes.  As the Texas Supreme Court succinctly put it: when interpreting a contract "a word is known by the company it keeps."  *United States Fidelity & Guaranty Co. v. Goudeau*, 272 S.W.3d 603, 606 (Tex. 2008).  Therefore, as a matter of law, **all** of the terms in Question 42 must be construed together consistently and in harmony, and in the context of the entire application and policy.  Given that all the words surrounding the term "sanction" deal with bar disciplinary

proceedings which is covered by the policy, the law compels the conclusion that the term "sanction" does so as well.

4.    ISSUE FOUR:  Must the Court follow Fundamental Principles of Contract Interpretation and Construe the Application Question or Issue in Favor of the Insured if Question 42 is Ambiguous?

Yes.  It is undisputed that "if an insurance contract is subject to more than one reasonable interpretation, **the contract is ambiguous and the interpretation that most favors coverage for the insured will be adopted**."  *Kelly Assocs., Ltd. v. Aetna Cas. & Sur. Co.*, 681 S.W.2d 593, 596 (Tex. 1984).  The best possible outcome for OneBeacon is that Question 42 is ambiguous.  Even in that case, as a matter of law, the Welch Defendants prevail and Causes of Action One and Two must dismissed.

5.    ISSUE FIVE:  Can OneBeacon, after failing to dispute that Veronica M. Bates— the attorney-in-charge on this case—had knowledge of the 2004 *Dominion* Attorneys Fees Order seven (7) months prior to the attempted rescission, fail to plead compliance with the 91-day notice requirement, and simply point to a hearsay letter that itself is a fraud in order to defeat a proper Rule 12(b)(6) Motion?

No.  Courts have found that the 91-day requirement "is an **essential element** of a defense based on misrepresentation."  *In re VarTec Telecom, Inc.*, 2007 WL 2142499 (Bankr. N.D. Tex. 2007) (citing *Womack v. Allstate Ins. Co.*, 156 Tex. 467, 296 S.W.2d 233 (Tex. 1957) ("This statutory notice is an essential element of a defense based on misrepresentation.").  It is a fundamental tenet of federal procedural law that a plaintiff must plead facts that support every element of its claim.  *City of Clinton v. Pilgrim's Pride Corp.*, 632 F.3d 148, 152–53 (5th Cir. 2010) ("plaintiffs must allege facts that support the elements of the cause of action in order to make out a valid claim."); *Tuchman v. DSC Communications Corp.*, 14 F.3d 1061, 1067 (5th Cir. 1994) ("In order to avoid dismissal for failure to state a claim, however, a plaintiff must plead specific facts, not mere conclusory allegations.  We will thus not accept as true conclusory

allegations or unwarranted deductions of fact.").  OneBeacon has failed to do so, therefore its First and Second Causes of Action must be dismissed, and by its failure to dispute Bates' knowledge it has implicitly admitted it cannot cure the notice deficiency.

6.      ISSUE SIX:   Can the immateriality of the 2004 *Dominion* Attorney Fees Order be determined by this Court as a matter of law when OneBeacon wrote the initial policy on an application that does not mention the term "sanction" once and that OneBeacon does not allege take issue with?

Yes.  OneBeacon states that materiality, or lack thereof, to the risk insured cannot be determined as a matter of law.  This is incorrect.  *See Hinna v. Blue Cross Blue Shield of Texas*, 2007 WL 3086025, at *6 (N.D. Tex. 2007) (determining as a matter of law, on defendant's Rule 56 motion, that risk was material).  "The principal inquiry in determining materiality is whether the insurer would have accepted the risk if the true facts had been disclosed."  *Robinson v. Reliable Life Ins. Co.*, 569 S.W.2d 28, 29 (Tex. 1978). Fatal to OneBeacon's position, the 2006 policy application (the application OneBeacon used to underwrite the Welch Defendants' first E&O policy with OneBeacon) never once mentions the word "sanction".  (Dkt. No. 20, Welch Def. Mem. Support, Exh. 3).   OneBeacon cannot now be heard to contend that a fact or occurrence  not asked about when writing the first policy  later became material on a renewal providing the exact same coverage.  Furthermore, as has been established, Question 42 does not require disclosure of the 2004 *Dominion* Attorneys Fees Order.

OneBeacon's game is clear:  in order to avoid paying $12 million to DISH Network, it has decided *ex post facto* that the term "sanction"  means both something different than what it did before **and** that the term is now material to it when it plainly was not before.  As a matter of law, the Court can determine that the 2004 *Dominion* Attorneys Fees Order was not material to the risk insured.  *Hinna*, 2007 WL 3086025, at *6.

4

7.      ISSUE SEVEN:  Can OneBeacon allege fraud and intent to deceive based upon undisclosed "information and belief" in violation of the Federal Rules of Civil Procedure and Fifth Circuit Precedent when it had Access to  the Welch Defendants' Information and Files?

No.  Rule 9 of the Federal Rules of Civil Procedure requires that "the circumstances constituting fraud or mistake shall be stated with particularity."  FED. R. CIV. P. 9(b).  A party can only plead fraud upon information and belief "where the facts relating to the alleged fraud are peculiarly within the perpetrator's knowledge."  *United States ex rel. Rafizadeh v. Cont'l Common, Inc*., 553 F.3d 869, 873, n.6 (5th Cir. 2008) (internal citation and quotation omitted).

Indeed, OneBeacon has already had *de facto* discovery in this case: it was given access to the all of the Welch Defendants files (both hard copy and electronic) related to the *Russian Media Group* Litigation including internal firm e-mails, e-mails between the Welch Defendants and EchoStar, firm billing records and access to Welch himself (which OneBeacon consciously avoided taking advantage of).  Indeed, the Welch Defendants offered OneBeacon the opportunity to full access to their electronically stored information, an offer never taken up by OneBeacon.  OneBeacon **does not dispute this**.  (OneBeacon Memorandum at 26).  Accordingly, because OneBeacon did not "allege in the pleadings that **[it] did not have access to the facts** relating to the fraud in order to relax the requirements of Rule 9(b) and allow pleading 'on information and belief' to meet the particularity standard," (OneBeacon could not do so without running afoul of Rule 11), *7-Eleven Inc. v. Puerto Rico-7 Inc*., Case No. 3:08-CV-00140-B, 2008 WL 4951502, at *2 (N.D. Tex. Nov. 19, 2008) (citing *United States ex rel. Doe v. Dow Chem. Co*., 343 F.3d 325, 330 (5th Cir.2003)), the Court must dismiss OneBeacon's First and Second Causes.

8.      ISSUE EIGHT: Must the Court follow OneBeacon's Command that Only Exclusion VII.A applied to Wooten's Conduct When OneBeacon took control of the defense and then Notified the Welch Defendants in its purported reservation of rights letter that Wooten's Conduct Implicated the Intentional Act Exclusion

(VII.B) and the Concomitant Innocent Insured Exception without referring to Exclusion VII.B?

No. OneBeacon's ploy is clear.  Knowing that its entire lawsuit against the Welch Defendants disappears if it relies on the intentional act exclusion (because the Welch Defendants are innocent insureds and the intentional act exclusion recognizes that exception), OneBeacon desperately wants the Court to focus myopically on the prior-knowledge exclusion which it argues contains no "innocent insured" exception.  Much like the rest of its lawsuit, this is a position OneBeacon manufactured for this litigation.  This is apparent from its March 11, 2011 Investigative Reservation of Rights Letter **sent after it took control of the defense** where it pointed the Welch Defendants to only the intentional act exclusion as a potential for exclusion of coverage and the concomitant innocent insured exception to that exclusion.  Although the claim had been pending for over a year and OneBeacon had been on notice of a potential claim for almost three years, OneBeacon waited until March 11, 2011, to issue this letter.

9.     ISSUE NINE: Should the Court follow the federal district court for the District of Connecticut in finding that where a lawyer conceals wrongful acts from his partners and other lawyers that the innocent insured exception applies to the prior knowledge exclusion even where the innocent insured exception is not explicitly set forth (but is in the intentional act exclusion)?

Yes.  In *Maher & Williams v. Ace American Insurance Company*, a partner of the firm had three different malpractice actions instigated against him for conduct (ranging from a complete failure to defend a suit, to lying to his clients about how dismissed cases were progressing, and "prepping" witnesses for depositions in a case that had already been dismissed). The partner admitted that he had committed malpractice.  After conducting an investigation into the matter, ACE denied coverage based on the basis of policy's prior-knowledge exclusion. 2010 WL 3546234, at *1-6 (D. Conn. 2010).  The federal district court was unimpressed with ACE's argument, identical to OneBeacon's here, that prior-knowledge exclusion did not

explicitly have an innocent insured's provision (but the notice exclusion, similar to Welch's argument in their Motion to Dismiss, did):

> There, the District of Connecticut found that

> Regardless of whether Condition V.F applies [innocent insured provision in notice exclusion] on its own, **the existence of the Innocent Insured condition indicates that in drafting the Policy ACE had in mind the possibility of exactly what occurred in this case—that a lawyer would commit wrongful acts but then conceal those acts from the partners or other lawyers—and Condition V.F. evidences an intent on ACE's part not to penalize insureds who do not have actual knowledge of the wrongful acts (and, therefore, the ability to report them and the foreseeable claims that may arise from them)**. The text of Condition V.F does not compel the result that Exclusion IV.A [prior knowledge exclusion without explicit innocent insured langague] contemplates only actual, and not imputed, knowledge, but it suggests that such a reading would be consistent with the remainder of the Policy, which differentiates between insureds who have actual knowledge of wrongful acts from those individual insureds who do not.

*Maher & Williams*, 2010 WL 3546234 at *13. In other words, the district court took the explicit innocent insured exception in the notice provision and found that it implicitly applied to the prior-knowledge exclusion. Accordingly, even if the Court finds that prior knowledge exclusion applies here, the Court should follow the *Maher & Williams* Court's analysis and protect innocent insureds.

> 10. ISSUE TEN: Can OneBeacon be allowed to argue that "you" in the context of exclusion VII really means "any of you" when it uses the phrase "any of you" and "each of you" in other portions of the policy when courts have held it is clear that "you" when not specifically mentioning all insureds means only the insured seeking protection under the policy?

No. Courts have held that when there are multiple insureds, the singular use of the relevant term has been held to apply to the person claiming coverage. *Transport Indemnity Company v. Wyatt*, 417 So.2d 568, 570 (Ala. 1982) ("The word 'INSURED,' as used in the subject provision means only the person claiming coverage and, as such, the term is used

severally and not collectively"). In *Wyatt*, the policy defined "INSURED" as several classes of people just as "you" in the OneBeacon policy identified multiples classes of people. *See also Pac. Indem. Co. v. Transp. Indem. Co.*, 81 Cal. App. 3d 649, 656 (Ct. App. 1978) ("The phrase "any employee of any insured" is susceptible to two interpretations: it could mean any employee of any insured who is seeking protection under the policy or it could mean any employee of any insured under the contract, whether or not that insured is seeking protection under the policy. It is unnecessary to show which interpretation is more logical. Since the clause is susceptible to more than one interpretation, it should be construed narrowly to provide for coverage."). Accordingly, OneBeacon's expansive interpretation of an exclusion which must be narrowly defined as a matter of law (i.e., "you") cannot withstand scrutiny.

