UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| ONEBEACON INSURANCE COMPANY, § | |
| § | |
| *Plaintiff*, § | |
| § | |
| v. § | CIVIL ACTION H-11-3061 |
| § | |
| T. WADE WELCH & ASSOCIATES, § | |
| ROSS W. WOOTEN, T. WADE WELCH, § | |
| AND JOSEPH BOYLE, § | |
| § | |
| *Defendants*. § | |

**ORDER**

Pending before the court are (1) plaintiff OneBeacon Insurance Company's ("OneBeacon") motion to substitute counsel (Dkt. 17); and (2) defendants T. Wade Welch & Associates and T. Wade Welch's (the "Welch Defendants") motion to disqualify (Dkt. 24). The court held a hearing on these motions on January 24, 2012. Dkt. 59. After considering the motions, related filings, arguments of counsel, and applicable law, the court is of the opinion that the motion to substitute (Dkt. 17) should be GRANTED and the motion to disqualify (Dkt. 24) should be DENIED.

**I. BACKGROUND**

This is a declaratory action matter in which OneBeacon requests that the court enter a declaration (1) that an insurance policy that it issued to the T. Wade Welch & Associates firm (the "Welch Firm") in 2007 is void, does not provide coverage for, or OneBeacon has no obligation for a claim made by EchoStar Communication Corporation n/k/a DISH Network Corporation ("DISH") and Kelly Broadcasting Systems, Inc. arising from the Welch Firm's representation of them in *Russian Media Group, LLC v. EchoStar Communications Corporation and Kelly Broadcasting Systems, Inc.*, a Connecticut case; and (2) that an insurance policy that OneBeacon issued in 2008

is void, does not provide coverage for, or OneBeacon has no obligation for any claim that may arise out of the Welch Firm's representation of DISH in *Air Communication & Satellite, Inc. v. EchoStar Satellite Corporation*, a Colorado case. Dkt. 52. OneBeacon alleges that the Welch Firm made representations on its 2007 and 2008 insurance applications that neither the firm nor any member of the firm had ever been sanctioned by a court when, in fact, a Colorado court had ordered personal sanctions in excess of $62,000.00 against two members of the firm, Welch and defendant Ross W. Wooten, in *Dominion Satellite, Inc. v. Echostar Satellite, L.L.C.*, 430 F.3d 1269 (10th Cir. 2005). *Id.* OneBeacon further alleges that Wooten had a reasonable basis to know he had committed a wrongful act, violated a disciplinary rule, or engaged in professional misconduct with respect to the *Russian Media Group* case and could foresee that a claim would be made against him at the time the application was completed, but failed to inform OneBeacon. *Id.* As such, OneBeacon asserts that the exclusions in the 2007 policy preclude coverage for a claim DISH has asserted against the Welch Firm and Wooten with regard to the handling of that case. *Id.* Similarly, OneBeacon alleges that the exclusions in the 2008 policy preclude coverage for potential claims that may be brought in relation to the *Air Communication & Satellite* case. *Id.*

OneBeacon was originally represented by Alissa Kirksey Christopher and Veronica M. Bates of Hermes Sergent Bates, LLP. Dkt. 17. On October 18, 2011, OneBeacon filed a motion to substitute counsel in which it requested "that the law firm of Gordon & Rees LLP, and specifically attorneys Barry G. Flynn, *Christopher Raney* and Heidi Gumienny be allowed to substitute in and assume further representation of OneBeacon." *Id.* (emphasis added). The Welch Defendants objected to the substitution and filed a motion to disqualify Gordon & Rees, arguing that Christopher Raney has confidential information about DISH and the litigation at issue in this lawsuit that is irrebuttably imputed to the other attorneys at Gordon & Rees because Raney was a law clerk at the

Welch Firm during the summer of 2004 and worked on the *Dominion* and *Air Communication* cases. Dkts. 22, 24. DISH was one of the Welch Firm's main clients when Raney worked there as a law student, and Raney billed over 90 hours on the *Dominion* and *Air Communication* cases. *Id.* OneBeacon argues that Gordon & Rees is not disqualified because the Welch Defendants, who never an attorney-client relationship with Raney, have no standing to bring a motion to disqualify, and, even if they did, there are no grounds for disqualification because this matter is not substantially related to any matter Raney worked on while employed by the Welch Firm. Furthermore, OneBeacon asserts that Raney has no recollection of any matter that he worked on while employed at the Welch Firm, and has been instructed not to discuss the substance of the claims and defenses in this matter with anybody at Gordon & Rees.

