UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ONEBEACON INSURANCE COMPANY,<br>    *Plaintiff*, | §<br>§<br>§ | |
| v. | § | CIVIL ACTION H-11-3061 |
| T. WADE WELCH & ASSOCIATES, *et al.*,<br>    *Defendants*. | §<br>§<br>§ | |

## ORDER

This order relates to a discovery dispute plaintiff OneBeacon Insurance Company ("OneBeacon") and defendants T. Wade Welch & Associates (the "Welch Firm") and T. Wade Welch (collectively, the "Welch Litigants") are having about OneBeacon's assertion that its claims notes on or after December 22, 2010, are protected by either the attorney-client privilege or the work-product doctrine. The Welch Litigants submitted a letter brief to the court relating to the dispute on September 30, 2013, pursuant to paragraph 6.C of the court's procedures. Dkt. 202, Ex. A. Intervenor DISH Network Corporation joined the Welch Litigants' letter. *See* Dkt. 202. OneBeacon submitted a response in which it argued that the attorney-client privilege extends the communications with attorneys who are investigating claims related to the rendition of legal services. The court set a hearing on October 8, 2013, at 11:00 a.m. *See* Dkts. 199, 200. During the hearing, the court ordered the parties to brief the issue of when OneBeacon reasonably anticipated litigation. Dkt. 200. DISH and the Welch Litigants filed a joint brief, OneBeacon filed a brief, and the parties then responded to each others' briefs. Dkts. 202–04, 206–07. After considering the briefs and applicable law, the court is of the opinion that OneBeacon may appropriately assert that it anticipated litigation as of December 22, 2010.

## I. BACKGROUND

OneBeacon filed its original complaint on August 22, 2011, seeking a declaratory judgment that two insurance policies that it issued to the Welch Firm were void *ab initio* or provided no

coverage for claims made against the Welch Firm by DISH, and that OneBeacon had no obligations under these policies for DISH's claim. Dkt. 1. The amended complaint, filed January 19, 2012, seeks essentially the same relief. Dkt. 52. OneBeacon asserts (1) that the policies are void because the Welch Firm answered a question on the applications for the insurance policies about whether any member of the firm had been reprimanded or sanctioned by a court in the negative even though a member of the firm had been reprimanded or sanctioned; and (2) that there is no coverage because the exclusion in the policy for wrongful acts occurring prior to the policy period applies. *Id.* The reprimand or sanctions at issue and alleged wrongful acts occurred while the Welch Firm was representing DISH in a lawsuit styled *Russian Media Group, LLC v. EchoStar Communications Corporation & Kelly Broadcasting Systems, Inc.* (the "*Russian Media Group* Litigation"). *Id.* The Welch Litigants filed counterclaims for breach of the policies issued by OneBeacon, breach of the common law duty of good faith and fair dealing, unfair insurance practices in violation of the Texas Insurance Code, non-compliance with the prompt payment of claims portion of the Texas Insurance Code, negligence, gross negligence, and violations of the Texas Deceptive Trade Practices Act. Dkt. 193-1.

During discovery, the Welch Litigants requested production of OneBeacon's claims file based on the DISH claim. Dkt. 202-1. OneBeacon produced a redacted version of its claims file; it asserted that the redactions were based on attorney-client privilege or the work-product doctrine. *Id.* OneBeacon also withheld certain documents in the file, asserting that they were privileged due to the attorney-client privilege or the work-product doctrine. *Id.*

The Welch Litigants argue that none of the documents relating to the investigation and evaluation of its claim are privileged, even if the investigation was conducted by attorneys, because they were prepared in the ordinary course of OneBeacon's business. *Id.* OneBeacon argues that DISH made a request for OneBeacon to help fund, up to its policy limits, a settlement of the *Russian Media Group* Litigation on December 22, 2010, and OneBeacon immediately anticipated litigation

2

due to the nature and size of the claim. Dkt. 204. OneBeacon retained Hermes Sargent Bates LLP ("HSB") as coverage counsel in January 2011, allegedly anticipating that litigation with the Welch Firm would be imminent, and it retained Edwards Angel Palmer & Dodge LLP for supplemental legal advice regarding coverage issues on May 18, 2011. *Id.* OneBeacon argues that its communications with counsel and documents prepared by counsel after it received the demand letter from DISH are privileged or subject to the work-product doctrine.

