## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| ONEBEACON INSURANCE COMPANY, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | CIVIL ACTION H-11-3061 |
| | § | |
| T. WADE WELCH & ASSOCIATES, *et al.*, | § | |
| | § | |
| *Defendants*. | § | |

### ORDER

Pending before the court is defendants/counterplaintiffs T. Wade Welch & Associates (the "Welch Firm") and T. Wade Welch's (collectively, the "Welch Litigants") motion for partial summary judgment on plaintiff/counterdefendant OneBeacon Insurance Company's ("OneBeacon") fourth (cooperate) and fourth (deductible) affirmative defenses.[1] Dkt. 235. After considering the motion, response, reply, and applicable law, the court is of the opinion that the motion for summary judgment should be GRANTED IN PART AND DENIED IN PART.

### I. BACKGROUND

This is an insurance case in which OneBeacon seeks a declaration that the insurance policies it issued to the Welch Firm were void ab initio or otherwise do not cover a claim relating to the Welch Firm's representation of EchoStar Communications Corporation n/k/a DISH Network Corporation and Kelly Broadcasting Systems, Inc. ("DISH") in a case involving the Russian Media

---

[1] These affirmative defenses are both numbered "fourth" in OneBeacon's answer. The court will refer to the first "fourth" affirmative defense, which relates to a failure to cooperate, as the failure to cooperate affirmative defense, and the second "fourth" affirmative defense, which relates to a failure to pay the deductible, as the deductible affirmative defense.

Group ("RMG Litigation").  Dkt. 52.  The Welch Litigants filed a counterclaim for breach of contract relating to the policies, breach of the common law duty of good faith and fair dealing, unfair insurance practices in violation of the Texas Insurance Code, breach of the Texas Prompt Payment of Claims Act, negligence/gross negligence, and violation of the Texas Deceptive Trade Practices Act. Dkt. 193-1.  OneBeacon asserted twelve affirmative defenses in its answer to the counterclaim. Dkt. 151.

The Welch Litigants now move for summary judgment on OneBeacon's failure to cooperate and deductible affirmative defenses.  Dkt. 235.  The failure to cooperate affirmative defense states that OneBeacon does not have a duty to defend or indemnify Welch or the Welch Firm in connection with the DISH claim because the Welch Litigants did not cooperate with OneBeacon in its investigation and/or defense of the DISH claim in violation of a clause in the 2007 insurance policy requiring assistance and cooperation.  Dkt. 205 at 54–55.  The deductible affirmative defense states that OneBeacon does not have a duty to defend or indemnify the Welch Litigants because the Welch Litigants did not pay the deductible required under the policy within the required time period and paying the deductible is a condition precedent to OneBeacon's obligations.  *Id.* at 55.

The following is a timeline of the events relevant to the current motion:

**April 27, 2008:**

The Welch Firm provided notice to OneBeacon of the potential claim relating to the Welch Firm's handling of the RMG Litigation.  Dkt. 235-2.

**July 24, 2008:**

OneBeacon sent the Welch Firm a reservation of rights letter stating that there was no coverage currently available but that it would manage the matter as notice of a circumstance that may give rise to a claim.  Dkt. 235-3.  The letter advised that an aggregate deductible of $15,000 applied to the policy and reserved all rights under the policy.  *Id.*

**March 2010:**

This matter officially became a "claim" under the 2007 policy.  Dkt. 193-1.

**February 10, 2011:**

OneBeacon retained James Brawley as defense counsel for the Welch Firm and did not request a deductible.  Dkt. 235-13.

**March 11, 2011:**

OneBeacon sent the Welch Firm an "investigative reservation of rights" letter in which it again mentioned the deductible and reserved all rights under the policy.  Dkt. 235-14.

**April 29, 2011:**

OneBeacon sent the Welch Firm a "supplemental reservation of rights letter" in which it again advised the Welch Firm that the deductible is $15,000 and noted that it was not waiving any rights under the policy.  Dkt. 235-5.