11. ISSUE ELEVEN: When the evidence clearly shows it would be futile to do so, should OneBeacon be allowed to amend its complaint contrary to Fifth Circuit precedent and cause the Welch Defendants to incur additional unnecessary attorneys fees, expenses and harm.

No. While a court should generally allow a party an opportunity to amend defective pleadings before dismissing such pleading with prejudice, a court is not required to do so, especially when the deficiencies cannot be corrected. *See* FED. R. CIV. P. 15; *Southbelt Wrecker Serv. Inc. v City of League City, Tex.*, Case No. Civ.A. H-05-3011, 2005 WL 3132183, at *4 (S.D. Tex. Nov. 22, 2005); *see also Mattis v. Dohman*, 260 F. App'x 458, 460 & n.2 (3rd Cir. 2008) (dismissing complaint with prejudice where amendments were proven futile).[2] In light of the Welch Defendants' documentation and OneBeacon's concessions, amendment would be futile.

---

[2] The Welch Defendants recognize that a summary of the argument would usually be placed here under the Court's procedure. Mindful that the Court already has approximately 80 pages of briefing on the issues in this case from both parties (not including this Reply Brief), the Welch Defendants respectfully omit a regurgitation of the reasons they believe their Motion to Dismiss should be granted. Also, the facts relevant to the Motion are set forth in detail in the Welch Defendants' Memorandum of Law at 5-10. The Welch Defendants respectfully direct the Court to their Memorandum of Law which is incorporated fully by reference herein.

## II.    ARGUMENTS AND ANALYSES

A.    OneBeacon Ignores that the Welch Defendants Attached Exhibits 3-12 Only to Show the Futility of OneBeacon's Re-pleading; Regardless, the Court Can Consider The Insurance Contracts, Matters It Can Take Judicial Notice of, and Items of Unquestioned Authenticity that are Central or Integral to OneBeacon's Claims for Relief When Dismissing OneBeacon's Claims

The Welch Defendants attached 12 exhibits to their Memorandum of Law in Support of their Motion to Dismiss.  Exhibits 1 & 2 were the 2007 and 2008 policy applications and policies relied on by OneBeacon in its Complaint.  OneBeacon cries foul that the Welch Defendants attached Exhibits 3-12 to their Motion to Dismiss.  However, as the Welch Defendants specifically stated in their Memorandum—a fact conspicuously absent from OneBeacon's briefing—"Exhibits 3 through 12 are attached **solely** for the purpose of showing the Court that it can dismiss OneBeacon's causes of action against the Welch Defendants **with prejudice because amendment of the Complaint is futile**.  These exhibits are not necessary to simply dismiss the causes of action under Rule 12(b)(6)."  (Welch Def. Memo. Support at 4, n.3).

OneBeacon has cited **zero case law** that attaching the exhibits for that purpose is improper.  Indeed, OneBeacon commits the same "offense," or recognizes the propriety of such (implicitly) where it attaches exhibits it (incorrectly) believes allow it to replead.  (OneBeacon Memorandum at, e.g., Exhs. A-D).  (The futility of OneBeacon's repleading attempt is taken up in detail below).

In any event, if it chooses to do so, the Court may consider the exhibits attached to the Motion, and may properly use them in support of dismissing OneBeacon's claims.  As noted in Wright and Miller:

> Memoranda of points and authorities as well as briefs and oral arguments in connection with the motion, however, are not considered matters outside the pleadings for purposes of conversion. The same is true for various types of

> exhibits that are attached to the pleading, matters of which the district court can take judicial notice, and items of unquestioned authenticity that are referred to in the challenged pleading and are "central" or "integral" to the pleader's claim for relief.

Wright & Miller, 5C Fed. Prac. & Proc. § 1366 (3d ed. 2011).  That is, the Court can take judicial notice of public records and other documents susceptible to judicial notice.  *See In re Capstead Mortgage Corp. Secs. Litigation*, 258 F. Supp. 2d 533, 543 (N.D. Tex. 2003); Fed. R. Evid. 201(b)(2) (court can take judicial notice of a fact that "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.").

It is puzzling as to what exactly OneBeacon's complaint is regarding the documents attached (especially because it refused to specify such, OneBeacon Memorandum at 18, n.6). Exhibit 3 was the Westport Policy Application, the application which OneBeacon **wrote the initial policy for the Welch Defendants on**.  Exhibits 4, 9 & 10 are OneBeacon authored documents that presumably it is not contesting the veracity of.  Exhibits 5 & 6 are public records (pleadings in the *Russian Media Group* Litigation).  Exhibit 12 is an easily replicable Google search with a Tenth Circuit opinion, and Exhibits 7 & 8 are letters from DISH Network's counsel to OneBeacon that it surely has in its file.  In other words, OneBeacon is complaining about public records, documents created by it, and documents it already possesses.  Alternatively, the Court may convert portions of the Rule 12(b)(6) motion into a Rule 56 motion if it believes this is necessary to dispose of OneBeacon's claims.[3]

B.     Contrary to OneBeacon's Tortured and Revisionist Interpretation in Violation of Well-Settled Principles of Contract Interpretation, the term "sanction" in Question 42 of the 2007 and 2008 Policy Applications **Unambiguously** Relates to Bar Proceedings

---

[3] Furthermore, the Welch Defendants attach to this Memorandum, Exhibits 13-17, which are comprised of a google search result, public documents, and communications between the parties which can all be properly considered by this Court.

Despite OneBeacon writing the initial 2006 policy in reliance on a Westport application that not once mentions the term "sanction,"  OneBeacon's First and Second Causes of Action attempt to plead OneBeacon's right to rescind the 2007 and 2008 policies based on an ostensible misrepresentation in the these two policy renewal applications.  The question in these renewal applications that determines the fate of OneBeacon's theory of the case—and its Complaint—is Question 42.  Question No. 42 asks:

> Have you or any member of your firm ever been disbarred, refused admission to practice law, suspended, reprimanded, sanctioned, fined, placed on probation, held in contempt or the subject of any complaint, grievance or action by any court, administrative agency or regulatory body?[4]

The Welch Defendants properly answered "no" to that question.   Four years later, OneBeacon, after being on notice of the facts giving rise to the current claim for three years and taking control of the defense, in order to avoid paying the $5 million policy limits at the eleventh hour before mediation of the underlying claim, for the first time claims that an award of attorneys fees stemming from a motion for such filed by an adverse party in the *Dominion* litigation some seven years earlier required an affirmative answer.  Texas insurance law does not countenance these tactics.

OneBeacon's attempted rescission is governed by the Texas Insurance Code § 705.005 which requires that the insured made a material misrepresentation and notice to the insured of rescission within 91 days of the insurer learning of the alleged misrepresentation.  Tex. Ins. Code § 705.005; *In re VarTec Telecom, Inc*., 04-81694, 2007 WL 2142499 (Bankr. N.D. Tex. July 23,

---

[4] At no point has OneBeacon ever taken issue with the **original** policy application, (Dkt. No. 20 at Exh. 3), or any of the Welch Defendants answers' therein.  The reason for this is plain: OneBeacon's current "interpretation" of the 2007 and 2008 policy renewal applications are undermined by the fact the OneBeacon issued its first policy to the Welch Defendants in December 2006 (the "2006 policy") based on another insurance company's application that is not susceptible to OneBeacon's current revisionist history.

2007) (citing *Womack v. Allstate Ins. Co.*, 156 Tex. 467, 296 S.W.2d 233 (Tex. 1957) ("This [91-day] statutory notice is an **essential element** of a defense based on misrepresentation.").

      The Welch Defendants moved to dismiss OneBeacon's First and Second Causes of Action on three separate and distinct grounds:

    (1) The term "sanction" in Question 42 relates to bar disciplinary proceedings;

    (2) OneBeacon failed to plead the essential element of the 91-day notice requirements knowing that both OneBeacon's in-house claim counsel and its outside coverage counsel (Veronica Bates, who is still the attorney-in-charge on this case despite OneBeacon's improper removal of her from the pleadings without the Court's approval) had knowledge of the alleged misrepresentation more than 91 days before the attempted rescission; and

    (3) OneBeacon did not sufficiently plead materiality, and that the putative misrepresentation was not material since OneBeacon wrote the 2006 policy based on an application that does not mention the term "sanction" once and attorneys fees' awards like those in *Dominion* are explicitly excluded and are not a risk covered by the policy.

      Any one of these bases disposes of OneBeacon's first two claims against the Welch Defendants' in their entirety. Analytically, though, there must first be a misrepresentation for OneBeacon to rely on—there is not. As set forth above, Question 42 unambiguously deals with actions taken in connection with bar disciplinary proceedings and the term "sancton" is so limited.

    1.    OneBeacon's Cherry-Picking of Certain Terms Out of Context is Prohibited Under Basic Principle of Contract Interpretation

Despite the fact that the proper interpretation of Question 42 determines the fate of OneBeacon's first two claims, and that Question 42 served as OneBeacon's only putative basis for refusing to settle DISH Network's three-year-old claim a scant five days before DISH's mediation and settlement with Russian Media Group, OneBeacon buries its one-page discussion of Question 42 deep into its 54-page brief.   One Beacon **cites zero case law** supporting its manufactured interpretation of the question.   Rather, OneBeacon attempts to distract the court by solely relying on cherry-picked terms taken out of context.   Visually, OneBeacon's tactic is exposed when it sets forth the question and bolds the terms it wants the Court to myopically fixate on:

> Have you or any member of your firm ever been disbarred, refused admission to practice law, suspended, reprimanded, ***sanctioned, fined,*** placed on probation, held in contempt or the subject of any complaint, grievance or ***action by any court,*** administrative agency or regulatory body?

(OneBeacon Memorandum at 7, emphases in original).   That is, OneBeacon wants the Court to excise all the other words in the question that surround "sanction" ("disbarred, refused admission to practice, suspended, reprimanded, placed on probation") to rewrite the question to read "Have you or any member of your firm ever been sanctioned or fined by any Court?   Fundamental principles of contract interpretation preclude this "interpretation."

As an initial matter, OneBeacon's cherry-picking is precluded by the law.   As the Texas Supreme Court succinctly put it: when interpreting a contract "a word is known by the company it keeps."   *United States Fidelity & Guaranty Co. v. Goudeau*, 272 S.W.3d 603, 606 (Tex. 2008). Therefore, as a matter of law, **all** of the terms in Question 42 must be construed together consistently and in harmony.