## II. LEGAL STANDARD

A "'[d]istrict [c]ourt is *obliged* to take measures against unethical conduct occurring in connection with any proceeding before it.'" *In re ProEducation Int'l, Inc.*, 587 F.3d 296, 299-300 (5thCir. 2009) (quoting *In re Am. Airlines*, 972 F.2d 605, 610 (5th Cir. 1992)). However, "'[d]epriving a party of the right to be represented by the attorney of his or her choice is a penalty that must not be imposed without careful consideration.'" *Id.* at 300 (quoting *FDIC v. U.S. Fire Ins.*, 50 F.3d 1304, 1313 (5th Cir. 1995)). When considering motions to disqualify, courts should first look to 'the local rule promulgated by the local court itself.'" *In re ProEducation Int'l*, 587 F.3d at 299. Under the Local Rules of the Southern District of Texas, "the *minimum* standard of practice shall be the Texas Disciplinary Rules of Professional Conduct" (the "Texas Rules"). S.D. Tex. Loc. R. App. A, R.1A (emphasis added). The Local Rules indicate, in fact, that the court is not limited by the Texas Rules. *Id.* R. 1B. The court thus may consider other rules, and the Fifth Circuit has instructed that the ABA Model Rules of Professional Conduct are the "national standard[] to

3

consider in reviewing motions to disqualify." *In re ProEducation Int'l*, 587 F.3d at 299. The court's analysis is therefore guided by both the Texas Rules and the ABA Rules.

Texas Rule 1.05 deals with confidential information. Under Rule 1.05, lawyers may not knowingly

> Reveal confidential information of a client or a former client, . . . [u]se confidential information of a client to the disadvantage of the client unless the client consents after consultations, . . . use confidential information of a former client to the disadvantage of the former client after the representation is concluded unless the former client consents after consultation or the confidential information has become generally known, . . . [or] [u]se privileged information of a client for the advantage of the lawyer or of a third person, unless the client consents after consultation.

Tex. Disciplinary Rules of Prof'l Conduct R. 1.05. Texas Rule 1.09 discusses conflicts of interest relating to former clients. Under Rule 1.09:

> (a) Without prior consent, a lawyer who personally has formerly represented a client in a matter shall not thereafter represent another persons in a matter adverse to the former client:
> > (1) in which such other person questions the validity of the lawyer's services or work product for the former client;
> > (2) if the representation in reasonable probability will involve a violation of Rule 1.05; or
> > (3) if it is the same or a substantially related matter.
> (b) Except to the extent authorized by Rule 1.10, when lawyers are or have become members of or associated with a firm, none of them shall knowingly represent a client if any one of them practicing alone would be prohibited from doing so by paragraph (a).
> (c) When the association of a lawyer with a firm has terminated, the lawyers who were then associated with that lawyer shall not knowingly represent a client if the lawyer whose association with that firm has terminated would be prohibited from doing so by paragraph (a)(1) or if the representation in reasonable probability will involve a violation of Rule 1.05.

Tex. Disciplinary Rules of Prof'l Conduct R. 1.09.

The American Bar Association's rule regarding conflicts of interest relating to former clients is similar:

> (a) A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent, confirmed in writing.
> (b) A lawyer shall not knowingly represent a person in the same or a substantially related matter in which a firm with which the lawyer formerly was associated had previously represented a client
> > (1) whose interests are materially adverse to that person; and
> > (2) about whom the lawyer had acquired information protected by Rules 1.6 and 1.9(c) that is material to the matter;
> > unless the former client gives informed consent, confirmed in writing.
> (c) A lawyer who has formerly represented a client in a matter or whose present or former firm has formerly represented a client in a matter shall not thereafter:
> > (1) use information relating to the representation to the disadvantage of the former client except as these Rules would permit or require with respect to a client, or when the information has become generally known; or
> > (2) reveal information relating to the representation except as these Rules would permit or require with respect to a client.

ABA Model Rules of Prof'l Conduct R. 1.9.