Despite receiving a demand letter from DISH in December of 2010 and retaining counsel in January and May of 2011, OneBeacon did not send a letter to the Welch Litigants rescinding the insurance policies until August 19, 2011. *Id.* The Welch Litigants argue that this rescission date is the date that OneBeacon should be presumed to have anticipated litigation, as, until then, litigation may have been conceivable, but the primary purpose of claim-related documents was to assist OneBeacon in determining whether the claim was covered, which is purely an investigative function and part and parcel of an insurer's ordinary business. Dkt. 202. Thus, the Welch Litigants argue that OneBeacon may not claim privilege over communications with counsel or documents prepared by counsel dated prior to August 19, 2011. *Id.*

## II. LEGAL STANDARD

### A.   Attorney-Client Privilege

The bedrock of all the privileged communications doctrines, the attorney-client privilege exists "to encourage full and frank communication between attorneys and their clients." *United States v. El Paso Co.*, 682 F.2d 530, 538 (5th Cir. 1982). The Fifth Circuit has defined the attorney-client privilege as follows: "(1) where legal advice of any kind is sought; (2) from a professional legal advisor in his capacity as such; (3) the communications relating to that purpose; (4) made in confidence; (5) by the client; (6) are at his instance permanently protected; (7) from disclosure by himself or by the legal advisor; (8) except that the protection be waived." *Id.* (citing 8 J. WIGMORE EVIDENCE § 2292).

3

In a corporate setting, the privilege extends to any employee of the corporation who, on instructions from a superior, communicates with counsel—inside or outside of the corporation. *Upjohn v. United States*, 449 U.S. 383, 394–95, 101 S. Ct. 677 (1981). With a few exceptions, a "'document need not be authored or addressed to an attorney in order to be properly withheld on attorney-client privilege grounds.'" *SmithKline Beecham Corp. v. Apotex Corp.*, 232 F.R.D. 467, 477 (E.D.Pa. 2005) (quoting *Santrade, Ltd. v. Gen. Elec. Co.*, 150 F.R.D. 539, 545 (E.D.N.C.1993)). "In the case of a corporate client, privileged communications may be shared by non-attorney employees in order to relay information requested by attorneys." *Id.* (citing *Cuno, Inc. v. Pall Corp.*, 121 F.R.D. 198, 202-03 (E.D.N.Y.1988)). However, the attorney-client "privilege does not shield documents merely because they were transferred to or routed through an attorney." *Resolution Trust Corp. v. Diamond*, 773 F.Supp. 597, 600 (S.D.N.Y.1991). "What would otherwise be routine, non-privileged communications between corporate officers or employees transacting the general business of the company do not attain privileged status solely because in-house or outside counsel is 'copied in' on correspondence or memoranda." *Andritz Sprout-Bauer, Inc. v. Beazer E., Inc.*, 174 F.R.D. 609, 633 (M.D.Pa.1997) (citing *United States Postal Serv. v. Phelps Dodge Refining Corp.*, 852 F. Supp. 156, 163–64 (E.D.N.Y.1994)). The distinction is based on the purpose of the communication. "[S]o long as the information is relayed for the purpose of obtaining legal counsel" and it meets the other requirements for maintaining privilege, then even if an attorney does not author or directly receive the communication it is still protected. *Apotex*, 232 F.R.D. at 479 (citing *Upjohn*, 449 U.S. at 394–95).

However, although courts accord the attorney-client privilege significant weight, it still operates within defined parameters. "The attorney-client privilege does not protect against discovery of underlying facts from their source merely because those facts have been communicated to an attorney." *El Paso*, 682 F.2d at 589. Additionally, the privilege may be waived through voluntary—and sometimes involuntary—disclosure to a third person lacking a common legal

interest. *Id.*; *Hodges*, 768 F.2d at 721. *But see* FED. R. CIV. P. 26(5)(B) (method through which a party may retrieve inadvertently produced privileged materials and maintain privilege). Moreover, "the privilege does not extend to communications between attorney and client where the client's purpose is the furtherance of a future intended crime or fraud." 1 MCCORMICK ON EVIDENCE § 95 (6th ed.). Finally, the "privilege may not be tossed as a blanket over an undifferentiated group of documents." *El Paso*, 682 F.2d at 539. "The privilege must be specifically asserted with respect to particular documents." *Id.*

**B.     Work-Product Doctrine**

Under Federal Rule of Civil Procedure 26(b)(3)(A),

> [A] party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent). But, subject to Rule 26(b)(4) [(expert discovery)], those materials may be discovered if:
> (i)     They are otherwise discoverable under Rule 26(b)(1) [i.e. are within the general scope of discovery]; and
> (ii)    The party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship obtain their substantial equivalent by other means.