**August 12, 2011:**

OneBeacon's counsel, Hermes Sargent Bates ("HSB"), sends David L. Miller of Miller, Scamardi, & Carrabba a letter complaining that Welch and the Welch Firm had not provided emails relating to the handling of the RMG Litigation, several of the Welch Firm's billing records, or an executed copy of the confidentiality agreement.  Dkt. 253-4.  The letter additionally advised that the Welch Litigants had a duty to cooperate and the "failure to cooperate thus far is prejudicing OneBeacon's ability to investigate this claim."  *Id.*

**August 15, 2011:**

HSB sent Miller another letter reiterating the inadequacy of cooperation outlined in the August 12th letter and also pointing out that the documentation HSB had received contained more than 600 pages that were essentially blank except for the word "redacted."  Dkt. 253-5.  This letter again warned that the Welch Litigants had a duty to cooperate and that failure to do so was prejudicing OneBeacon's ability to investigate the claim.  *Id.*

**August 19, 2011:**

OneBeacon sent the Welch Firm a letter stating that it refused to be bound by the policies it issued to the Welch Firm due to a material misrepresentation by the Welch Firm and that there was no coverage for the claim.  Dkt. 235-4.

**August 22, 2011:**

OneBeacon filed this lawsuit.  Dkt. 1.

**August 26, 2011:**

DISH settled the RMG Litigation for $12 million.  Dkt. 238-6.

**October 19, 2011:**

OneBeacon terminated Brawley.[2]  Dkt. 235, Ex. 234.

**December 9, 2011:**

DISH demanded $12 million from the Welch Firm or an agreement to binding arbitration. Dkt. 235-16.

**December 14, 2011:**

The Welch Firm forwarded the demand to OneBeacon, *Id.*

**December 22, 2011:**

OneBeacon responded, noting that it refused to defend the Welch Firm and advising the Welch Firm that it had a duty to mitigate its damages.  Dkt. 235-17.

**February 1, 2012:**

DISH sent the Welch Firm an arbitration demand.  Dkt. 235-18.

**February 21, 2012:**

OneBeacon again refused to defend the Welch Firm.  Dkt. 235-19.

**December 18, 2012:**

This court ruled that OneBeacon breached its duty to defend.  Dkt. 136.

**December 28, 2012:**

---

[2]  Brawley testified that the Welch Firm cooperated during his investigation of the claim. Dkt. 235-23 at 152.

OneBeacon raised the deductible issue in a letter to T. Wade Welch.  *See* Dkt. 235-21.

**December 31, 2012:**

The Welch Firm sent OneBeacon a letter stating that OneBeacon had waived its ability to argue the deductible is a condition precedent because it had not raised the issue in its answer or in response to the motion for summary judgment on the duty to defend.  Dkt. 235-20.  The letter also stated that OneBeacon failed to raise the issue of the deductible prior to paying Brawley for the Welch Firm's defense in 2011.  *Id.*  The letter noted that if OneBeacon "want[ed] to push the issue, [Welch] suggest[ed] that [OneBeacon] reduce the check due to [the Welch Firm] by the $15,000" and the Welch Firm and OneBeacon could "agree to disagree and . . . see how the jury resolves the issue." *Id.*

## II. Legal Standard

A timely motion for summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c); *see also Carrizales v. State Farm Lloyds*, 518 F.3d 343, 345 (5th Cir. 2008).  Upon a defendant's motion for summary judgment, the plaintiff "must set forth specific facts showing that there is a genuine issue for trial.  If he does not so respond, summary judgment, if appropriate, shall be entered against him."  FED. R. CIV. P. 56(e).  Ultimately, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'"  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348 (1986).  An issue is "material" if its resolution could affect the outcome of the action.  *Burrell v. Dr. Pepper/Seven Up Bottling Grp., Inc.*, 482 F.3d 408, 411 (5th Cir. 2007).  "[A]nd a fact is genuinely in dispute only if a reasonable jury could return a verdict for the non-moving party."  *Fordoche, Inc. v. Texaco, Inc.*, 463 F.3d 388, 392 (5th Cir. 2006).

5

The moving party bears the initial burden of informing the court of all evidence demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548 (1986). Only when the moving party has discharged this initial burden does the burden shift to the non-moving party to demonstrate that there is a genuine issue of material fact. *Id.* at 322. If the moving party fails to meet this burden, then it is not entitled to a summary judgment, and no defense to the motion is required. *Id.*

"For any matter on which the non-movant would bear the burden of proof at trial . . . , the movant may merely point to the absence of evidence and thereby shift to the non-movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial." *Transamerica Ins. Co. v. Avenell*, 66 F.3d 715, 718–19 (5th Cir. 1995); *see also Celotex*, 477 U.S. at 323–25. To prevent summary judgment, "the non-moving party must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co.*, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e)).