Second, OneBeacon wants the court to ignore another well-know precept of contract law: a contract is strictly construed **against the party who drafted it**.   *Global Aerospace v. Pinson*,

208 S.W.3d 687, 691 (Tex. App.—Corpus Christi 2006) ("It is well-established that where an ambiguity exists in a contract, the contract language will be construed strictly against the party who drafted it since the drafter is responsible for the language used."); *AT&T Corp. v. Ryder*, 2 S.W.3d 546, 559 (Tex. App.—Austin 1999, pet. denied) (contracts are strictly construed against author) *and see Barnett v. Aetna Life Ins. Co.*, 723 S.W.2d 663, 666 (Tex. 1987) (insurance policies are construed against the insurer because the policy provisions were selected by the insurer).[5]  Here, OneBeacon drafted the application and policy.  OneBeacon does not dispute these fundamental rules of contract interpretation; it just ignores them.

As the Welch Defendants established, all of the terms surrounding the terms OneBeacon wants to pluck out of context unambiguously deal with bar proceedings.  Moreover, the Welch Defendants provided numerous examples from publicly available sources of legal authority supporting its reading that "sanction," as used in Question 42, is correctly read in the context of bar proceedings.

The Welch Defendants also referenced publicly available documents showing that "courts" are routinely involved in this disciplinary process. (Welch Def. Memo. Support at 20-22).[6]  The term "sanction" must be construed in light of all the words in question as a matter of law.  *Goudeau*, 272 S.W.3d at 606 ("a word is known by the company it keeps").  Since the complained of sanction at issue here—the 2004 *Dominion* Attorney Fees Order—did not emanate from disciplinary proceedings, there was *ipso facto*, no misrepresentation.  (*See Russian*

---

[5] As noted in the Welch Defendants' Memorandum, and undisputed by OneBeacon, **these rules of contract interpretation apply to the policy applications and the policies.**  (Welch Def. Memo. Support at 19, n.14). OneBeacon's policy explicitly states such.  (Dkt. No. 20 at Exhs. 1 & 2 at 1).

[6] Other examples are available and undercut OneBeacon's interpretation of the term "sanction:"
- On the attorney profiles webpage on the State Bar of Texas' website, in the public disciplinary history section, the State Bar twice refers to "sanctions" that could emanate from that body. (supply to URL to Wade's bar page).
- The American Bar Association has put together a comprehensive "Standards for Imposing Lawyer Sanctions" directed at state bar disciplinary bodies. http://www.lb9.uscourts.gov/webcites/10documents/Girardi_sanctions.pdf

*Mediag Group* Litigation, Dkt. No. 90).  Rather than dispute any of these arguments that deal it a death blow, OneBeacon simply ignores them.

OneBeacon struggles to prop up its interpretation of Question 42 because the Welch Defendants' reading is the only reasonable interpretation.  And this is buttressed by the similar question in the 2006 policy application **relied on by OneBeacon when it wrote the the Welch Defendants' initial policy**.  The 2006 policy application asks the following question:

9.     In the past five years, has any action been taken against any lawyer proposed for this insurance for disbarment, suspension, reprimand, or other disciplinary action? Please include any pending actions.

(Dkt. No. 20, Exh. 3 at page 3 of 5).

Rather than grapple with the fact that this question—the substantive equivalent of Question 42—does not mention the word "sanction" and equally clearly deals with bar proceedings, OneBeacon resorts to its "take my word for it" form of argumentation: an assertion with no support.  (OneBeacon Memorandum at 38-39).  OneBeacon, disregarding a century of insurance jurisprudence, boldly proclaims that Question 42 must be given its broadest possible meaning and that the term "sanction" (**plucked out of context**, *Goudeau*, 272 S.W.3d at 606 ("a word is known by the company it keeps"), encompasses any sanction a court may hand down, even outside a disciplinary proceeding.  Again, OneBeacon provides **zero case law** to support this analytical leap of faith.

This is because the case law cuts OneBeacon's argument off at the knees.  OneBeacon also wants the Court to accept its fiat, with no evidentiary support, that "Question 42 is very broad, and it was designed to determine whether the Welch Firm or any of its lawyers had a history of improper conduct."  (OneBeacon Memorandum at 39).  OneBeacon is not allowed to re-write the question now to suit its current needs.  Moreover, here again, OneBeacon runs afoul

of fundamental rules of contract interpretation.  When a term has a possible broad meaning, but is surrounded by other terms that **<u>narrow</u>** its meaning, courts must select the narrow meaning. *See Gutierrez v. Ada*, 528 U.S. 250, 254–258 (2000) (applying the canon to narrow the relevant phrase, "any election," where it was closely surrounded by six specific references to gubernatorial elections); *Jarecki v. G.D. Searle Co.*, 367 U.S. 303, 306–309 (1961) (applying the canon to narrow  the term "discoveries" to discoveries of mineral resources where it was contained in a list of three words, all of which applied to the oil, gas, and mining industries and could not conceivably all apply to any other industry).

Rather than support its own argument, OneBeacon mistakenly claims there is a flaw in the Welch Defendants' logic by fixating on the terms "held in contempt or the subject of any complaint."  (Memorandum at 38).  OneBeacon claims that the Welch Defendants ignore the phrase "held in contempt or the subject of any complaint" because the events do not relate to bar proceedings.  Despite the fact that this runs afoul of basic norms of contract interpretation, *Goudeau*, 272 S.W.3d at 606 ("a word is known by the company it keeps"), OneBeacon's argument backfires

First, to give just one example, the Colorado Supreme Court Attorney Regulation Counsel (Mr. Welch is admitted to practice in Colorado), specifically states that one of the Counsel's powers and duties is to "[p]rosecute **<u>contempt</u>** proceedings for violations of [the ethical rules]."  Col. R. Civ. P. 251.3(c)(7).  Another salient example is that term "court" applies to bar proceedings: the Welch Defendants' attached (under seal) to their Rule 12(b)(1) Reply the letters they received from the Colorado OAR exonerating them from any wrongdoing in the *AirComm* Litigation—at the top of the letterhead it states in bolded letters: "**Colorado Supreme Court**" (Dkt. No. 33, Exh. 1).

Moreover, OneBeacon's reliance on the term "any complaint" also works against its interpretation of Question 42. OneBeacon does not attempt to explain how a **motion** by an opposing party for attorneys fees under 28 U.S.C. § 1927 (what occurred in *Dominion*) is synonymous with Question 42's language "any complaint." *See* Black's Law Dictionary at 323 (9th ed. 2009) (defining "complaint" as "The initial pleading that starts a civil action . . . .). This is because it cannot.

2.      The Welch Defendants Proffered Interpretation is the **Only** Reasonable Interpretation of Question 42 When Read in the Context of the Policy Application and Policy as a Whole

When tested, OneBeacon's contention that the question covers **any** improper conduct is belied by the facts. Question 42 plainly does not encompass criminal conduct or criminal history. Similarly, Question 42 does not encompass claims against an applicant for fraud or other intentional torts (and the effect of such is also felt in the materiality of the risk context, discussed below). Surely felonious, fraudulent or intentional conduct would be germane to any inquiry that was truly directed at **any** improper conduct. Yet Question 42 does not require such a disclosure. In fact, at no point in the OneBeacon application are these issues the subject of inquiry.

Furthermore, OneBeacon's arguments cut against in additional ways. When discussing materiality, OneBeacon states that it "cannot be the case" "[u]nder the theory of materiality the Welch Defendants advocate, a lawyer's misrepresentation in an application stating that he never committed any intentional, criminal, dishonest, malicious or fraudulent act, would not be material, because that type of conduct . . . would be excluded from coverage under the policy ultimately issued." (OneBeacon Memorandum at 30). Applying this logic to proper

interpretation of Question 42, however, shows why OneBeacon is attempting to have its contract interpretation cake and eat it too.

That is, OneBeacon wants the Court to believe that it is intensely interested in felonious, fraudulent, intentional or otherwise criminal conduct of its applicants.  Yet, it never asks about such conduct in its policy applications, instead focusing only on bar related disciplinary actions, a covered event under the policy.  The reason is plain:  criminal or otherwise intentional conduct is excluded from coverage, (Dkt. No. 20, Exhs. 1 & 2, Section VII.B), **so there is no need to ask** (except for innocent insured as discussed below)**.**  In other words—contrary to OneBeacon's revisionist history—it does not ask about events that are not covered.  Likewise, an award of attorney's fees as a result of an adverse party's request for such is not a covered event.  (Dkt. No. 20, Exhs. 1 & 2, at Section V.E.1)  Here again, Question 42 is not directed at this.  Like its disinterest in inquiring about felonies, convictions or dishonesty, OneBeacon does not inquire about attorneys fees awards similarly excluded by coverage.

Conversely, the Welch Defendants' interpretation of Question 42 is the only plausible reading.  Besides withstanding OneBeacon's flawed attack surrounding "contempt" or "any complaint," the Welch Defendants' interpretation is consistent with the entire policy application and the 2007 and 2008 policies themselves.

If further analysis is required, all one need to do is notice that Question 42 is included in a section of the policy application specifically titled "PRIOR INSURANCE AND CLAIM HISTORY." This title is immediately followed by: "Important Note: You must report any known, claim, suit, incident, act or omission that may in the future give rise to a claim or suit, to your current liability insurer before the claims reporting under that policy expires."  In other words, OneBeacon's application is focusing the applicant on the issue of prior and potential

claims.  To distill this topic with finer granularity, OneBeacon proceeds to ask six questions designed to flesh out the specifics of the prior or potential claims. (Dkt. No. 20, Exhs. 1 & 2 at page 3 of 5).[7]   For the Court's convenience and to illustrate the context of Question 42 the entirety of the section is set forth below:

### PRIOR INSURANCE AND CLAIM HISTORY

**Important Note:**  You must report any known claim, suit, or incident, act, or omission that may in the future give rise to a claim or suit, to your current professional liability insurer before the claims-reporting period under that policy expires.