In the Fifth Circuit, courts "do not mechanically apply the rules of disqualification." *Johnston v. Harris Cnty. Flood Control Dist.*, 869 F.2d 1565, 1569 (5th Cir. 1989). Instead, they "scrutinize the 'precise nature of the relationship between the present and former representations.'" *Id.* (quoting *Duncan v. Merrill, Lynch, Pierce, Fenner & Smith*, 646 F.2d 1020, 1029 (5th Cir. 1981)). The party seeking disqualification must establish: "1.) an actual attorney-client relationship between the moving party and the attorney he seeks to disqualify and 2.) a substantial relationship between the subject matter of the former and present representations." *Id.*

### III. ANALYSIS

The Welch Defendants argue that Raney, and consequently Gordon & Rees, cannot represent OneBeacon, because Raney worked on matters central to OneBeacon's complaint in this matter when he worked at the Welch Firm. Moreover, the Welch Defendants assert that erecting a "Chinese Wall" around Raney will not remedy the problem because there is an irrebuttable presumption that

5

Raney obtained confidential information while working at the Welch Firm and a second irrebuttable presumption that he shared it with the attorneys at Gordon & Rees. Dkt. 22. OneBeacon argues that Gordon & Rees should not be disqualified because (1) the Welch Firm cannot move to disqualify Raney because it did not have an attorney-client relationship with Raney; and (2) there is not a substantial relationship between the matters on which Raney worked as a law student at the Welch Firm and the issues in this case. Dkt. 28.

**A.    Attorney-Client Relationship**

The rule allowing a former client to seek disqualification of an attorney who appears on behalf of an adversary "rests upon the presumption that confidences potentially damaging to the client have been disclosed to the attorney during the former period of representation." *In re Yarn Processing Patent Validity Litig.*, 530 F.2d 83, 89 (5th Cir. 1976). Usually, courts may only disqualify attorneys for a conflict of interest if the former client moves for disqualification. *Id.* at 88. However, there are a few "narrow exceptions," such as if there is an "unethical change in sides that [is] manifest and glaring." *Id.* at 89.

Here, it is Raney's former employer, the Welch Firm, rather than his former client, DISH, that moves for disqualification. Raney's relationship with the Welch Firm is an employee-employer relationship, not an attorney-client relationship. Thus, the court would normally need to determine whether one of the "narrow exceptions" to the rule requiring the movant to have had an attorney-client relationship exists. However, as acknowledged by OneBeacon during the hearing, DISH, though a non-party, has joined in the Welch Firm's motion to disqualify.[1] *See* Dkt. 47 at 9 n.4.

---

[1] DISH has moved to intervene in this action, but its motion is not yet ripe. Dkt 47. In its motion, DISH notes that it "seeks to register its objection to Gordon & Rees's representation of OneBeacon directly with the Court . . . and joins in the arguments previously advanced by the Welch Defendants." Dkt. 47 at 9 n.4.

6

Thus, the client has raised the issue. OneBeacon's argument that the Welch Defendants cannot raise this issue because they did not have an attorney-client relationship with Raney is no longer valid.

In connection with its argument that the Welch Firm cannot raise this issue because it did not have an attorney-client relationship with Raney, OneBeacon argues that the conflict of interest rules only apply when an attorney seeks to represent a new client *against* a former client, and that here the new client—OneBeacon—is not adverse to the former client—DISH. Dkt. 28. In fact, OneBeacon argues that DISH is adverse to the Welch Firm because it has made a claim against the Welch Firm and has thus waived the attorney-client privilege as it relates to matters in the claim. Dkt. 28.

First, while OneBeacon did not file a claim in this court against DISH, it is still pursuing a claim that is adverse to DISH's interests. DISH has moved to intervene in this action, arguing that it "actually has more to gain or lose in this action than the current parties." Dkt. 47. In this lawsuit, OneBeacon seeks to invalidate insurance policies that may provide coverage for the claims DISH asserts in the malpractice case. Dkt. 52. DISH, of course, if it proves malpractice against the Welch Defendants, would like to be able to recover under the OneBeacon policies, so DISH's and OneBeacon's interests are adverse.