Fed. R. Civ. P. 26(b)(3)(A). "The burden of establishing that a document is work product is on the party who asserts the claim, but the burden of showing that the materials that constitute work product should nonetheless be disclosed is on the party who seeks their production." *Hodges, Grant & Kaufmann v. U.S. Gov't, Dep't of the Treasury*, 768 F.2d 719, 721 (5th Cir. 1985). "The work product doctrine focuses only on materials assembled and brought into being in anticipation of litigation. Excluded from work product materials . . . are '(m)aterials assembled in the ordinary course of business, or pursuant to public requirements unrelated to litigation . . . .'" *El Paso*, 682 F.2d at 542 (quoting 48 F.R.D. at 501). Sometimes, "determining whether a document is prepared in anticipation of litigation is a slippery task." *Id.* But the general rule is that litigation "'need not be imminent . . . as long as the primary motivating purpose behind the creation of the document was

5

to aid in possible future litigation.'" *Id.* (quoting *United States v. Davis*, 636 F.2d 1028, 1040 (5th Cir. 1981)).

"Factors that courts rely on to determine the primary motivation for the creation of a document include the retention of counsel and his involvement in the generation of the document and whether it was a routine practice to prepare that type of document or whether the document was instead prepared in response to a particular circumstance. . . . If the document would have been created regardless of whether litigation was expected to ensue, the document is deemed to have been created in the ordinary course of business and not in anticipation of litigation." *Elec. Data Sys. Corp. v. Steingraber*, No. 4:02 CV 225, 2003 WL 21653414, at *5 (E.D. Tex. July 9, 2003) (citing *Piatkowski v. Abdon Callais Offshore, L.L.C.*, No. 99-3759, 2000 WL 1145825, at * 2 (E.D. La. Aug. 11, 2000)). It is not, however, "dispositive that the documents were prepared by plaintiffs and not by attorneys," as the rule "protects documents prepared by or for a party, as long as they are prepared in anticipation of litigation." *Id.* (citing *United States v. Nobles*, 422 U.S. 225, 238-39 (1975)).

### III. ANALYSIS

Here, the main issue is whether OneBeacon's communications with outside counsel relating to coverage are privileged and protected or whether, instead, OneBeacon's counsel was merely performing the ordinary business functions of an insurance company. "To the extent [an] attorney acted as a claims adjuster, claims process supervisor, or claim investigation monitor, and not as a legal advisor, the attorney-client privilege would not apply." *Harper v. Auto-Owners Ins. Co.*, 138 F.R.D. 655, 671 (S.D. Ind. 1991). Similarly, "[d]ocuments created by an insurer or its representative tend not to be protected by the work product doctrine if they were prepared as a 'more or less routine investigation of a possibly resistible claim.'" *Kan. City S. Ry. Co. v. Nichols Constr. Co., L.L.C.*, Nos. 05-1182, 05-5220, 05-4653, 2007 WL 2461014, at *5 (E.D. La. Aug. 27, 2007) (quoting *Tejada*

*Fashions Corp. v. Yasuda Fire & Marine Ins. Co. (U.K.), Ltd.*, No. 83 Civ. 5512 (RO), 1984 WL 500, at *3 (S.D.N.Y. June 18, 1984)). Thus, the key question is when did OneBeacon shift from merely investigating the claim to anticipating litigation. The Fifth Circuit has noted that litigation pertaining to coverage is appropriately anticipated from the date an insurer has a "solid basis to question the . . . insurance claim." *Dunn v. State Farm Fire & Cas. Co.*, 927 F.2d 869, 875 (5th Cir. 1991).[1]

The Welch Litigants insist that the critical date for determining when the primary purpose of the claims-related documents moved from investigation to anticipation of litigation is the date that the insurer made its coverage determination to deny the claim. Dkt. 202. OneBeacon, on the other hand, has submitted an affidavit in which its claims counsel states that OneBeacon began anticipating litigation after it received a letter from DISH requesting that OneBeacon fund, up to its policy limits, DISH's settlement of the *Russian Media Group* Litigation. Dkt. 204-2. OneBeacon asserts that this letter prompted it to anticipate litigation with the Welch Litigants concerning coverage and that it formally retained counsel to provide coverage-related advice within a month of receiving the letter. Dkt. 204.

While the court agrees that often the date an insurer anticipates litigation is the date that it denies coverage, a bright-line rule is inappropriate. *See Stout v. Ill. Farmers Ins. Co.*, 852 F. Supp. 704, 707 (S.D. Ind. 1994) ("Any bright-line rule would only encourage parties to manipulate the privilege."). The Welch Litigants rely heavily on *Lanelogic, Inc. v. Great American Spirit Insurance Company* for their assertion that the date coverage was denied is the key date here. In *Lanelogic*,

---

[1] In *Dunn*, the Fifth Circuit considered whether the work-product doctrine protected documents prepared by State Farm's attorneys, who were hired within a week of State Farm receiving notice that the plaintiff had confessed to intentionally setting fire to his house. *Dunn*, 927 F.2d at 875. The plaintiff argued that the documents in question were prepared before State Farm could reasonably have anticipated litigation. *Id.* The Fifth Circuit found, however, that the confession "gave State Farm a solid basis to question the Dunns' insurance claim" and that "from the date they were hired, State Farm attorneys could anticipate litigation." *Id.*