When considering a motion for summary judgment, the court must view the evidence in the light most favorable to the non-movant and draw all justifiable inferences in favor of the non-movant. *Envtl. Conservation Org. v. City of Dall., Tex.*, 529 F.3d 519, 524 (5th Cir. 2008). The court must review all of the evidence in the record, but make no credibility determinations or weigh any evidence; disregard all evidence favorable to the moving party that the jury is not required to believe; and give credence to the evidence favoring the non-moving party as well as to the evidence supporting the moving party that is uncontradicted and unimpeached. *Moore v. Willis Ind. Sch. Dist.*, 233 F.3d 871, 874 (5th Cir. 2000). However, the non-movant cannot avoid summary judgment simply by presenting "conclusory allegations and denials, speculation, improbable inferences,

unsubstantiated assertions, and legalistic argumentation." *See TIG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002); *see also Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc).  By the same token, the moving party will not meet its burden of proof based on conclusory "bald assertions of ultimate facts." *Gossett v. Du-Ra-Kel Corp.*, 569 F.2d 869, 872 (5th Cir. 1978); *see also Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1221 (5th Cir. 1985).

## III. ANALYSIS

The Welch Litigants assert that the court should grant summary judgment on the failure to cooperate affirmative defense because (1) the alleged failure to cooperate occurred after OneBeacon rescinded the policy and refused the request for defense, so the Welch Litigants had no obligation to cooperate; and (2) regardless, OneBeacon cannot show that it was prejudiced by an alleged failure to cooperate.  Dkt. 235.  With regard to the deductible affirmative defense, the Welch Litigants argue that (1) OneBeacon waived its right to rely on payment as a condition precedent by, among other things, hiring and paying for the Welch Firm's defense without requiring payment of the deductible both initially and again after the court ruled on the duty to defend; (2) OneBeacon abandoned its deductible defense by failing to brief it in response to the motion for summary judgment on the duty to defend; and (3) OneBeacon's breach of the policies by rescinding and refusing to defend relieved the Welch Litigants from complying with the policy conditions, including the deductible.  *Id.*

OneBeacon argues that, under Texas law, a party seeking to enforce an insurance contract must still comply with its contractual obligations even if the other party breached.  Dkt. 248.  OneBeacon asserts that the abandonment and waiver arguments are meritless, as OneBeacon preserved the issues of the deductible and lack of cooperation by timely pleading them as defenses, and OneBeacon fully intends to present evidence on these defenses if this matter proceeds to trial.

7

*Id.*  OneBeacon states that it briefed the deductible issue in response to a *previous* motion for partial summary judgment,[3] and it has not waived the deductible requirement because it expressly cited the deductible condition in its first communication with the Welch Litigants concerning this claim and expressly reserved its rights regarding that condition.  *Id.*  It reminded the Welch Litigants of their deductible obligations on numerous occasions thereafter.  *Id.*  As far as the alleged failure to cooperate, OneBeacon asserts that the issue of prejudice is an issue for the finder of fact but that it is reasonable to infer here that Welch's failure to cooperate prejudiced OneBeacon.  *Id.*

The court will first discuss whether the Welch Litigants were still required to pay the deductible after OneBeacon repudiated the insurance contract and whether OneBeacon waived or abandoned its right to the deductible.  Then, the court will address the issues relating to the Welch Litigants' alleged failure to cooperate.

A.  **The Deductible**

Under an endorsement to the policy, the deductible "is applicable to all **damages** and **claim expenses** for each **claim** covered by [the policy].  The amount will be paid by [the insured] as a condition precedent to payment of any **damages** and **claim expenses** by [OneBeacon].  Each person insured is responsible for the deductible."  Dkt. 235, Ex. 34, Aggregate Deductible Endorsement. Additionally, the insured is required to pay the deductible within thirty days of OneBeacon's written request.  *Id.*

---

[3]  This previous motion for partial summary judgment related to the Welch Litigants' request for payment of two invoices.  *See* Dkt. 160.  OneBeacon argued, among other things, that it was under no obligation to pay defense costs because the deductible was a condition precedent and the Welch Litigants had not paid it.  Dkt. 169 at 4–6.  The court denied the motion as an inefficient use of judicial resources, noting that it prefers to deal with all issues related to invoices at the conclusion of the case.  Dkt. 195.  The court thus did not reach OneBeacon's deductible argument.

OneBeacon's deductible affirmative defense reads as follows: "OneBeacon has no duty to defend or indemnify Welch and/or the Welch Firm because neither of said parties paid the deductible under the policy within the required time period, which deductible is a condition precedent to OneBeacon's obligations under the policy."  Dkt. 205.