37. Has any professional liability claim or suit been made against you, your firm or any other member of your firm in the past seven (7) years?
*(If yes, complete a Claim Supplement for each claim or suit.)* ☐ Yes ☐ No

38. Are you or any members of employees of your firm aware of any fact, circumstance, or situation which might reasonably be expected to give rise to a claim? *(If yes, complete a Claim Supplement for each claim or suit.)* ☐ Yes ☐ No

39. Have you or any member of your firm ever been disbarred, refused admission to practice law, suspended, reprimanded, sanctioned, fined, placed on probation, held in contempt or the subject of any disciplinary complaint, grievance or action by any court, administrative agency or regulatory body?
*(If yes, please provide full details in a separate sheet.)* ☐ Yes ☐ No

40. Please list all primary and excess lawyers' professional liability insurance policies carried during the past five (5) years, include any period without coverage.

| Policy Period | Insurer | Limits of Liability | Retention | Premium | Number of lawyers | |
|---|---|---|---|---|---|---|
| /    / | | | | | | ☐ Primary ☐ Excess |
| /    / | | | | | | ☐ Primary ☐ Excess |
| /    / | | | | | | ☐ Primary ☐ Excess |
| /    / | | | | | | ☐ Primary ☐ Excess |
| /    / | | | | | | ☐ Primary ☐ Excess |

41. Are you or any members or employees of your firm aware of any fact, circumstance, or situation which might reasonably be expected to give rise to a claim? *(If yes, complete a Claim Supplement for each claim or suit.)* ☐ Yes ☐ No

42. Have you or any member of your firm ever been disbarred, refused admission to practice law, suspended, reprimanded, sanctioned, fined, placed on probation, held in contempt or the subject of any disciplinary complaint, grievance or action by any court, administrative agency or regulatory body?
*(If yes, please provide full details on a separate sheet.)* ☐ Yes ☐ No

43. Have you ever purchased an extended reporting period endorsement? *(If yes, provide details on a separate sheet.)* ☐ Yes ☐ No

**RETURN THE COMPLETED APPLICATION AND ALL SUPPLEMENTS AND ATTACHMENTS TO YOUR INSURANCE AGENT OR BROKER ALONG WITH A COPY OF YOUR FIRM'S LETTERHEAD.**

---

[7] There are actually seven different questions, but Question 39 and 42 are identical.  This is a further indication of the lack of care and attention to detail OneBeacon expended in drafting the policy application it now wants to split hairs about (in an unconvincing manner).

At this point, the proper interpretation of Question 42 is manifest.  In the context of the section of the policy application entitled "PRIOR INSURANCE AND CLAIM HISTORY" and a policy that explicitly does **not** cover attorney fees awards resulting from an adverse parties' request, coupled with a policy that **does** provide coverage for disciplinary proceedings, the **the only reasonable interpretation of Question 42 is the one proffered by the Welch Defendants**.

Just as there is no need to disclose felonious, intentional or fraudulent acts since they are excluded from coverage by Section VII.B, save for the innocent insured, there is no need to disclose attorneys fees because they are excluded by the policy.  (Dkt. No. 20, Exhs. 1 & 2 at Section II.E.1).  And the Welch Defendants' interpretation is aligned with another well-know precept of contract interpretation: courts must look at the contract as a whole when diving its meaning.  *Canutillo Indep. Sch. Dist. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 99 F.3d 695, 700 (5th Cir. 1996) ("The contract is to be considered as a whole, with each part given effect and meaning.").

   3.   The Best Possible Outcome for OneBeacon is that Question 42 is Ambiguous; But Even Then the Court **Must As a Matter of Law** Construe  Question 42 Strictly **Against** OneBeacon and in **Favor** of the Welch Defendants

Even in the best of possible worlds for OneBeacon, Question 42 is simply ambiguous. *Grain Dealers Mutual Ins. Co. v. McKee*, 943 S.W.2d 455, 458 (Tex. 1997) ("Conversely, if an insurance contract is subject to more than one reasonable interpretation, the contract is ambiguous and the interpretation that most favors coverage for the insured will be adopted.").

And OneBeacon is desperate to avoid ambiguity in Question 42.  The reason why is obvious: in a garden-variety contractual dispute, if a Court determines that a contract term is ambiguous, then the meaning of that term becomes a question of fact for the jury to decide.

*Columbia Gas Transmission Corp. v. New Ulm Gas, Ltd.*, 940 S.W.2d 587, 589 (Tex. 1996) ("On the other hand, if the contract is subject to two or more reasonable interpretations after applying the pertinent rules of construction, the contract is ambiguous, which creates a fact issue on the parties' intent").

**<u>However, in the insurance context, as a matter of law, ambiguity means that the Court (not a jury) must adopt the interpretation in favor of the insured</u>** (the Welch Defendants).  *Grain Dealers Mutual Ins. Co. v. McKee*, 943 S.W.2d 455, 458 (Tex. 1997) (holding that ambiguity exists where the contract is susceptible to more than one reasonable interpretation, in which case, "**<u>the interpretation that most favors coverage for the insured will be adopted.</u>**"); *see also Nat'l Union Fire inc. Co v. Hudson Energy Co.*, 811 S.W.2d 552, 555 (Tex. 1991); *Puckett v. U.S. Fire Ins. Co.*, 678 S.W.2d 936, 938 (Tex. 1984); *Blaylock v. American Guar. Bank Liab. Ins. Co.*, 632 S.W.2d 719, 721 (Tex. 1982); *TIG Specialty Ins. Co. v. Pinkmonkey.com Inc.*, 375 F.3d 365, 373 (5th Cir. 2004) (in construing insurance contract, a court should adopt the reasonable interpretation that favors the insured); *Fiess v. State Farm Lloyds,* 202 S.W.3d 744, 746 (Tex. 2006); *State Farm Fire & Cas. Co. v. Vaughan*, 968 S.W.2d 931, 933 (Tex. 1998); *Home Ins. Co. of Ill.* (*New Hampshire*) *v. Spectrum Info. Techs., Inc.*, 930 F. Supp. 825, 837 (E.D.N.Y. 1996) (applying New York law); *Mercury Ins. Co. of Fla. v. Markham*, 36 So.3d 730, 733 (Fla. App. 2010) ("An insurer may not deny coverage under this statute, however, if the alleged misrepresentation was in response to an ambiguous question. . . . Any such ambiguity must be construed against the insurer and in favor of coverage.") (citations omitted); *Cruz–Mendez v. ISU/Ins. Servs. of San Francisco*, 722 A.2d 515, 522–23 (N.J. 1999) (public policy and principles of fairness require interpreting insurance policies "in favor of the insured and against the insurer.") (citations omitted); *Middlesex Mut. Assurance Co. v. Walsh*,

590 A.2d 957, 964 (Conn. 1991) ("Whether a response to a question in an insurance application is false must be determined in light of the question asked.  If the question is so framed as to leave room for two constructions, the words used in it should be interpreted most strongly against the insurer.") (citations omitted); *Home Sav. & Loan v. Aetna Cas. & Sur. Co.*, 817 P.2d 341, 348 (Utah App. 1991) ("ambiguities in insurance applications will be construed against the insurer, to avoid denial of coverage because of alleged misrepresentations.") (citations omitted).

**At no point in its brief, does OneBeacon even mention this case law that eviscerates its first and second causes of action.**  Indeed, OneBeacon concedes this point in its brief. (OneBeacon Memorandum at 32-33).   Refusing to admit that it has been checkmated, OneBeacon throws in the ring the only thing it can short of the towel (to mix metaphors): a claim that the Welch Defendants' interpretation is unreasonable.  This argument is difficult to take seriously.

In a misguided attempt to bolster this assertion, OneBeacon points the Court to the Northern District of New York's General Order #26 that subjects attorneys with ringing cell phones to sanctions.  (OneBeacon Memorandum at 28, n. 13).  In an attempt to undercut the Welch Defendants' arguments and this "distinguish" this type of sanction OneBeaconargues that the General Order is relevant to criminal cases in that district.  (*Id*. at 28, n. 13).  From this premise, OneBeacon argues that these $100 sanctions "are clearly vastly different" than a monetary sanction from a Court pursuant to 28 U.S.C. § 1927.   (*Id*.).   In other words, OneBeacon's point is that such a "sanction" need not be disclosed.  This is the extent of OneBeacon's attempt to trivialize the Welch Defendants' point that OneBeacon's interpretation of "sanction" is unreasonable.

However, OneBeacon's own argument **itself injects ambiguity into Question 42**.  Both authorities (N.D.N.Y and 28 U.S.C. § 1927) use the term "sanction," the same term that appears in Question 42.  One wonders how an attorney who is insured with OneBeacon should approach the resulting dilemma—what is the monetary threshold OneBeacon would putatively be concerned with knowing about?  Does it matter what the statutory authority for the sanction is?  Given OneBeacon's proffered interpretation and its argument regarding the N.D.N.Y.'s General Order #26, these questions cannot be resolved from the face of the contractual language in Question 42.  *McKee*, 943 S.W.2d at 458 ("A contract is unambiguous as a matter of law if it can be given a definite or certain legal meaning.").  Therefore, OneBeacon has unwittingly proven the very point it is attempting to avoid: at best,  Question 42 is vague and ambiguous.

There are only three options available at this point.  The Court can find that: (1) the Welch Defendants' interpretation of Question 42 is the only reasonable one; (2) Question 42 is ambiguous; or (3) OneBeacon's interpretation is the only reasonable one.  **Options 1 and 2 require dismissal with prejudice as a matter of law at this stage.**  The third option—which the Welch Defendants have shown to be untenable under the relevant law and OneBeacon's own argumentation—still require the Court to address the issues of materiality and the 91-day notice requirement before OneBeacon could prevail, in addition to divining Welch's subjective intent when answering Question 42.  The Welch Defendants' respectfully submit that this is not necessary; however, those issues are addressed below.

C.     The 91-day Notice Period is an Essential Element of its Misrepresentation Claim;
       Moreover, OneBeacon's Argument Regarding Its Conscious Decision to Avoid Pleading
       the 91-day Requirement is Instructive in Revealing the Lengths it will go in Order to
       Avoid Stating Such in a Signed Pleading Subject to Rule 11 or a Declaration Subject to
       Penalty of Perjury

OneBeacon does not dispute that its First and Second Causes of Action rely upon
Sections 705.004 and 705.005 of the Texas Insurance Code.  These sections require the alleged
misrepresentation to be material and further require the insurer to give the insured notice of its
refusal to be bound within 91 days after discovery of the alleged misrepresentation.  In their
Memorandum of Law in Support of their Motion to Dismiss, the Welch Defendants pointed out
OneBeacon's glaring failure to plead the 91 day requirement.  The Welch Defendants, in order to
show the futility of amendment, also established that OneBeacon, through its in-house counsel
and outside coverage counsel in this claim, was aware of alleged falsity of the putative
misrepresentation more than 91 days before its attempted rescission.

OneBeacon's Response regarding its knowledge of the 2004 *Dominion* Attorneys Fees
Order is more instructive for what is omitted rather than what is included.  Plainly, OneBeacon
has no qualms about submitting a declaration when it believes it suits its purposes; it did so on
the issued of the amounts paid in defense of the Colorado OAR proceeding that was resolved it
the Welch Defendants' favor ( in its Response).   (OneBeacon Memorandum at Exh. D).
Conspicuously absent, however, is a declaration supporting OneBeacon's August 19, 2011 letter
implausibly stating that OneBeacon did not have knowledge of the 2004 *Dominion* Attorneys
Fees Order until May 31, 2011.  (*Id.* at Exh. A).