Second, with regard to the waiver argument, OneBeacon is correct that if a litigant "places information protected by [the attorney-client privilege] in issue through some affirmative act for his own benefit," the attorney-client privilege is waived. *Conkling v. Turner*, 883 F.2d 431, 435 (5th Cir. 1989). However, it is waived only as to the topics placed at issue. *See Apex Mun. Fund v. N-Grp. Secs.*, 841 F. Supp. 1423, 1431 (S.D. Tex. 1993). Here, while DISH has potentially placed privileged information at issue by making a claim relating to the sanctions ordered against DISH while the Welch Firm represented DISH in the *Russian Media* case and requiring the defendants to execute tolling agreements, any potential waiver of the privilege applies only to the information put

7

at issue—not to every privileged communication DISH had with the Welch Firm during the years in which the Welch Firm represented DISH. Thus, even if the claim and tolling agreements result in a waiver of the attorney-client privilege as to *some* communications between DISH and the Welch Firm, not all claims to privilege are waived. Moreover, OneBeacon has not provided the court with any authority suggesting that a waiver of privilege deprives a party of standing to request disqualification due to an alleged conflict of interest.[2]

**B.    Substantial Relationship**

OneBeacon argues that Gordon & Rees should not be disqualified because this case, which is really about whether the Welch Firm made misrepresentations on its 2007 and 2008 insurance applications, is not substantially related to the matters that Raney worked on as a law student for the Welch Firm, and that, regardless, Raney does not remember anything about the matters he worked on at the Welch Firm and has been instructed not to work on this case at Gordon & Rees. The Welch Firm asserts that Raney did work on matters that were substantially related to this case while employed by the Welch Firm, as he billed a significant number of hours to the very cases put at issue in the complaint. The Welch Firm argues that screening Raney is insufficient because, under Texas law, Raney is irrebuttably presumed to have obtained confidential information while working for the Welch Firm and is irrebuttably presumed to have shared that information with the attorneys at his new firm. OneBeacon argues that the Texas presumptions do not apply in federal court.

---

[2] Information does not have to be privileged to be considered "confidential." *See* Tex. Disciplinary Rules of Prof'l Conduct R. 1.05(a) ("Confidential information includes both privileged and unprivileged client information."). The Texas confidentiality rule "reinforces the principles of evidence law relating to the attorney-client privilege," but it also "furnishes considerable protection to other information falling outside the scope of the privilege." *Id.* cmt. 4.

### 1.     Presumptions.

Texas courts presume that individuals who have worked for a particular case at one firm gained confidential information relating to that client and that, if the individual goes to work for a firm representing a party that is adverse to that client, the individual has shared confidential information with attorneys at his or her new firm. Texas courts apply these rules differently when a nonlawyer, as opposed to a lawyer, is the source of a potential conflict, making a distinction between the difference in the "likelihood of contact with confidential information." *In re Guaranty Ins. Servs., Inc.*, 343 S.W.3d 130, 133 (Tex. 2011). If a lawyer previously worked on the same or a substantially related matter, "there is an *irrebuttable* presumption that the lawyer *obtained* confidential information during the representation." *Id.* at 134. When the lawyer moves to a firm representing a party opposing the lawyer's former client, "a second *irrebuttable* presumption arises—that the lawyer has *shared* the client's confidences with members of the second firm." *Id.* If, on the other hand, a nonlawyer worked on a matter at a prior firm, while there is still a "*conclusive* presumption that confidences were *obtained*, but "the second presumption—that confidences were *shared* with members of the second law firm—may be rebutted where nonlawyers are concerned." *Id.* The new firm may rebut that presumption by (1) instructing the nonlawyer not to work on any matter on which he or she worked during his or her prior employment or about which he or she has information relating to the former employer's representation; and (2) taking reasonable steps to ensure that the nonlawyer does not work "in connection with matters" on which the nonlawyer worked during the prior employment. *Id.* (citations and quotations omitted). "In most cases involving nonlawyers, "disqualification is not required provided 'the practical effect of formal screening has been achieved.'" *Id.* (quoting *Phoenix Founders, Inc. v. Marshall*, 887 S.W.2d 831, 836 (Tex. 1994)).