7

the federal district court in the Northern District of Texas considered whether the insurance company defendant should be compelled to produce its claims documents. *Lanelogic Inc. v. Great Am. Spirit Ins. Co.*, No. 3-08-CV-1164-BD, 2010 WL 1839294 (N.D. Tex. May 6, 2010). The insurance company argued that the documents were protected by the attorney-client privilege because they were prepared by the insurance company's outside counsel for the purpose of providing legal advice regarding the insurance company's obligations under the policy. *Id.* at *3. The plaintiff argued that the documents were made for the ordinary business purpose of adjusting claims. *Id.* The court held that the defendant's blanket assertion of privilege was insufficient. *Id.* As far as work-product protection, the court noted that courts "'have routinely recognized that the investigation and evaluation of claims is part of the regular, ordinary, and principal business of insurance companies'" and that, in an insurance dispute, "the question of whether the documents are work product often depends on whether the insurer can point to a definite shift from acting in its ordinary course of business to acting in anticipation of litigation." *Id.* at *5 (quoting *Douga v. D&A Boat Rentals, Inc.*, No. Civ. A. 04-1642, 2007 WL 1428678, at *4 (W.D. La. May 10, 2007)). The court examined the privilege log submitted by the defendants and determined that the documents at issue were created to assist with the coverage determination, not for litigation. *Id.* at *6. The court allowed the defendants to redact any documents revealing the opinions, evaluations, and other mental processes of its attorneys bearing on litigation strategy (core work product), but it otherwise ordered the defendants to produce all withheld documents. *Id.* at *6-*7.

Here, unlike in *Lanelogic*, OneBeacon has pinpointed a "definite shift from acting in its ordinary course of business to acting in anticipation of litigation." The Welch Defendants argue that this court, like the *Lanelogic* court, should determine that any documents related to the investigation that predate OneBeacon's coverage determination cannot have been created in anticipation of litigation and therefore were created in the course of OneBeacon's ordinary business. Dkt. 202.

OneBeacon asserts it attorneys were giving legal advice relating to coverage and other issues because litigation was reasonably anticipated after OneBeacon received the demand letter from DISH. Dkt. 204. The conclusory statement that OneBeacon anticipated litigation, standing alone, is not enough to show that OneBeacon anticipated litigation and that the attorney-client privilege or work-product doctrine should protect communications with attorneys about coverage or documents prepared by OneBeacon's attorneys after this date. *See Lanelogic*, 2010 WL 1839294, at *6 (considering the insurance company's statement that "the primary motivating purpose for the creation of such documents was to aid in possible future litigation" to be "self-serving" and finding that "other evidence suggests that litigation concerns were not the primary motivating purpose behind the creation of the documents at issue"). However, when one couples the statement that the matter was referred to outside counsel in anticipation of litigation with the contents of the letter received from DISH on December 22, 2010, and considers this information in light of the claims at issue in this litigation, it is entirely reasonable to believe that OneBeacon referred the matter to outside counsel in anticipation of litigation.

HSB was hired within one month of OneBeacon's receipt of the letter from DISH requesting that OneBeacon fund, up to the policy limits, DISH's settlement of the *Russian Media Group* Litigation. The DISH letter advised that "OneBeacon's failure to pay up to its policy limits, when a settlement within those limits is attainable, potentially expose[d] OneBeacon to liability for any judgment in excess of the policy limits." Dkt. 204-3. This demand, known as a *Stowers* settlement demand, put OneBeacon in the position of potentially facing a suit for damages in excess of its policy limits and made OneBeacon's anticipation of litigation reasonable. *See Am. Physicians Ins. Exchange v. Garcia*, 876 S.W.2d 842, 848-49 (Tex. 1994) (discussing the *Stowers* duty). Additionally, the letter contained information that could reasonably lead OneBeacon to determine that the DISH claim may not be covered. The letter asserts that an attorney at the Welch Firm

committed numerous wrongful acts starting in 2006.  Dkt. 204-3.  The letter also states that a member of the firm had been sanctioned on July 20, 2007.  *Id.*  The Welch Firm responded in the negative to the question about sanctions in their application for insurance with OneBeacon on December 6, 2007.  *See* Dkt. 52.  The court finds that OneBeacon had a "solid basis" to question coverage when it received DISH's letter and thus could reasonably anticipate litigation from the date it received the letter.

### IV. CONCLUSION

The Welch Litigants have not pointed to any specific documents in the privilege log that should not qualify for protection.  The court finds that attorney-client communications providing legal advice and documents prepared in anticipation of litigation on or after the date of the DISH letter are protected from discovery.

Signed at Houston, Texas on November 12, 2013.

_____
Gray H. Miller
United States District Judge