### 1.      Effect of Repudiation.

First, as to the effect of the repudiation on the Welch Firm's obligation to pay the deductible, the Welch Firm argues that as a general matter of contract law, since OneBeacon breached the insurance contract by not defending the Welch Firm, the Welch Firm was not required to honor its obligations under the contract.  OneBeacon argues that under *Inimitable Group, L.P. v. Westwood Group Development II. Ltd.*, the insured as a nondefaulting party to a contract is not excused from performing if it continues to insist on performance by the defaulting party.

Under Texas law, "insurance policies are subject to the same rules of construction generally applicable to contracts."  *Quorum Health Res., L.L.C. v. Maverick Cnty. Hosp. Dist.*, 308 F.3d 451, 468 (5th Cir. 2002).  When one party materially breaches a contract, the other party's performance is excused.  *Prodigy Commc'ns Corp. v. Agric. Excess & Surplus Ins. Co.*, 288 S.W.3d 374, 378 (Tex. 2009).  However, in Texas, "[i]f, after a party breaches a contract, the other party continues to insist on performance by the defaulting party, the nondefaulting party is not excused from performing its part of the contract as a result of the defaulting party's breach; the contract continues in force for the benefit of both parties."  *Inimitable Grp., L.P. v. Westwood Grp. Dev. II. Ltd.*, 264 S.W.3d 892, 901 (Tex. App.—Fort Worth 2008, no pet.).  Thus, "[t]reating the contract as continuing after a breach deprives the nonbreaching party of any excuse for terminating its own performance."  *Kennedy Ship & Repair, L.P. v. Pham*, 210 S.W.3d 11, 25 (Tex. App.—Houston

[14th Dist.] 2006, no pet.).  That being said, in the context of insurance and the duty to defend, the Fifth Circuit has ruled that "an insurer who first 'wrongfully refuses to defend' an insured is precluded from insisting on the insured's compliance with other policy conditions." *Quorum Health Res.*, 308 F.3d at 468.

The court must, therefore, attempt to reconcile *Inimitable Group*, which requires a non-breaching party insisting on the breaching party's performance to continue to perform, with *Quorum Health*, which excuses an insured from performing policy conditions if the insurer breaches the duty to defend. *Inimitable Group* involved an agreement of purchase and sale in which one party agreed to construct the exterior of and then sell an office and warehouse building. *Inimitable*, 264 S.W.3d at 895.  Originally, the purchasing party was to provide its own interior finish-out. *Id.* at 896. However, the parties later agreed that the builder would assist the purchaser in designing the interior finish-out of the building. *Id.*  At some point thereafter, the buyer instructed the builder to stop work on the building, but the builder continued construction. *Id.*  Eventually, the buyer terminated the entire agreement, arguing that the building was not completed on time, and demanded return on the earnest money. *Id.* at 897.  The builder refused to return the earnest money, and the buyer sued. *Id.* The builder asserted counterclaims for, among other things, breach of contract. *Id.* at 897-98.

The trial court ruled in favor of the builder with regard to the breach of contract. *Id.* at 898. One of the issues on appeal was whether the buyer had waived any failure by the builder to comply with the agreement. *Id.*  The trial court had ruled that the builder was excused from performing under the agreement after the buyer either anticipatorily repudiated or breached the second agreement for the interior services. *Id.* at 901.  The Fort Worth Court of Appeals noted that if a nondefaulting "party continues to insist on performance by the defaulting party, the nondefaulting party is not

10

excused from performing its part of the contract as a result of the defaulting party's breach; the contract continues in force for the benefit of both parties." *Id.* (citing *Kennedy Ship & Repair*, 210 S.W.3d at 25 and *Hous. Belt & Terminal Ry. v. J. Weingarten, Inc.*, 421 S.W.2d 431, 435 (Tex. Civ. App.—Houston [1st Dist.] 1967, writ ref'd n.r.e.)).  "Thus, when one party materially breaches a contract, the nondefaulting party is forced to elect between two courses of action, i.e., continuing performance or ceasing performance. . . . Treating the contract as continuing after a breach deprives the nondefaulting party of any excuse for terminating its own performance." *Id.* (citations omitted). The court found that "by continuing to seek closing on the exterior, [the builder] consciously decided to forego the benefit of being able to claim a prior breach of the Agreement by [the buyer]." *Id.* However, the court pointed out that the buyer was required to plead that the builder failed to elect remedies as an affirmative defense and since it did not, it was not entitled to reversal of the judgment on appeal.  *Id.* at 901-02.