Also telling is that OneBeacon has unilaterally decided to grant its own contested Motion
to Substitute Counsel: in violation of the Local Rules, OneBeacon has removed its attorney-in-
charge, Veronica M. Bates (the same lawyer who knew of the 2004 *Dominion* Attorneys Fees

Order no later January 2011) from the pleadings.  LR11.1-4.  The Welch Defendants believe there is some significance behind Ms. Bates' disappearance.[8]

This is because OneBeacon knows that it does not have an attorney or employee who can testify or aver to the following:

(1)     it never googled its insured;

(2)     during the underwriting process of the 2006-07, 2007-08 and 2008-09 policies, it did not learn of the 2004 Dominion Attorneys' Fees Order;

(3)     it never monitored the status of EchoStar's Motion to Set Aside the Discovery Order despite being forwarded the Motion by the Welch Defendants;

(4)     it never obtained a copy of Russian Media Group's April 27, 2010 Response to EchoStar's Motion to Set Aside the Discovery Order prior to May 19, 2011 despite elevating the matter to "claim status" in March 2010;

(5)     neither it, nor its attorneys, ever read Russian Media Group's Response when it was delivered on January 26, 2011, or any time prior to May 19, 2011 ;

(6)     neither it, nor any of its employees or attorneys were aware of the 2004 Dominion Attorneys' Fees Order prior to May 19, 2011.

Rather than grapple with these uncomfortable facts, OneBeacon painstakingly avoids unequivocally stating that it had no knowledge of the 2004 *Dominion* Attorneys Fees Order more than 91 days prior to its refusal to be bound.  Instead, it (incorrectly) contends that there is no pleading requirement, and avers that, anyways, the notice requirement is somehow satisfied by the rescission letter it sent the Welch Defendants.  Tellingly, OneBeacon never referenced this August 19, 2011 letter in its August 22, 2011 Complaint.

*Contra* OneBeacon, courts have indeed held that the 91-day requirement "is an **essential element** of a defense based on misrepresentation."  *In re VarTec Telecom, Inc*., 04-81694, 2007

---

[8] In addition to the above, had OneBeacon simply conducted an internet search on Ross W. Wooten (the central figure in this dispute) during its investigation, it would have found the Tenth Circuit's opinion upholding the 2004 *Dominion* Attorneys Fees Order as the first search result.  (Attached as Exhibit 13 is a true and correct copy of such a google search).

WL 2142499, at *2 (Bankr. N.D. Tex. July 23, 2007) (citing *Womack v. Allstate Ins. Co.*, 156 Tex. 467, 296 S.W.2d 233 (Tex. 1957) ("This statutory notice is an essential element of a defense based on misrepresentation.").   A failure (or refusal) to plead an essential element is a textbook violation of the Federal Rules of Civil Procedure.   *City of Clinton v. Pilgrim's Pride Corp.*, 632 F.3d 148, 152–53 (5th Cir. 2010) ("plaintiffs must allege facts that support the elements of the cause of action in order to make out a valid claim."); *Tuchman v. DSC Communications Corp.*, 14 F.3d 1061, 1067 (5th Cir. 1994) ("In order to avoid dismissal for failure to state a claim, however, a plaintiff must plead specific facts, not mere conclusory allegations. We will thus not accept as true conclusory allegations or unwarranted deductions of fact.").

OneBeacon's real concern is its hope that the Court will accept the letter in lieu of OneBeacon having to plead (or submit a declaration) unequivocally stating that it did not know of the alleged misrepresentation prior to May 19, 2011.   This the law does not allow.   *In re VarTec Telecom*, 2007 WL 2142499, at *2.   OneBeacon cannot in good faith meet the 91-day notice requirement, and even assuming it could, the 2004 *Dominion* Attorneys Fees Order is, as discussed below, immaterial as a matter of law.

Accordingly, OneBeacon's First and Second Causes of Action must be dismissed with prejudice for failure to plead an essential element of its claim.[9]

---

[9] OneBeacon's absurd argument that compliance with the 91-day requirement must be shown at trial cannot be taken seriously.  (Memorandum at 19).  Indeed, were the Court to follow OneBeacon's hyper-literal reading of § 705.005, it could dismiss OneBeacon's claims based on § 705.005 because that provision is only available to "defendants." Tex. Ins. Code § 705.005.  OneBeacon chose to file its suit in federal court and nowhere does it show that the Texas Insurance Code, either by its express terms or its legislative history, intended to nullify Federal Rules of Civil Procedure 8, 9, 12 and 56.

D.   Materiality to the Risk Insured Can Be Determined As a Matter of Law, And There Can Be No Doubt that the 2004 *Dominion* Attorneys Fees Order is **Not** Material to the Risk Insured

OneBeacon's materiality argument is difficult to take at face value.   Its lack of seriousness can be seen when it engages in *ad hominem* attacks on the Welch Defendants rather than provide the Court with law to support its position.  Equally problematic, OneBeacon states that "the conduct of Welch and Wooten described in *Dominion Satellite* displays a pattern and propensity by Welch and Wooten of shirking the ethical obligations imposed upon them as members of the bar."  (OneBeacon Memorandum at 30).

It is not clear how one court order amounts to a "pattern and practice," nor does OneBeacon explain such.  This is because OneBeacon's only hope to distract the Court from **its** demonstrable pattern and practice of bad faith conduct is to fill its brief with substanceless rhetoric.  Moreover, OneBeacon's contention that a court can only find that a risk was material, but cannot find that a risk was *im*material is equally nonsensical, and evidences a basic misunderstanding of a court's  powers to determine matters before it.  (*Id.* at 27).

OneBeacon further contends that Welch Defendants do not have any authority that materiality of the risk can be determined as a matter of law, and that none putatively exists.  (*Id.*). This is incorrect on both counts.  *See Hinna v. Blue Cross Blue Shield of Texas*, 2007 WL 3086025, at *6 (N.D. Tex. 2007) (determining as a matter of law, on defendant's Rule 56 motion, that risk was material), cited on page 2 of the Welch Defendants' Memorandum.

Besides being incorrect (again) on the law, OneBeacon also fails to tell the Court that *Inter-Oceans Insurance Company v. Ross*, the case it relies so heavily on, (OneBeacon Memorandum at 27-28), has been overruled on at least one point of insurance law and has not been cited for its "materiality test" by another court since 1969.  *See Union Bankers Insurance Company v. Shelton*, 889 S.W.2d 278, 282 n.9 (Tex. 1994) (overruling *Inter-Ocean* regarding

proof of intent to deceive); *Odom v. Insurance Co. of State of Pa.*, 441 S.W.2d 584, 587 (Tex. Civ. App.—Austin 1969) (the last case to cite *Inter-Ocean*'s materiality test).[10]

In fact, the touchstone case for materiality to the risk is *Robinson v. Reliable Life Insurance Company*. 569 S.W.2d 28, 29 (Tex. 1978). There, the Texas Supreme Court held: "[T]he principal inquiry in determining materiality is whether the insurer would have accepted the risk if the true facts had been disclosed." *Id.*; *Hinna*, 2007 WL 3086025, at *6 (N.D. Tex. 2007) (citing *Robinson*). Here, without question, the 2004 *Dominion* Attorneys Fees Order was immaterial to OneBeacon.

The proof is in the proverbial pudding. The 2006 policy application—the Welch Defendants' first policy written by OneBeacon—asks the following questions:

9.      In the past five years, has any action been taken against any lawyer proposed for this insurance for disbarment, suspension, reprimand, or other disciplinary action? Please include any pending actions.

(Dkt. No. 20, Exh. 3 at page 3 of 5). Additionally, nowhere in the 2006 application does the term "sanction" appear. (Exh. 3 *passim*). Yet OneBeacon wrote the 2006 policy which is identical to the 2007 and 2008 renewal policy.[11] If a court-order sanctioned was material to the risk that OneBeacon was insuring, then it is reasonable to inquire why OneBeacon wrote the initial 2006 policy based on an application that does not even mention the word "sanction" or anywhere require disclosure of the 2004 *Dominion* Attorneys Fees Order. OneBeacon's materiality argument is hollow.

---

[10] And the fact that OneBeacon fails to tell the Court this, in addition to being wrong on the state of the law, while attempting to throw stones at the Welch Defendants' veracity (Memorandum at 27 n.12), is yet another example of its tired litigation tactics.

[11] The Welch Defendants paid OneBeacon $54,691, $57,754, and $55,947 in premiums for the 2006, 2007 and 2008 policies, respectively.

What is more, OneBeacon's argument that it "cannot be the case" "[u]nder the theory of materiality the Welch Defendants advocate, a lawyer's misrepresentation in an application stating that he never committed any intentional, criminal, dishonest, malicious or fraudulent act, would not be material, because that type of conduct . . . would be excluded from coverage under the policy ultimately issued" folds under scrutiny.   It is undisputed that OneBeacon's applications never ask about such conduct.  As noted above, if criminal and fraudulent conduct (etc.) is material to OneBeacon, one must question why it fails to ask about such conduct in its policy applications.  (Dkt. No. 20, Exhs. 1 & 2 *passim*).

The inquiry answers itself when viewed in the context of the language used in Question 42, OneBeacon's notice of Wooten's alleged misconduct since April 2008 (nearly 3.5 years before it finally invented its current interpretation of Question 42), and its rejection of DISH's *Stowers* demands resulting in an uncapped policy with OneBeacon liable for **at least** $12 million.

Because OneBeacon issued the 2006 insurance policy with the Welch Defendants based on a policy application that never even mentioned the term "sanction," it cannot now claim that the 2004 *Dominion* Attorneys Fees Order is material.  OneBeacon fails the Texas Supreme Court's materiality test.  *Robinson*, 569 S.W.2d at 29 ("[T]he principal inquiry in determining materiality is whether the insurer would have accepted the risk if the true facts had been disclosed").  Accordingly, the Court should dismiss OneBeacon's First and Second Causes of Action.

E.     OneBeacon's Allegation That It Has "Information And Belief" Regarding The Welch Defendants' Alleged Intent to Deceive Fails Heightened Pleading Requirements Of Federal Rule Of Procedure 9(b), Warranting Dismissal

A party may only plead fraud "upon information and belief" "where the fact relating to the alleged fraud are peculiarly within the perpetrator's knowledge." *Cont'l Common, Inc*., 553 F.3d at 873, n.6 (internal citation and quotation omitted).  Indeed, the plaintiff must "allege in the pleadings that **he did not have access to the facts** relating to the fraud in order to relax the requirements of Rule 9(b) and allow pleading 'on information and belief' to meet the particularity standard." *7-Eleven Inc. v. Puerto Rico-7 Inc*., Case No. 3:08-CV-00140-B, 2008 WL 4951502, at *2 (N.D. Tex. Nov. 19, 2008) (citing *United States ex rel. Doe v. Dow Chem. Co*., 343 F.3d 325, 330 (5th Cir. 2003)).