9

Here, Raney was a nonlawyer while he worked at the Welch Firm. The parties have cited no cases, and the court has found none, concerning how the presumptions would work with regard to a law student who works for a firm while attending law school and then goes to work for a different firm after becoming a lawyer. However, since there is really only a distinction in the presumptions relating to sharing confidences with the second firm, and Raney was already a lawyer by the time he started working for the second firm, it makes sense to apply the rules relating to lawyers rather than nonlawyers. Thus, it is irrebuttably presumed, if one is applying Texas law, that Raney obtained confidences when he worked at the Welch Firm and that he shared them with members of Gordon & Rees.

OneBeacon asserts that these presumptions do not apply in federal court. In *American Airlines*, the Fifth Circuit indicated that it is irrebuttably presumed that confidential information was disclosed during the prior representation and that these confidences will be shared with lawyers at the new firm. *Am. Airlines*, 972 F.2d at 614 & n.1. However, in *ProEducation International*, the Fifth Circuit pointed out that the *American Airlines* court did not actually apply the presumption, so it is merely dicta, and the cases upon which the *American Airlines* court relied for the presumption were applying an old version of the Texas Rules. *ProEducation Int'l*, 587 F.3d at 303-04. The Fifth Circuit determined that an attorney should have an opportunity to demonstrate that he or she did not obtain confidential information while working at his or her previous firm under both the ABA Rules and the current version of the Texas Rules. *Id.* at 304.

While the court in *ProEducation International* questioned the continued applicability of the irrebuttable presumptions, it did so in the context of considering whether an attorney *who did not work on a particular matter* at his previous firm was irrebuttably presumed to have obtained confidential about the matter because other attorneys at the old firm worked on the case. Here, the

10

Welch Defendants have submitted evidence demonstrating that Raney *did* receive confidential information about the cases at issue while working at the Welch Firm, so there is no need to rely on the presumption that he received confidential information. It is clear that the presumption that Raney has shared confidences with other members of his firm still applies, as the Texas Supreme Court, which promulgates the rules, has recently reiterated the applicability of the irrebuttable presumptions under the current version of the Texas Rules in *Guaranty Insurance Services*. *Guaranty Ins. Servs.*, 343 S.W.3d at 134. Thus, if Raney worked on matters that are substantially related to the issues in the current lawsuit, screening him from this case is not sufficient.

> **2.     Relationship Between Raney's Work and This Lawsuit.**

The key question here is whether this matter is the same as or substantially related to the matters Raney worked on while employed by the Welch Firm. *See* ABA R. 1.9(b) (may not represent "in the same or a substantially related matter"); Tex. R. 1.09(a)(3) (may not represent if "it is the same or [a] substantially related matter"). If so, then the presumptions noted above require disqualification. Under Texas law, the severity of this remedy "requires the movant to establish by a preponderance of the facts indicating a substantial relation between the two representations." *NCNB Tex. Nat'l Bank v. Coker*, 765 S.W.2d 398, 400 (Tex. 1989). Under both Texas law and Fifth Circuit precedent, the moving party bears the burden of showing a substantial relationship. *Id.*; *see Am. Airlines*, 972 F.2d at 614.

According to the Fifth Circuit, "[d]isqualification rules not only preserve the purity of particular trials but also unavoidably affect relationships among attorneys and clients in general," and that the "court bars attorneys from appearing in substantially related matters not only to protect individual parties against the adverse use of information but also 'to aid the frank exchange between attorney and client.'" *Am. Airlines*, 972 F.2d at 619. "The substantial relationship test [thus] aims

11

to protect the adversary process but also, or as part of this concern, seeks to provide conditions for the attorney-client relationship." *Id.* at 620. A "substantial relationship may be found only after the moving party delineates with specificity the subject matters, issues and causes of action common to prior and current representations and the court engages in a painstaking analysis of the facts and precise application of precedent." *Id.* at 614 (quotations and citations omitted).

Under Texas law, the "moving party must prove the existence of a prior attorney-client relationship in which the factual matters involved were so related to the facts in the pending litigation that it creates a genuine threat that confidences revealed to his former counsel will be divulged to his present adversary. Sustaining this burden requires evidence of specific similarities capable of being recited in the disqualification order." *NCNB Tex. Nat'l Bank*, 765 S.W.2d at 400. "[S]uperficial resemblances among issues do not rise to the level of a substantial relationship." *In re Drake*, 195 S.W.3d 232, 236 (Tex. App.—San Antonio 2006, mandamus denied).