If considering this case only, one may decide that since the Welch Firm continued to request that OneBeacon defend it, that it was required to comply with all of its obligations under the policy, including the deductible.  However, cases that have specifically considered the consequences of a breach of a duty to defend shed light on whether such a literal application of *Inimitable Group* is appropriate here.  First, the court considers *Quorum Health Resources*.  *Quorum Health Resources*, like this case, is an insurance case.  A state court awarded $52 million against a hospital management company for negligence, and the management company sued the hospital and the hospital's insurer under the management agreement as an additional insured seeking a declaration on the duty to defend and indemnify.  *Quorum Health Res.*, 308 F.3d at 454.  In the underlying suit, the hospital was the original defendant.  *Id.*  The hospital advised the insurer of the suit and the insurer assigned

a law firm to represent the hospital. *Id.* Later, the plaintiffs joined the hospital management company, and the insurer assigned the same lawyer to the management company that it had assigned to the hospital. *Id.* The management company asserted that this was a conflict of interest and requested separate counsel. *Id.* There was a dispute about whether the insurer offered separate counsel to the management company, but the management company ended up selecting its own counsel without involvement from the insurer. *Id.* at 455. The management company's excess insurer paid the cost of the management company's defense. *Id.* After the jury returned a verdict against the management company in the underlying lawsuit, the management company filed a declaratory judgment action against the insurer and hospital alleging that the management agreement required the hospital to defend and indemnify the management company and that the insurer had breached its duty to defend and indemnify. *Id.* The insurance company claimed that the management company had breached its duty of cooperation. *Id.* at 457.

The trial court found that the insurance company was not obligated to indemnify the management company because the company breached its duty to cooperate by rejecting the defense counsel the insurer offered. *Id.* The Fifth Circuit noted that an "insured has a duty to cooperate with its insurer in the defense of claims for which the insurer has a duty to defend." *Id.* at 468. The court noted, however, that an "insurer who first 'wrongfully refuses to defend' an insured is precluded from insisting on the insured's compliance with other policy conditions." *Id.* at 468–69. The Fifth Circuit found that the evidence was conflicting as to whether the insurer met its obligation to provide a lawyer after the counsel it originally provided was declined and whether the management company breached its duty to cooperate once the insurer's provision of a defense ceased, and it remanded the case to the district court for further proceedings. *Id.* at 471–72.

12

Thus, an insurer that wrongfully breaches its duty to defend cannot rely on lack of cooperation as a defense.  Texas courts have made analogous determinations with regard to an insurer attempting to rely on an insured's failure to timely provide a proof of loss as a defense when then insured's failure to do so occurred after the insurer breached its duty to defend.  *de Laurentis v. United Servs. Auto. Ass'n*, 162 S.W.3d 714, 720 (Tex. App.—Houston [14th Dist.] 2005, pet. denied)*.  The Houston Court of Appeals noted that the "provisions of an insurance policy regarding an insured's duties after a loss are for the benefit of the insurance company" but that "an insurer's denial of a claim before the deadline for presenting the required proof of loss . . . waives the requirement as a matter of law." *Id.*  Texas courts have reasoned that requiring the submission of proofs of loss after the insurer has denied a claim is nonsensical because it would seem to the insured to be no "more than an idle formality." *Sanders v. Aetna Life Ins. Co.*, 205 S.W.2d 43, 45 (Tex. 1947).

This all makes sense when one considers the general rule that if "a promisor prevents or hinders the occurrence or fulfillment of a condition to the duty of performance, the condition is excused." 13 Williston on Contracts § 39:4 (4th ed.).  If the insured does not perform the condition precedent of showing proof of loss because the insurer already denied the claim, the insurer's denial hindered the performance because the insured thought showing proof of loss after denial would be an idle formality.  If the insured does not cooperate with the insurer after the insurer refuses to defend the insured, again, the insurer's denial hindered the insured's cooperation because it would not make sense to cooperate if the insurer is not going to provide a defense.  With regard to the deductible, it certainly did not make sense for the Welch Firm to pay a deductible after OneBeacon

had already refused to defend the Welch Firm, particularly since the Welch Firm was at that time forced to provide its own defense anyway.