Amazingly, all OneBeacon can offer after conducting its investigation with access to all the hard copy and electronic files Welch's firm had related to the Connecticut incident, including internal firm e-mails, e-mails between the Welch Defendants and EchoStar, and firm billing records and access to Welch himself as well as electronically stored information, is that it has "information and belief" **with no factual support**. OneBeacon never pled that it did not have access to the requisite information to form its belief because it is simply unable to do so.

The policy states "**You** must cooperate with **us** and assist **us** investigating and defending any claim or potential claim."  (Dkt. No. 20, Exh. 1 at 13 of 17).  Unlike its Third Cause of Action (plead solely against Wooten), OneBeacon does not claim that the Welch Defendants refused to cooperate.  The Welch Defendants and their files were at all times available to OneBeacon and OneBeacon has not alleged the Welch Defendants failed to co-operate.  (Attached as Exhibit 14 are true and correct copies of multiple communications the Welch Defendants sent to OneBeacon setting forth his personal availability and the availability of the firm's files).  Indeed, the Welch Defendants (in addition to making repeated requests that OneBeacon settle the matter with DISH) made available all their electronically stored

information and offered OneBeacon the opportunity to search it.  (Exh. 14 at April 29, 2011 correspondence from Welch to OneBeacon).

Even now, when starkly confronted with the case law showing that it cannot fall back on "information and belief" where it had access to all the relevant facts, OneBeacon simply ignores this law and fails to contest the fact that it had access to Welch and all the relevant information. (OneBeacon Memorandum at 25-26).  Instead of following the Federal Rules of Civil Procedure, OneBeacon has "mistaken [the information and belief pleading rule"] for license to base claims of fraud on speculation or conclusory allegations." *United States ex rel. Thompson v. Columbia/HCA Healthcare Corp.*, 125 F.3d 899, 903 (5th Cir. 1997); *United States ex rel. Hebert v. Dizney*, 295 F. App'x 717, 723 (5th Cir. 2008) (allegations on "information and belief" "remain subject to the particularity requirements of Rule 9(b).")

Accordingly, for the separate and distinct reason that OneBeacon fails to properly plead the "intent to deceive" element of its affirmative defense, and the fact that its Response ignores the relevant law altogether, its First and Second Causes of Action should be dismissed with prejudice.

F.     OneBeacon's "One Bad Apple" Argument Regarding Wooten and Exclusion VII.A Makes Improper Assumptions, Cites No Relevant Case Law, and Relies on a Bait-and-Switch Defined Term

OneBeacon's Fourth Cause of Action is premised entirely on this analytical move:  Ross Wooten committed malpractice—without, **it is undisputed**, the Welch Defendants' knowledge (nowhere does OneBeacon allege or otherwise dispute this point)—and that Wooten's alleged knowledge of that "wrongful conduct" is imputed to the entire firm despite the undisputed fact

that the Welch Defendants had neither **actual or even constructive knowledge until March 2008**.[12]

Instead, to avoid coverage, OneBeacon alleges that before the inception of the 2006 policy, Wooten had a reasonable basis to believe that he had engaged in wrongful conduct based on his handling of the *Russian Media Group* Litigation (and that he could foresee a claim being made against him based on such)  (Dkt. No. 1 at ¶¶ 56-58).  Therefore, or so OneBeacon's logic goes, by virtue of Wooten's alleged knowledge—again, which OneBeacon concedes the Welch Defendants had no actual or constructive knowledge of—this precludes coverage for **all insureds**, whether innocent or not.  (OneBeacon Memorandum at 32-38).  OneBeacon would have this Court believe that firms with hundreds or thousands of attorneys are at risk of having **zero coverage** for all attorneys in the event a first or second year associate hides a mistake.  This argument is difficult to take seriously.

As an initial matter, OneBeacon's command to the Court that it must apply Exclusion VII.A rather than Exclusion VII.B (or IX.A.2) is a sleight of hand.  First, it is plain why OneBeacon wants to misdirect the Court away from Exclusion VII.B (or IX.A.2): these exclusions have an explicit "innocent insureds" provision, and OneBeacon knows—after all, Welch is not mentioned in its Fourth Cause of Action—that the Welch Defendants are just that, innocent insureds.  It is undisputed that the Welch Defendants did not know or participate in Wooten's conduct.

---

[12] And the reason why OneBeacon never alleges such is because it knows that the Welch Defendants did not have actual or constructive knowledge of Wooten's conduct until March 2008.  It is undisputed that OneBeacon conducted an investigation and the Welch Defendants gave it access to all of the Welch Defendants files (both hard copy and electronic) related to the *Russian Media Group* Litigation including internal firm e-mails, e-mails between the Welch Defendants and EchoStar, firm billing records, audit letters and comprehensive case summaries and access to Welch himself (which OneBeacon consciously avoided taking advantage of).  Additionally, OneBeacon interviewed Defendant Boyle (the attorney of record in the *Russian Media Group* Litigation), and Rick Olsen (an attorney at the Welch Firm who investigated the matter for DISH).

Second, as OneBeacon itself recognized in its March 11, 2011 investigative reservation of rights letter (and three years after notice of the incident and after it took control of the defense), Exclusion VII.B—which covers "any intentional, criminal, dishonest, malicious or fraudulent" act or omission—is the proper exclusion to apply to Wooten's conduct (in its view). (Exhibit 15 is a true and correct of this letter).   OneBeacon, in its tardy reservation of rights letter, even **notified the Welch Defendants of the policy's innocent insured provision.**   In that letter, OneBeacon recognizes that the intentional act exclusion  may be  applicable  (and hired the Welch Defendants a  defense counsel as required under the policy).  In that letter, OneBeacon quotes and discusses Exclusion VII.B, the intentional and dishonest act exclusion.

> If it is determined that any insured under the Policy engaged in conduct precluded by the **intentional injury exclusion** set forth above, OneBeacon will have no obligation to pay any clam on behalf of or indemnify any such insured.  **For any insured who did not commit or participate in committing or who did not remain passive after learning of the acts and/or omissions with regard to the sanctions, any coverage under the Policy is [*sic*] in excess of the named insured's assets of anyone to whom the exclusion applies**.

(Exh. 15).

Nowhere in this letter does OneBeacon rely on Exclusion VII.A because it knew that exclusion does not apply (and has now waived its right to use that exclusion anyways).   Instead, OneBeacon arguably believed that Wooten's initial 2006 conduct was both intentional and dishonest.   After conducting its investigation (which showed that the Welch Defendants had no knowledge of Wooten's conduct and faced with a $12 million claim as a result of its own bad faith acts, OneBeacon wants to run away from this exclusion due to the innocent insured exception.   Moreover, OneBeacon's complaint, utilizing DISH's assertions, characterizes Wooten's conduct as knowingly agreeing to a Court order (all the while, knowing that DISH could not comply) and hiding this fact from the client.  (Dkt. No. 1 at ¶ 28).

A person cannot agree to something **un**intentionally and cannot consciously conceal a material fact without being dishonest.  This is what Wooten is accused of doing in 2006.  It is for this Court to determine for itself—not for OneBeacon to dictate by fiat—which exclusion applies here.  But Wooten's 2006 conduct is not the proximate cause of DISH's alleged damages.  In contrast, the conduct that led to the July 2007 sanctions order by the magistrate judge (in the *Russian Media Group* Litigation) was Wooten's failure to correct the discovery deficiencies after receiving the motion for sanctions outlining his deficiencies in February 2007.  (Dkt. No. 90).  Wooten then responded with a declaration outlining his good faith efforts to comply.  This conduct was potentially negligent and did not occur until after the 2006 policy was in place.

Moreover, OneBeacon's argument regarding the effect of the innocent insured provision is incorrect as a matter of law.  In order to support its innocent insured argument, the Welch Defendants pointed the Court to innocent insured language in Section IX.A.2 of the policy which states the notice exclusion "does not apply to **any of you**[13] who did not commit, or who did not remain passive after learning about one or more of the acts or omissions described in this exclusion."  (Dkt. No. 20, Exhs. 1 & 2 at 11 of 17).

OneBeacon's response to the Welch Defendants' innocent insured argument is almost entirely rhetoric with a conspicuous absence of case law (it cites one inapposite case).[14] Distilled, OneBeacon's argument is this: the innocent insured exception only applies to the notice of claims provision and intentional act exclusion in Exclusion VII.B, but does not apply to the "prior knowledge" exclusion (Exclusion VII.A).  (OneBeacon Memorandum at 32-38). OneBeacon makes this argument without any direction to relevant case law.  This is because OneBeacon's interpretation of the innocent insured's exception is  not supportable given the law (much like its "interpretation" of Question 42).  It defies logic that OneBeacon provides coverage to an innocent insured for intentional conduct, Exclusion VII.B, but not for mere negligence, Exclusion VII.A.

There is a dearth of case law  factually on all fours with the facts in this case.  However, the Welch Defendants have found one case where the insured and insurer presented identical arguments  to the ones here on nearly identical policy provisions.  In *Maher & Williams v. Ace American Insurance Company*, 2010 WL 3546234, at *1-6 (D. Conn. 2010), a partner of the firm

---

[13] OneBeacon's argument concerning the proper definition of "you" is also problematic.  This is discussed in further detail below.

[14] *Gilbert Texas Const., L.P. v. Underwriter at Lloyd's London* arose in the construction context and dealt with a garden-variety CGL policy, dealt with an "insured contract exception," and that court was dealing with the narrowing exception of tort liability.  How this case is relevant at all to the facts here is difficult to determine. OneBeacon makes no effort to connect it to this case—it cannot.

had three different malpractice actions instigated against him for conduct (ranging from a complete failure to defend a suit, to lying to his clients about how the dismissed cases were progressing, and "prepping" witnesses for depositions in a case that had already been dismissed). The partner admitted that he had committed malpractice.

Immediately prior to a settlement meeting, and after initially providing a defense, ACE denied coverage to the innocent insureds based on the basis of policy's prior-knowledge exclusion. 2010 WL 3546234, at *1-6. As the Welch Defendants did here, the innocent attorneys pointed to the innocent insured exception in the notice provision of the policy and as OneBeacon did here, the insurer (ACE) pointed to the absence of similar language in the prior knowledge exclusion. The federal district court was unimpressed with ACE's argument that the prior-knowledge exclusion did not explicitly have an innocent insured's provision (but the notice provision did):

> There, the District of Connecticut found that
>
> Regardless of whether Condition V.F applies [innocent insured provision in notice exclusion] on its own, **the existence of the Innocent Insured condition indicates that in drafting the Policy ACE had in mind the possibility of exactly what occurred in this case—that a lawyer would commit wrongful acts but then conceal those acts from the partners or other lawyers—and Condition V.F. evidences an intent on ACE's part not to penalize insureds who do not have actual knowledge of the wrongful acts (and, therefore, the ability to report them and the foreseeable claims that may arise from them)**. The text of Condition V.F does not compel the result that Exclusion IV.A [prior knowledge exclusion without explicit innocent insured langague] contemplates only actual, and not imputed, knowledge, but it suggests that such a reading would be consistent with the remainder of the Policy, which differentiates between insureds who have actual knowledge of wrongful acts from those individual insureds who do not.