Raney claims that he has "absolutely no recollection of any of the work [he] performed while [he] was employed with the Welch Firm, including the issues, topics, or substance of any such work." He does, however, "recall that DISH . . . was a client of the Welch Firm . . . , [but he has] absolutely no recollection of performing any work for DISH specifically, and [he does] not recall any information that may have been imparted to [him] concerning DISH during [his] employment with the Welch Firm." Dkt. 28-8. Thus, he claims that he has "not shared and could not have shared any such information with any other employee, member, partner, or associate of Gordon & Rees, LLP." *Id.* Additionally, he notes that, "[o]ther than relaying information necessary to prepare [his] declaration and to respond to a certain cease and desist letter . . . , [he has] not performed any work on" this lawsuit, and he has "been instructed not to discuss the substance of the claims and defenses in this matter with anybody at Gordon & Rees." *Id.*

Despite Raney's current inability to remember the work he performed while working at the Welch Firm, his timesheets indicate that he worked 206.5 hours on DISH cases while he was working for the Welch Firm. Dkt. 22, Exh. 10. He worked 79.75 hours on the *Air Communication & Satellite* matter and 11.5 hours on the *Dominion* matter. *Id.* His work on these cases, however, was not substantially related to the issues in this lawsuit.[3]

Here, the *Air Communication & Satellite* case is at issue because the Welch Firm allegedly failed to disclose certain information during discovery. Raney's work on the *Air Communication & Satellite* case involved discrete issues that are wholly distinct from the discovery problems at issue in this case, and, more importantly, has nothing to do with Welch's alleged misrepresentation on the OneBeacon insurance application.

The *Dominion* case is at issue in this lawsuit because the court in that case ordered sanctions against Welch and Wooten in excess of $62,000.00, and then Welch represented on the 2007 Application for insurance that neither he nor the Welch Firm had not

> ever been disbarred, refused admission to practice law, suspended, reprimanded, sanctioned, fined, placed on probation, held in contempt or the subject of any complaint, grievance or action by any court, administrative agency or regulatory body.

Dkt. 52. The district court ordered sanctions in the *Dominion* case because "the behavior of EchoStar's [n/k/a/ DISH] attorneys was both 'unreasonable and vexatious'"; "the arguments presented on behalf of EchoStar were completely meritless and therefore the course of the proceedings was unwarranted, [and the] attorneys need not have filed lengthy briefs at every stage

---

[3] The court requested that the Welch Firm provide it with unredacted copies, for *in camera* review, of the exhibits it had submitted demonstrating that Raney worked on and wrote legal memoranda for the DISH cases at issue in this lawsuit. The court has reviewed these documents and is satisfied that the work Raney performed was not substantially related to the issues presented in this case.

13

of the arbitration and court proceedings in order to preserve EchoStar's arguments for appeal." *Dominion Video Satellite, Inc.*, 430 F.3d at 1279. Raney's work on the *Dominion* matter related to a specific discovery issue that has absolutely nothing to do with the behavior for which Welch and Wooten were sanctioned or Welch's alleged misrepresentation on the OneBeacon insurance application.

### IV. CONCLUSION

Because Raney's work for DISH while he was employed by the Welch Firm is not substantially related to the issues in this case, the Welch Defendants' motion to disqualify (Dkt. 24) is DENIED. OneBeacon's motion to substitute (Dkt. 17) is GRANTED. Attorneys Barry G. Flynn and William E. Murray of Gordon & Rees LLP, shall be substituted as counsel for OneBeacon in place of Veronica Bates and Alissa Christopher of Hermes Sargent Bates, LLP.[4] Alissa Christopher and Veronica Bates are hereby allowed to withdraw as counsel.

It is so ORDERED.

Signed at Houston, Texas on February 6, 2012.

_____
Gray H. Miller
United States District Judge

---

[4] Originally, OneBeacon requested that Flynn, Raney, and Heidi Gumienny be substituted for its current lead counsel and that Murray remain on the record as counsel of record. Dkt. 17. However, OneBeacon represented in its response to the motion to disqualify that Murray is now its lead counsel of choice. Dkt. 28.