Of course, that was *prior* to the court's ruling on the duty to defend.  At that point, the Welch Firm was excused from performing.  However, *after* the court ruled that OneBeacon was required to defend the Welch Firm and OneBeacon started providing a defense and requested the deductible, things changed.  OneBeacon gave the Welch Firm notice as required by the contract, and, since OneBeacon was providing a defense, the contract was being performed and the Welch Firm needed to pay the deductible.

### 2.      Abandonment Due to Failure to Brief

The Welch Litigants next argue that OneBeacon waived its right to a deductible by not arguing the issue in its briefing on the motion for summary judgment for the duty to defend.  Dkt. 235.  OneBeacon asserts that it properly preserved all of its defenses and it cannot be deemed to have abandoned a defense merely be omitting argument about the defense in a motion that does not dispose of the case.  Dkt. 248.  Both parties rely on the Fifth Circuit's opinion in *Fehlhaber v. Fehlhaber*, 681 F.2d 1015, 1030 (5th Cir. Unit B 1982).

In *Fehlhaber*, the Fifth Circuit ruled that the defense abandoned its defense concerning quasi-community property when it failed to develop the argument in its briefs to the court, through oral argument, or through citation to authority.  681 F.2d at 1030.  The court stated, "Failure to brief and argue an issue is grounds for finding that the issue has been abandoned."  *Id.*  The court specifically noted, however, that it was not "rest[ing] on this default alone" because the defendant also "did not include this defense in his pretrial stipulation of the issues to be determined by the court."  *Id.*  The defendant did raise the issue in his motion for a new trial, but the Fifth Circuit found that this

14

"thirteenth-hour raising of the issue" did not cure the earlier defaults, as "an argument first raised in a postjudgment motion is simply too late." *Id.* (quotations omitted).

This case is easily distinguishable from *Fehlhaber*. First, while OneBeacon did not raise the issue in its briefing on the motion for summary judgment on the duty to defend, it did raise the issue in response to an earlier motion for partial summary judgment. Thus, unlike in *Fehlhaber* where the defendant was silent about the defense from the time he answered until after the trial, here there was some indication, prior to summary judgment on the duty to defend issue, that OneBeacon intended to rely on the defense. Second, this defense applies to both the duty to defend *and* indemnify, and the court has not decided the indemnification issue yet. The court finds that this defense has not been abandoned.

### 3.   Waiver Due to Providing a Defense Without Requiring Deductible

The Welch Litigants argue that OneBeacon waived its deductible defense by paying for Welch and the Welch Firm's defense without requiring payment of the deductible. Dkt. 235 (citing Dkt. 235-24 at 137-38 (OneBeacon's counsel stating that OneBeacon paid Brawley without deducting the $15,000 deductible). OneBeacon asserts that it referenced the deductible in its reservation of rights letter and repeatedly reminded the Welch Firm about its deductible obligations and its conduct thus "could not be construed, through any prism, as 'silence or inaction.'" Dkt. 248.

OneBeacon did mention the deductible in its reservation of rights letters, and it indicated that it was not waiving any rights under the policies. It also discussed the deductible in subsequent letters. However, OneBeacon also hired Brawley, paid Brawley without requiring payment of the deductible, terminated Brawley, and later paid some defense costs without requiring the Welch Firm to pay a deductible. OneBeacon did not formally request that the Welch Firm pay the deductible

until December 28, 2012, after the court ruled that OneBeacon had a duty to defend and the Welch Firm requested that OneBeacon pay its defense costs. *See* Dkt. 235, Ex. 233 ("If you have not paid . . . your deductible of $15,000, OneBeacon hereby requests that you pay it to the Miller firm.").

Under Texas law, "[w]aiver is an intentional relinquishment of a known right or intentional conduct inconsistent with claiming that right." *Sun Exploration & Prod. Co. v. Benton*, 728 S.W.2d 35, 37 (Tex. 1987); *see also Bott v. J.F. Shea Co., Inc.*, 388 F.3d 530, 533 (5th Cir. 2004) (quoting this sentence from *Sun Exploration*). "A condition precedent may be waived, . . . and the waiver of a condition precedent may be inferred from a party's conduct." *Sun Exploration*, 728 S.W.2d at 37. "Silence or inaction, for so long a period as to show an intention to yield a known right, is also enough to prove waiver." *Tenneco Inc. v. Enter. Prods. Co.*, 925 S.W.2d 640, 643 (Tex. 1996). "Waiver of a condition precedent is evaluated according to what the insured reasonably would have thought under the circumstances." *de Laurentis*, 162 S.W.3d at 720 (citing *N. River Ins. Co. v. Pomerantz*, 492 S.W.2d 312, 314 (Tex. App.—Houston [14th Dist.] 1973, writ refused n.r.e.)).