*Maher & Williams*, 2010 WL 3546234 at *13. In other words, the district court took the innocent insured exception and found that it equally applied to the prior-knowledge exclusion. In doing so, the Court looked at the policy behind innocent insured provisions:

The very function of the prior-knowledge exclusion is "to ensure that only risks from unknown losses are insured," *see HSB Group*, 664 F.Supp.2d at 165 n. 7. As the treatise on which *HSB Group* relied explains, "[t]he prior knowledge clause operates prospectively from the time of application to preclude coverage of any future claim that arises from submitted claim information in response to the application question eliciting the applicant's pre-existing knowledge. Theoretically, this temporal limitation serves to enforce one of the primary axioms of insurance, namely, that insurance is intended to cover only the risk of unknown loss." Lawyers Professional Liability: A Primer on Prior Knowledge, 30 The Brief 29, 35 (Fall 2000) . . . . . The theoretical foundation of the prior-knowledge exclusion thus suggests that if an entity applying for claims-made insurance does not actually know of the wrongful acts that will or should reasonably be foreseen to result in a claim, but instead is deemed to know only by operation of law (but not of fact), then there is no reason to exclude that claim from coverage since such a claim would not be a "known loss."

*Id*. at 12.[15]

The district court found it significant as to whether the innocent insureds (i.e., the other lawyers at the firm who did not know about the bad apple's repeated misconduct) had no actual knowledge. Indeed, the court held even imputed knowledge was not enough to trigger the prior-knowledge exception:

the Court holds that Exclusion IV.A, the Prior-Knowledge Exclusion, does not bar coverage where Maher and the Firm imputedly knew, but did not actually know, of Sullivan's Wrongful Acts. For these reasons, and even assuming that Sullivan had not committed fraud on the partnership, the claims based on Sullivan's wrongful acts do not fall within the prior-knowledge exclusion by virtue of the imputed, but not actual, knowledge of these acts by M & W or its partners.

*Id*. at 13.

And this holding makes sense in light of the well-established principals of insurance law "the insurer bears the burden of establishing that an exclusion in the policy constitutes an avoidance of or affirmative defense to coverage." *Canutillo Indep. School Dist. v. National*

---

[15] It is significant that this prior-knowledge case was decided by the Federal District Court for the District of Connecticut. OneBeacon's office is in Connecticut, and its in-house claims counsel are located in Connecticut. Mr. Murray practices out of Gordon Rees' Connecticut office. The alleged malpractice of Wooten was arguably committed in Connecticut. Wooten and Boyle were admitted *pro hac vice* in this same court during the *Russian Media Group* Litigation.

*Union Fire Ins. Co. of Pittsburgh, Pa.*, 99 F.3d 695, 701 (5th Cir. 1996).   Exceptions and limitations in an insurance policy **are strictly construed against the insurer—OneBeacon.** *Kelly Assoc., Ltd. v. Aetna Cas. & Sur. Co.*, 681 S.W.2d 593, 596 (Tex. 1984).   Therefore, "we must adopt the construction of an exclusionary clause urged by the insured as long as that construction is not itself unreasonable, even if the construction urged by the insurer appears to be more reasonable or a more accurate reflection of the parties' intent."   *Barnett v. Aetna Life Ins. Co.*, 723 S.W.2d 663, 666 (Tex. 1987).

The Welch Defendants have placed before the Court a case that is substantially similar to the facts here (indeed, *Maher & Williams* was more egregious in the misconduct and the fact that the wrongdoer was a partner at the firm).   True to form, OneBeacon has placed before the Court **zero relevant law** and simply argues by assertion.

Additionally, OneBeacon's argument regarding the definition of "you" ignores the fact that the term is, in the best case scenario for OneBeacon, ambiguous in the context of Exclusion VII.A (and thus must be construed against OneBeacon).   "You" is a defined term in the policy which is defined as "the named insured" or any employee of named insured and a host of other people.   (Dkt. No. 20, Exhs. 1 and 2 at 6 of 17).

As an initial matter, however, the policy on other occasions states "This exclusion does not apply to **any of you**," (*Id*. at 11 of 17), and further states, "**we** agree to waive this exclusion, suspension or loss of coverage with respect to **each of you** who did not personally fail to comply . . . ."   (*Id*. at 13 of 17), and *also* states that "[i]f **we** issue two or more policies of Lawyers' Professional Liability Insurance to **any of you** . . . .   (*Id*. at 2 of 17).

That is, OneBeacon is not consistent in its use of the defined term "you." Therefore, "you" has to, by OneBeacon's own chosen language, mean something different that "any of you"

38

or "each of you."  Moreover, when there are multiple insureds, the singular use of the relevant term has been held to apply to the person claiming coverage.  *Transport Indemnity Company v. Wyatt*, 417 So.2d 568, 570 (Ala. 1982) ("The word 'INSURED,' as used in the subject provision means only the person claiming coverage and, as such, the term is used severally and not collectively").  In *Wyatt*, the policy defined "INSURED" as  several classes of people just as "you" in the OneBeacon policy identified multiples classes of people.  This makes sense especially in light of the policy language here.  In the "Reporting of Claims and Wrongful Acts" (Section IX) of the policy the notice requirement states "**You** must give **us** written notice of any **claims** against **you** or **potential claim(s)**. . . ."  (Exh. 1 at 12 of 17).  Rather plainly, this applies to the person who is claiming coverage; it cannot mean that each and every employee of the firm would have to give written notice when one attorney is aware of even a potential claim and seeks coverage.

Moreover, Exclusion VII.A states the policy will not cover "any **claim** arising out of a **wrongful act** occurring prior to the **policy period** if, prior to the effective date of the first Lawyers' Professional Liability Insurance Policy issued by **us** to the **named insured** and . . . if **you** had a reasonable basis to believe that **you** had committed a wrongful act, violated a disciplinary rule, or engaged in professional conduct." (The named insured is "T. Wade Welch & Associates").  In other words, similar to the use of "you" in Section IX, the "you," as used here must be singular.  Otherwise, OneBeacon would have used "any of you" in Section VII.A (prior knowledge exclusion), just as it did in Section II.C and Section VII.B.  OneBeacon knows how to refer to all of the insureds collectively when it wants to as evidenced by its use of the terms "any of you" and "each of you."  OneBeacon's failure to do the same in Exclusion VII.A is fatal to its current manufactured interpretation.

Insurance coverage exclusions must be construed narrowly and in favor of finding coverage. *Westport Ins. Corp. v. Cotton Schmidt, LLP*, 605 F. Supp. 2d 796, 800 (N.D. Tex. 2009). Given this principle of insurance law and OneBeacon's repeated use of "any of you" and "each of you" elsewhere in the policy, it is not unreasonable to require it to have used the term "any of you" if that is in fact what it intended when it is putatively attempting to exclude coverage. Moreover, other insurance companies have specifically used and know how to use "any of you" or "any insured" language in the prior knowledge exclusions. *Cotton Schmidt, LLP*, 605 F. Supp. 2d at 803-808 (rejecting insurance company's prior knowledge exclusion argument in policy using term "any INSURED"); *Westport Ins. Corp. v. Atchley, Russell, Waldrop & Hlavinka, LLP*, 267 F. Supp. 2d 601, 607 (E.D. Tex. 2003) (interpreting insurance policy stating "any INSURED"). Therefore, it is not unreasonable to place that burden on OneBeacon.

However, what separates this case from those, where the Court upheld the prior knowledge exclusion based on "any insured's" knowledge, is that those companies' policies explicitly and specifically made it clear who the exclusion applied to. *See Ehrgood v. Coregis Ins. Co.*, 59 F. Supp. 2d 438, 446 (M.D. Pa. 1998) (finding such where company used "any insured" exclusion applied). OneBeacon consciously chose not to use that language in its exclusion, when it is plain it knows how to, because the policy is meant to protect innocent insureds. *Accord Maher & Williams*, 2010 WL 3546234 at *12. OneBeacon's argument concerning the lack of an explicit carve out for innocent insured falls flat. Section VII.A does not require explicitly carving out innocent insureds because the exclusion is not broad enough to bring innocent insureds into the exclusion in the first instance because of its restrictive use of the singular "you."

Moreover, as with Question 42, the best possible scenario for OneBeacon is that the term "you" as used in Exclusion VII.A is ambiguous, meaning, in some instances singular and others collectively.  For example, courts have held that the term "any insured" can apply to a single insured seeking coverage or any insured.  *Pac. Indem. Co. v. Transp. Indem. Co.*, 81 Cal. App. 3d 649, 656 (Ct. App. 1978) ("The phrase "any employee of any insured" is susceptible to two interpretations: it could mean any employee of any insured who is seeking protection under the policy or it could mean any employee of any insured under the contract, whether or not that insured is seeking protection under the policy. It is unnecessary to show which interpretation is more logical. Since the clause is susceptible to more than one interpretation, it should be construed narrowly to provide for coverage."); *Wyatt*, 417 So.2d at 571 ("We also agree with the trial court that the term "any insured" in Exclusion B of Part II of the policy is ambiguous. The wording could be interpreted either to mean only singularly "any one of the insureds" or could apply collectively to the whole group of insureds. We also agree with the trial court that Exclusion D, when read along with Exclusion B of Part II(1), also creates ambiguity in determining the extent of coverage.  It is a general rule of construction that exceptions to coverage must be interpreted as narrowly as possible in order to provide maximum coverage for the insured. Further, such exceptions must be construed most strongly against the company drafting and issuing the policy.").

The Welch Defendants' interpretation is the only one that is consistent with OneBeacon's varied uses of "you," "any of you," and "each of you" in varied contexts and exclusions  and comports with the public policy considerations behind innocent insured exceptions as set forth in *Maher & Williams*.  *Maher & Williams v. ACE Am. Ins. Co.*, 2010 WL 3546234 at *12.

Accordingly, OneBeacon's Fourth Cause of Action should be dismissed with prejudice as to the Welch Defendants.