When considering these cases in light of the policy language and the facts of this case, the court finds that OneBeacon waived its right to rely on payment of the deductible *as a condition precedent* to its duty to pay for the Welch Firm's defense prior to its termination of Brawley by providing a defense without requiring the payment. It did not, however, waive its right to the deductible at all, as it had reserved rights under the policy and had never sent a letter requesting the deductible. After the court found a duty to defend, performance of that aspect of the contract began again, and OneBeacon could request payment of the deductible under the terms of the policy by writing a letter, which it did. "A court of equity will never decree performance where the remedy is not mutual or one party only is bound by the agreement." *De Cordova v. Smith's Adm'x*, 9 Tex.

16

129, 1852 WL 4038 (Tex. 1852).  Accordingly, the Welch Litigants' motion for summary judgment

with regard to the deductible affirmative defense is DENIED.

**B.**      **Failure to Cooperate**

The Cooperation clause requires:

> **You** must cooperate with **us** and assist **us** in investigating and
> defending any claim or potential claim.  Upon **our** request, **you** must
> submit to examination and interrogation by **our** representatives, under
> oath if required, and **you** must attend hearings, depositions and trials,
> and assist in effectuating settlement, securing and giving evidence,
> obtaining the attendance of witnesses and in the conduct of suits and
> other proceedings, as well as in the giving of a written statement or
> statement to **our** representatives including investigating and coverage
> counsel, and meeting with such representatives for the purpose of
> investigation of coverage issues and/or defense, all without charge to
> **us**.  **You** must further cooperate with **us** and do whatever is necessary
> to secure and effect any rights of indemnity, contribution or
> apportionment which **you** may have.  **You** must not, except at **your**
> own cost, make payment, admit any liability, settle any **claims**,
> assume any obligation or incur any expense, without **our**  written
> consent.

Dkt. 238-4.

OneBeacon's failure to cooperate affirmative defense quotes the portion of the 2007 policy

that requires the insured to cooperate in investigating and defending any claim or potential claim and

to immediately forward every demand, notice, summons, complaint, or other process received.

Dkt. 205 at 54–55.  It indicates that Welch or the Welch Firm did not cooperate with OneBeacon in

the "investigation and/or defense of the DISH Claim," and that, "despite repeated informal requests,

demands, and/or formal discovery requests," Welch or the Welch Firm did not provide OneBeacon

with documents concerning the arbitration.  *Id.* at 55.  OneBeacon contends that this failure to

provide documents prejudiced it and that OneBeacon therefore does not have a duty to indemnify

Welch or the Welch Firm in connection with the DISH claim.  *Id.*

17

The Welch Litigants argue that OneBeacon is precluded from insisting on its compliance with the cooperation clause in the policy because OneBeacon breached its duty to defend.  Dkt. 235. The Welch Litigants also argue that, even if OneBeacon could rely on the clause, the Welch Litigants fully cooperated.  *Id.*  Finally, the Welch Litigants assert that OneBeacon must show it was prejudiced by the alleged non-cooperation in order to rely on the clause, and OneBeacon cannot show prejudice.  *Id.*

"An insured has a duty to cooperate with its insurer in the defense of claims for which the insurer has a duty to defend."  *Quorum Health Res.*, 308 F.3d at 468.  "To breach its duty to cooperate, an insured's conduct must materially prejudice the insurer's ability to defen[d] the lawsuit on the insured's behalf."  *Id.*  Prejudice "occurs when the insurer suffers a material adverse change in position due to the breach."  *Partain v. Mid-Continent Specialty Ins. Servs., Inc.*, No. H-10-2580, 2012 WL 524130, at *3 (S.D. Tex. Feb. 15, 2012).  "[A]n insurer who first 'wrongfully refuses to defend' an insured is precluded from insisting on the insured's compliance with other policy conditions."  *Quorum Health Resources*, 308 F.3d at468.  "Even if an insurer wrongfully refuses to defend, it still has to right to assert the policy defense of noncoverage and will only be liable to indemnify the insured up to the policy limits."  *Id.* at 468–69.  "Whether an insurer is prejudiced by an [insured's failure to abide by a policy provision] is generally a question of fact."  *Duzich v. Marine Office of Am. Corp.*, 980 S.W.2d 857, 866 (Tex. App.—Corpus Christi 1998, pet. denied). "[H]owever, if the undisputed facts establish prejudice sufficient to relieve an insurer of its obligations to defend or indemnify an insured, the court may decide the issue on summary judgment."  *St. Paul Guardian Ins. Co. v. Centrum G.S. Ltd.*, 383 F. Supp. 2d 891, 902 (N.D. Tex. 2003).