G.    Even if  Wooten's Alleged Knowledge Could Somehow be Inequitably  Imputed to the Welch Defendants, As a Matter of Law, Wooten's Conduct is Not a Prior Wrongful Act; Moreover, at Best for OneBeacon Given the Subjective-Objective Test for Determining the Application of the Prior Knowledge Exclusion Wooten's Knowledge, that Knowledge is an as yet Unresolved Fact Question, So OneBeacon is in Breach of Its Duty to Defend as a Matter of Law

Yet another legal hoop that OneBeacon must jump through in order to avoid having its Fourth Cause of Action dismissed is this: it has to show that Wooten's conduct was wrongful and he had a reasonable basis to believe such prior to December 20, 2006, the inception date of the original OneBeacon policy.  Once again, OneBeacon just assumes this to be case—it does not support this contention in its briefing with any case law.

First, prior-knowledge exclusions preclude coverage in two general situations: (1) when the attorney (here, Wooten) has subjective knowledge that a claim will be made against him;  or (2) when the attorney is engaged in willful blindness by ignoring the high probability that his actions will result in a claim being filed against him.  *Westport Ins. Corp. v. Atchley, Russell, Waldrop & Hlavinka, LLP*, 267 F. Supp. 2d 601, 607-08 (E.D. Tex. 2008).  This is the so-called subjective-objective analytical framework.  *Id*.

As a matter of law, OneBeacon's allegation of Wooten's knowledge—OneBeacon simply copies DISH's allegations in its claims, (Dkt. No. at ¶ 28)—are  insufficient to trigger the prior knowledge exclusion.  DISH's and OneBeacon's allegations do "not allege that any member of the [Welch Firm] had subjective knowledge that a claim would be filed against it prior to the policy period" nor do the allegations "suggest[] that any of the highlighted wrongs were so blatant that any lawyer would expect to see a claim because of them."  *Atchley*, 267 F. Supp. 2d at 623.  In *Atchley*, Chief Judge Folsom painstakingly analyzed the prior knowledge exclusion

and rejected the insurer's attempts to offer "a convenient interpretation for [the insurance company]" and determined that "[the interpretation] is not consonant with the parties' reasonable expectations." *Id*. 624. Judge Folsom made clear "to the extent that there are no allegations [by DISH that Wooten subjectively knew his conduct would cause a claim to be filed] **the Court will not imagine facts to defeat coverage**." *Id*. at 623. Therefore, the Court may also dismiss with prejudice OneBeacon's Fourth Cause of Action on this basis as well.

Additionally, under Texas law, which the parties agree governs this diversity case, the duty to defend and the duty to indemnify are distinct and separate duties. *See King v. Dallas Fire & Insurance Co.*, 85 S.W.3d 185, 187 (Tex.2002) (citation omitted). The duty to defend is broader than the duty to indemnify. *American States Insurance Co. v. Bailey*, 133 F.3d 363, 368 (5th Cir. 1998) (applying Texas law). Any uncertainty about whether allegations in a petition state a covered cause of action is resolved **in favor of the insured**. *National Union Fire Ins. Co. of Pittsburgh, Pa. v. Merchants Fact Motor Lines, Inc.*, 939 S.W.2d 139, 141 (Tex. 1997).

Setting to the side the deficiency of the pleading regarding Wooten's subjective knowledge, OneBeacon cannot show whether Wooten was reasonable: this is by definition a fact question; necessarily then, there is uncertainty and OneBeacon has a duty to defend the Welch Defendants. *Id*. Indeed, prior to this litigation, OneBeacon sent the Welch Defendants a letter detailing all the "uncertainties" regarding the *Russian Media Group* Litigation: "Nonetheless, are you are aware [*sic*] there are many uncertainties as to liability, if any, on the part of the Welch Firm or any of the individual attorneys involved in handling the [*Russian Media Group* Litigation]. Such uncertainties include the following: it is unclear whether the sanctions will be upheld; it is unclear what effect, if any, the sanctions will have on the defense of the [*Russian Media Group* Litigation]; it is unclear that DISH has any additional liability because of the

43

sanctions ordered against it . . . ."   (Attached as Exhibit 16 is a true and correct copy of OneBeacon's letter).

What is more, as a matter of law, the first time Wooten could have arguably been on notice of a possible claim against him was February 2007 (after the inception of the first policy) when Russian Media Group filed its motion for discovery orders.  (The Court may take judicial notice of this fact; it is Dkt. No. 83).  To wit, when the magistrate judge in the *Russian Media Group* Litigation entered the discovery order (and death penalty sanctions) against DISH on July 20, 2007, the court specifically noted that Wooten's awareness of the February 2007 motion, and concomitant failure to correct the discovery issues, was the reason the court was forced to act. (Attached as Exhibit 17 is a true and correct copy of the Order; it is Dkt. No. 90).

Although, OneBeacon is now estopped from taking any different position, it is the Welch Defendants position that it may be  the 2006 policy that applies to Wooten's alleged conduct.  If the 2006 policy applies here, OneBeacon's entire lawsuit disappears because it does not have any basis to deny coverage under the 2006 policy.

H.     OneBeacon's First, Second And Fourth Causes Of Action Should Be Dismissed With Prejudice Because The Deficiencies Cannot Be Corrected

In general, a court should allow a party an opportunity to amend defective pleadings before dismissing such pleading with prejudice.  *See Southbelt Wrecker Serv., Inc.*, 2005 WL 3132183, at *4.  However, "leave to amend is by no means automatic, and the decision to grant or deny leave to amend is entrusted to the sound discretion of the district court."  *Berge Helene Ltd. v. GE Oil & Gas, Inc.*, 2009 WL 1835193 (S.D. Tex. 2009).

A court may dismiss a complaint with prejudice when the deficiencies cannot be corrected.  *Southbelt*, 2005 WL 3132183 at *4; *see also Gutierrez v. Logan*, 2005 WL 2121554, at*13 (S.D. Tex. 2005) (futility and bad faith are proper reasons to deny leave to amend) (citing

44

*Foman v. Davis*, 371 U.S. 178 (1962)); *Mattis*, 260 F. App'x at 460 & n.2 (dismissing complaint with prejudice where amendments were proven futile).  In order to not be futile, the complaint as amended "must be factually suggestive, so as to 'raise a right to relief above the speculative level,' and into the 'realm of plausible liability.'" *Raytheon Co. v. Indigo Sys. Corp.*, 4:07-CV-109, 2008 WL 3852715 (E.D. Tex. Aug. 14, 2008) (citations omitted).

Here, OneBeacon's First and Second Causes of Action should be dismissed with prejudice because it cannot amend its pleading to cure the defects.  On its face, OneBeacon's Complaint fails to plead that it gave the Welch Defendants the essential element of notice to insured within 91 days of learning of the Welch Defendants' ostensible misrepresentation.  *See* Dkt. No. 1; TEX. INS. CODE § 705.005(b)(1).

Indeed, after faced with this argument, OneBeacon's response ignored the governing law, *In re VarTec Telecom, Inc.*, 04-81694, 2007 WL 2142499 (Bankr. N.D. Tex. July 23, 2007) (finding that the notice requirement "is an **essential element** of a defense based on misrepresentation."), and merely pointed to its rescission letter.  OneBeacon's stubborn refusal to comply with the law is not surprising: as Welch Defendants noted in their Motion to Dismiss the Attorney-in-Charge who signed OneBeacon's Original Complaint was on notice of the Dominion Attorneys Fees Order not later than January 2011.  **At no point does OneBeacon dispute this or submit a declaration from Bates stating to the contrary.  What is more, it removed Attorney-in-Charge Bates from the pleadings in violation of the District Local Rules**.

This significance of this is clear: OneBeacon does not have an employee who will subject themselves to perjury or an attorney who will commit a clear violation Federal Rule of Civil Procedure 11.  Because DISH provided the 2004 *Dominion* Attorneys' Fees Order to OneBeacon

and its attorneys no later than January 2011, thus obviating OneBeacon's attempted rescission, OneBeacon cannot plead this element in good faith; thus, its Complaint cannot be amended to cure this fatal flaw. *Gutierrez*, 2005 WL 2121554 at*13. Amendment will not cure the fact that "sanction" as used in Question 42 only applies to bar proceedings. Neither will amendment cure materiality since OneBeacon cannot change the fact that it wrote the 2006 policy on application that does not mention the term "sanction."

Likewise, the defect in OneBeacon's Fourth Cause of Action is not capable of amendment. As demonstrated by the Welch Defendants above, the language contained in the exclusion section of the 2007 and 2008 policies is at best (for OneBeacon) ambiguous as to who it applies, thus **as a matter of law** the policies must be construed against OneBeacon. *Barnett*, 723 S.W.2d at 666 (holding that courts must adopt insured's construction of a policy clause that excludes or limits coverage). No new fact or additional action by OneBeacon will change the language of the exclusion, and again OneBeacon has not disputed the fact that Welch Defendants gave it access to all of their files (both hard copy and electronic) related to the *Russian Media Group* Litigation, as part of its investigation. Finally, as a matter of law OneBeacon has a duty to defend.[16]

Based on the foregoing, OneBeacon's First, Second and Fourth Causes of Action should be dismissed with prejudice, as these deficiencies cannot be corrected, and any attempt to do so would be a futile waste of judicial resources.

---

[16] Despite, this fact OneBeacon sent a letter to the Welch Defendants on October 19, 2001, terminating defense counsel. (Attached as Exhibit 18 is a true and correct copy of this letter).

## III.   CONCLUSION

For the foregoing reasons, Defendants T. Wade Welch & Associates and T. Wade Welch respectfully submit that Causes of Action 1, 2, and 4 against T. Wade Welch & Associates and T. Wade Welch should be dismissed with prejudice.

RESPECTFULLY SUBMITTED this 19th day of December, 2011:

**Miller, Scamardi & Carraba, P.C.**

_____/s/David L. Miller_____
David L. Miller
SBN 14067300
Federal I.D. #8833
6525 Washington Avenue
Houston, Texas  77007
TEL: (713) 861-3595
FAX: (713) 861-3596
dmiller@millerscamardi.com

**ATTORNEYS FOR DEFENDANTS T. WADE WELCH & ASSOCIATES AND T. WADE WELCH**

*Of Counsel:*

Diane F. Burgess
SBN:  24036594
Federal I.D. #34380
Miller, Scamardi & Carrabba, P.C.
6525 Washington Avenue
Houston, Texas  77007
TEL: (713) 861-3595
FAX: (713) 861-3596
dburgess@millerscamardi.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this the 19th day of December, 2011, I electronically transmitted the foregoing to the Clerk of Court using the ECF System for filing and transmittal of a Notice of Electronic Filing, or by United States First Class Mail, Return Receipt Requested, to the following:


Veronica M. Bates                                Ross W. Wooten
Alissa K. Christopher                            3126 Redgum Drive
William E. Murray                                Katy, Texas 77449
Barry G. Flynn
*Attorneys for Plaintiff*                        Joseph H. Boyle
                                                 820 Gessner, Suite 940
                                                 Houston, Texas  77024
                                                 *Named Defendants*




                                    /s/ David L. Miller_____