18

As evidence of the Welch Litigants' failure to cooperate, OneBeacon attaches an August 12, 2011 letter from HSB to Miller in which HSB advised Miller that, while it had received some of the billing records of the Welch Firm for the relevant time period, it was missing several months, and of particular concern was the fact that no billing records from August 2007 through January 2008 were provided, which is the timeframe that the Magistrate Judge held a hearing for the discovery sanctions, which are the main basis of DISH's claim against the Welch Litigants. Dkt. 253-4. HSB also complained that it had not been provided with recovered emails that defendant Ross Wooten, the attorney in charge of the RMG Litigation, had deleted—despite repeated requests. *Id.* The letter closes with a reminder that the Welch Litigants have a duty to cooperate and that the "failure to cooperate thus far is prejudicing OneBeacon's ability to investigate this claim." *Id.* On August 15, 2011, HSB sent another letter to Miller, in which HSB advised that the year-end reports and audit letters related to the claim HSB received from Miller were mostly redacted, and when not redacted, contained the same exact summary of the RMG Litigation. Dkt. 253-5. HSB also again advised that it had not received all of the billing statements or emails that it specifically requested.[4] *Id.*

This evidence raises a question of material fact as to whether Welch or the Welch Firm breached the duty to cooperate *prior* to OneBeacon breaching its duty to defend. However, even if Welch or the Welch Firm did not cooperate prior to OneBeacon breaching its duty to defend, OneBeacon must be able to show that it was prejudiced by this failure. *See Quorum Health Res.*, 308 F.3d at 468 ("To breach its duty to cooperate, an insured's conduct must materially prejudice

---

[4] OneBeacon asserts that its claims professional's Rule 30(b)(6) testimony confirms these issues with document production. However, the court has been unable to locate the pages cited in the transcript provided to the court. *Compare* Dkt. 248 at 4 (citing Haught Dep. (Jan. 23, 2014) at 84–85, 90), *with* Dkt. 252-4 (Haught Dep. Jan. 23, 2014 excerpts) (including only pages 70–71, 94, and 174).

the insurer's ability to defen[d] the lawsuit on the insured's behalf."). The Welch Litigants point out that OneBeacon's Rule 30(b)(6) witness sated that she was unable to identify how OneBeacon may have handled things differently if the Welch Firm had cooperated. Dkt. 256; *see* Dkt. 235-24 at 90–91 (responding, "I don't know that we would have handled it differently one way or the other" when asked if she could identify how OneBeacon would have handled the claim differently had it had full cooperation). OneBeacon asserts that it is "disingenuous at best for the Welch Litigants to argue that OneBeacon has not been prejudiced by its conduct." Dkt. 248 at 10. OneBeacon further asserts that, regardless, whether it has been prejudiced by the claim "must be left to the trier of fact." *Id.* at 11.

Since OneBeacon bears the burden of demonstrating prejudice at trial, the Welch Litigants' burden at summary judgment is to point to the absence of evidence. The Welch Litigants have satisfied this burden. The burden thus shifts to OneBeacon to provide competent summary judgment evidence that there is an issue of material fact warranting trial. OneBeacon, however, conclusorily states that prejudice is an issue of fact and fails to point to any evidence of prejudice whatsoever. OneBeacon has not satisfied its burden of demonstrating there is an issue of fact for trial. Simply saying it is for the factfinder is not enough—OneBeacon has to show there is something for the factfinder to consider. Since OneBeacon has not met its burden, the Welch Litigants' motion for summary judgment on OneBeacon's failure to cooperate affirmative defense is GRANTED.

## IV. CONCLUSION

The Welch Litigants' motion for partial summary judgment (Dkt. 235) is GRANTED IN PART AND DENIED IN PART.  It is GRANTED with regard to OneBeacon's failure to cooperate affirmative defense.  OneBeacon's failure to cooperate defense as it relates to the Welch Litigants is hereby DISMISSED WITH PREJUDICE.  It is DENIED with respect to OneBeacon's deductible affirmative defense.

Signed at Houston, Texas on June 30, 2014.

Gray H. Miller
United States District Judge