UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ONEBEACON INSURANCE COMPANY, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | CIVIL ACTION H-11-3061 |
| | § | |
| T. WADE WELCH & ASSOCIATES, *et al.,* | § | |
| | § | |
| *Defendants.* | § | |

ORDER

Pending before the court is a motion to file a counterclaim filed by intervenor DISH Network

Corporation ("DISH").[1]  Dkt. 225-1.  After considering the motion, response, reply, and applicable

law, the court is of the opinion that the motion should be GRANTED.

I. BACKGROUND

This is an insurance dispute relating to a professional liability policy issued by plaintiff

OneBeacon Insurance Company ("OneBeacon") to defendant T. Wade Welch & Associates (the

"Welch Firm").  OneBeacon filed this declaratory judgment action against the Welch Firm and

others on August 22, 2011. Dkt. 1.  It seeks a ruling that there is either no coverage or that the policy

is void ab initio.  *Id.*

Prior to OneBeacon's filing of this lawsuit, the Welch Firm made a claim under the policy

relating to its representation of DISH in a lawsuit between DISH and the Russian Media Group

---

[1]  DISH filed the motion on behalf of itself and its wholly-owned subsidiary, Kelly
Broadcasting Systems LLC ("Kelly").  Dkt. 225-1.  OneBeacon points out that Kelly is not a party
to this lawsuit and cannot file a motion without making an appearance.  Dkt. 232.  DISH does not
respond to this argument or even mention Kelly in its reply.  *See* Dkt. 240.  The court deems this
failure to respond to the argument as a concession that DISH cannot bring claims on behalf of a non-
party and therefore treats the original motion as if it had been brought on behalf of DISH only.

("RMG Litigation").  After this lawsuit was underway, DISH initiated an arbitration against the Welch Firm relating to the Welch Firm's representation of DISH in the RMG Litigation.[2]  Dkt. 120-1.  DISH also sought to intervene in this lawsuit.  *See* Dkt. 85 (order granting motion to intervene).  The court granted the motion to intervene on April 12, 2012.  Dkt. 85.  The court noted in the order granting the motion to intervene that DISH could not bring a direct declaratory action against OneBeacon prior to judgment in the underlying claim, but that DISH did have a shared legal interest with the Welch Litigants and was therefore a proper intervenor.  *Id.*  DISH eventually prevailed in its arbitration against the Welch Firm; the award was confirmed by a Texas state court, and it became a final judgment in July 2013.  Dkts. 225-1; 225-3.  The time period for an appeal of that judgment expired on August 28, 2013.  Dkt. 225-1.

DISH filed a motion to file a counterclaim on February 5, 2014 under Federal Rule of Civil Procedure 13(e), which allows a party to file a counterclaim that matures after the initial pleading.  Dkt. 225.  OneBeacon opposes DISH's motion as untimely, as DISH waited more than five months to file the counterclaim and filed it merely two days prior to the close of discovery.  Dkt. 232.  OneBeacon suggests that the timing of the motion is suspicious as DISH had been claiming that certain documents were privileged throughout discovery and, if the court were to allow DISH to file a counterclaim now, OneBeacon argues the privilege would be waived.  *Id.*  OneBeacon argues that "DISH clearly sought a tactical advantage in filing its motion two days prior to the close of discovery" and that "DISH must not be allowed to game the pleadings system."

---

[2]  DISH and Kelly Broadcasting, Inc. (not LLC) were both claimants in the arbitration.  *See* Dkt. 120-1.

## II.  Legal Standard

Under Federal Rule of Civil Procedure 13(e), a "court may permit a party to file a supplemental pleading asserting a counterclaim that matured or was acquired by a party after serving an earlier pleading." Fed. R. Civ. P. 13(e).  Whether to grant or deny a motion made under Rule 13(e) is within the trial court's discretion. *Ins. Concepts, Inc. v. W. Life Ins. Co.*, 639 F.2d 1108, 1114 (5th Cir. Mar. 1981).  When deciding whether to allow a counterclaim under Rule 13(e), courts typically "determine whether the case has progressed so far that it may be inconvenient or confusing to allow the additional claim to be pleaded." 6 Charles Alan Wright et al., *Federal Practice and Procedure* § 1428 at 247 (2010).  "The amount of time that has elapsed between the accrual of the counterclaim and its assertion, as well as the litigation stage reached by the original claim, are factors to be considered by the court in exercising its discretion under Rule 13(e)." *Id.* at 250.

OneBeacon points out that the deadline for amending pleadings in the scheduling order expired on January 19, 2012, and argues that DISH must also meet the standard for modifying the scheduling order to file its counterclaim at this late date.  Dkt. 232 (citing Dkt. 40).  When a court sets a deadline for amendments pursuant to a scheduling order and the deadline has passed, courts in the Fifth Circuit apply Federal Rule of Civil Procedure 16(b) to determine whether leave for an amendment should be granted. *S&W Enters., L.L.C. v. SouthTrust Bank of Ala., NA*, 315 F.3d 533, 536 (5th Cir. 2003).  Under Rule 16(b), a scheduling order "may be modified only for good cause and with the Judge's consent." Fed. R. Civ. P. 16(b)(4).  "The good cause standard requires the 'party seeking relief to show that the deadlines cannot reasonably be met despite the diligence of the party needing the extension.'" *S&W Enters., L.L.C.*, 315 F.3d at 535 (citing 6A Charles Alan Wrights et al., *Federal Practice and Procedure* § 1522.1 (2d ed. 1990)).  In determining whether

3

good cause for amendment exists, courts consider the following factors: "(1) the explanation for the failure to timely move for leave to amend; (2) the importance of the amendment; (3) the potential prejudice in allowing the amendment; and (4) the availability of a continuance to cure such prejudice." *Id.* at 536 (citations, quotations, and alterations omitted).

### III. ANALYSIS

DISH asserts that its counterclaim ripened when the final judgment against the Welch Firm was confirmed and the period for any appeal expired, which occurred on August 28, 2013. Dkt. 225-1. DISH moved to file its counterclaim on February 5, 2014—slightly more than five months later. *Id.* The counterclaim mirrors the claims asserted by the Welch Litigants and, according to DISH, merely changes DISH's status from an intervenor to a judgment creditor of the Welch Firm and a third-party beneficiary with full rights under OneBeacon's policy. Dkt. 240. DISH asserts that recognizing its status as a judgment creditor will not impact the lawsuit in any way. *Id.* DISH acknowledges that there was a delay from the time its claim matured and it filed the instant motion, but DISH asserts that the delay was due to ongoing negotiations with the Welch Firm over a potential assignment of the Welch Firm's *Stowers* claim to DISH. Dkt. 225. DISH was hoping to finalize these negotiations so that there would only be one set of counterclaims. *Id.* DISH and the Welch Firm, however, have not been able to reach an agreement. *Id.*

DISH argues that since its counterclaim consists of exactly the same issues as those filed by the Welch Litigants, the counterclaim will not impact the substantive evidence any party must present at trial or confuse or unduly protract this litigation. *Id.* Moreover, DISH asserts that allowing the counterclaims will further judicial economy by allowing the parties to litigate all of their claims in one action. *Id.* DISH, in fact, asserts that requiring it to bring a separate suit under the

policy "would be a monumental waste of judicial resources" and that its motion is therefore supported by good cause.  Dkt. 240.

OneBeacon argues that it will be prejudiced if the court allows DISH to file its counterclaim at this late date because discovery has concluded and it will therefore be unable to obtain information necessary to defend itself against DISH's counterclaim.  Dkt. 232.  According to OneBeacon, DISH had been asserting throughout discovery that various communications between it and the Welch Firm relating to the RMG Litigation are privileged, and DISH would be unable to assert this privilege if it is a counterclaimant.  *Id.*  Thus, OneBeacon contends that DISH waited so late to file the motion to file its counterclaim so that it could continue to hide behind privilege while still being an active participant in the litigation.  *Id.*  OneBeacon requests, if the court allows DISH to file its counterclaim, that the court extend discovery so that OneBeacon has the opportunity to explore the previously privileged communications and documents. *Id.*  OneBeacon also argues that DISH has not provided a meaningful explanation for its failure to move to amend as soon as the claim became ripe.  *Id.*  OneBeacon describes DISH's explanation regarding negotiating for an assignment of the *Stowers* claim as "thin at best."  *Id.*

## A.    Privilege Claim

OneBeacon argues that if DISH brings a counterclaim based on its lawyers' malpractice, the documents over which it has been claiming the attorney-client privilege are subject to the exception found in Texas Rule of Evidence 503(d)(3).  Dkt. 232.  OneBeacon additionally asserts that if DISH files its counterclaim, it will have waived its privilege over these documents under the offensive-use doctrine. *Id.*  OneBeacon notes that "significant amounts of . . . correspondence and documentation may be held only by DISH" and that "OneBeacon would be unduly prejudiced should it be forced

5

to limit its defense of DISH's proposed counterclaim to only those documents that were used in the arbitration." *Id.* DISH asserts that there is no relevant withheld information, and certainly nothing that could possibly be outcome determinative. Dkt. 240.

The court is not convinced that allowing the counterclaim will require the court to extend discovery or delay the trial due to an alleged loss of a privilege claim. At this point, no party has requested that the court rule on whether any specific documents are privileged. Instead, the court is faced with a question of whether there may be communications that are no longer privileged due to DISH's change in status, without any reference to specific documents, as a reason why DISH should not be able to file its counterclaim. As to OneBeacon's first privilege argument, under rule 503(d)(3), there is no privilege "[a]s to a communication relevant to an issue of breach of duty by a lawyer to the client or by a client to the lawyer." Tex. R. Evid. 503(d)(3). The court does not see how DISH's proposed change in status would impact the applicability of this privilege.

The offensive use doctrine is somewhat more complicated. Under the offensive use doctrine, "a party seeking affirmative relief against another cannot maintain the action and at the same time utilize privileges to protect critical material from discovery." *Pillsbury Winthrop Shaw Pittman LLP v. Brown Sims, P.C.*, No. 4:09-mc-365, 2010 WL 56045, at *5 (S.D. Tex. Jan. 6, 2010) (citing *Tex. Dep't of Pub. Safety Officers Ass'n v. Denton*, 897 S.W.2d 757, 761 (Tex. 1995)). "'A plaintiff cannot use one hand to seek affirmative relief in court and with the other lower an iron curtain of silence against otherwise pertinent and proper questions which may have a bearing on his right to maintain his action.'" *Id.* (quoting *Ginsberg v. Fifth Circuit Court of Appeals*, 686 S.W.2d 105, 108 (Tex. 1985)). For waiver to be found under the offensive use doctrine, (1) the "party asserting the privilege must seek affirmative relief"; (2) "the privileged information sought must be such that, if

6

believed by the fact finder, in all probability it would be outcome determinative of the cause of action asserted"; (3) "disclosure of the confidential communication must be the only means by which the aggrieved party may obtain the evidence." *Republic Ins. Co. v. Davis*, 856 S.W.2d 158, 163 (Tex. 1993). As to the second factor, "[m]ere relevance is insufficient"; "[t]he confidential communication must go to the very heart of the affirmative relief sought." *Id.* "Privileges . . . represent society's desire to protect certain relationships, and an offensive use waiver of a privilege should not lightly be found." *Id.*

OneBeacon states that it believes that DISH is withholding documentation as privileged that leads up to the entry of the sanctions order at issue in the RMG Litigation. Dkt. 232. OneBeacon argues that Wooten's communication or failure to communicate with DISH is integral to whether the prior knowledge exclusion applies. *Id.* DISH argues, however, that it has not withheld any relevant information. Dkt. 240. DISH provides a declaration indicating that it has provided OneBeacon with the written communications between the Welch Firm and DISH relating to the RMG Litigation and all deposition transcripts from the arbitration containing testimony regarding Wooten's communication with DISH about the RMG Litigation. Dkts. 240; 240-1 ¶ 3 (Morgan Decl.).[3] This material was provided with an agreement that no waiver would result, but OneBeacon has had access to all materials and, according to DISH, is well aware that there were no communications that could be outcome determinative in this case. Dkt. 240. Moreover, DISH

---

[3] DISH's counsel filed an affidavit stating that, to the best of his knowledge, "the only other written communication in 2006 between Mr. Wooten and DISH regarding discovery in the RMG Lawsuit is an email string scheduling Mr. Wooten's March 2006 trip to DISH to collect documents, a trip OneBeacon specifically questioned Mr. Wooten about during his deposition in this case." Dkt. 240-1 ¶ 6. Wooten testified that he went to talk with DISH about the requirement to comply with the February 23, 2006 order requiring discovery responses in March 2006, as he recalled negotiating a date based on when he would be finished with a trial. Dkt. 240-4 at 253.

asserts that it does not intend to use any privileged communications in seeking to enforce its rights under the policy, so there will be no offensive use of the documents over which it has claimed privilege. *Id.*

The court finds that there has been no showing that allowing DISH to assert its counterclaim will result in waiver under the offensive use doctrine and cause a delay in this case. Since OneBeacon already has all of the documents, it is certainly free to challenge the assertion of privilege over any specific documents that it believes are outcome determinative. But it is inappropriate to disallow a claim that will have to be brought in a separate lawsuit covering exactly the same issues that will be determined in this trial simply because there *may* be a smoking gun in the documents that OneBeacon has had for months and OneBeacon *may* now have grounds to challenge the privilege.[4] *If* there is a document or documents that are *outcome determinative* over which DISH is claiming a privilege, OneBeacon is free to challenge the privilege as it pertains to the specific document or documents. But the court is not going to rule that DISH cannot bring its claim based on hypotheticals and suppositions—particularly when OneBeacon has all of these documents and has access to the arbitration depositions that discussed the documents.

## B.    Delay in Filing Motion

OneBeacon also argues that the court should not allow DISH to file its counterclaim because DISH's excuse for its delay in filing the motion, that it was engaged in negotiations with the Welch Firm regarding an assignment of the Welch Firm's *Stowers* claim, is not good cause for failing to

---

[4] It is, in fact, counterintuitive that OneBeacon would be challenging DISH's motion to bring the counterclaim on this ground. If allowing DISH to bring its counterclaim ends up destroying its privilege claim over *outcome determinative* documents, then this would be of immense benefit to OneBeacon, even if it resulted in a trial delay.

file the motion as soon as the underlying judgment became final.  Dkt. 232.  OneBeacon cites three

cases that have deemed settlement negotiations do not excuse failing to amend or file a crossclaim

sooner: *United States ex rel. Technica LLC v. Carolina Cas. Ins. Co.*, No. 08-CV-01673-H (KSC),

2012 WL 1672580, at *4 (S.D. Cal. May 14, 2012)*; Eckert v. City of Sacramento*, 2:08-cv-00825-

GEB-GGH, 2009 WL 3211278, at *2 (E.D. Cal. Sept. 30, 2009); and *DVI Fin. Servs. v. Kagan*, No.

Civ. A 00-CV-1666, 2001 WL 299272, at *6 (E.D. Pa. Mar. 23, 2001).  *Id.*

In *Technica LLC*, the court, in analyzing whether good cause was shown to allow an

amendment under Federal Rule of Civil Procedure 15, found that the defendants' excuse for the late

amendment—settlement negotiations—was "insufficient and [did] not excuse its failure to file an

amendment sooner."  *Technica*, 2012 WL 1672580, at *4.  The defendant in *Technica LLC* was

aware of the facts underlying the claim it wished to add years before it moved to add the claim.  *Id.*

at *3.  It did not move to add the claim until almost three years after the deadline to amend in the

scheduling order had passed.  *Id.*  The court noted that the defendant "did not need to wait until

settlement negotiations concluded to seek leave to amend its answer and counterclaim" and that its

"conduct demonstrated an absence of good cause, a lack of diligence, and early knowledge of the

claim it sought to assert."  *Id.* at *4.

In *Eckert*, the court considered whether the defendant had met the standard to modify a

scheduling order to allow an amendment to an answer to add a crossclaim.  *Eckert*, 2009 WL

3211278, at *1–*2.  The defendant had known the facts and law upon which its crossclaim was

based for at least two years, but it did not file a crossclaim because it was relying on the

representations of the party against whom the crossclaim would be filed that the matter would be

resolved through settlement.  *Id.*  The court held that the "ongoing settlement negotiations [did] not

constitute good cause justifying modification of the pretrial scheduling order" as it was "neither reasonable nor diligent to wait until settlement negotiations have deteriorated before seeking leave to assert a crossclaim." *Id.* at *2.

In *DVI Financial Servs.*, the defendants filed a motion to amend their answer after the close of discovery and the dispositive motion deadline. *DVI Fin. Servs.*, 2001 WL 299272, at *1. The court considered whether to allow the party to amend under Rule 15(a). *Id.* The defendants argued that the delay in amending their answer was due to settlement negotiations that proved unfruitful. *Id.* at *2. The court found that the defendant actually had sufficient information to assert their claim prior to the end of discovery and that their settlement negotiations "should [not] have blinded them to the evidence . . . listed in their present Motion." *Id.* The court denied the motion for leave to amend due to this "undue delay." *Id.* The court noted that usually "delay alone is not a sufficient reason for denying leave," but that it will suffice if the delay had the effect of prejudicing the other party. *Id.* at *3. The court noted that allowing the amendment in that case "would result in the need for significant new trial preparation" and was thus greatly prejudicial. *Id.*

These cases are distinguishable. Here, unlike in *Technica LLC* and *Eckert* where the defendants waited *years* to move to file their claims, DISH waited just over five months. While certainly engagement in settlement negotiations that have not been fruitful for years is not good cause for a delay in filing a claim, a five-month delay for negotiations is not unreasonable, particularly given the complexity of this litigation. In *DVI Financial Services*, it is unclear how long the delay was, but the court specifically noted that the requested amendment would result in "significant new trial preparation" and thus be prejudicial to the plaintiff. Here, there is not a sufficient showing that filing the counterclaim will be prejudicial to OneBeacon. The claims are

virtually the same as the Welch Firm's counterclaims, for which OneBeacon should already be fully prepared.  The only additional issue with which the court may be faced is whether DISH's privilege claim with respect to certain documents that OneBeacon has already reviewed may be waived.  The court is doubtful that the resolution of this issue will result in a delay.

## C.    Inconvenience, Confusion, and Good Cause

In sum, there is good cause to amend the scheduling order to allow the counterclaim because DISH's counterclaim was not ripe when the deadline for amending pleadings passed.  The short delay between the claim ripening and the motion to file the counterclaim is sufficiently excused by the negotiations with the Welch Firm, given the complexity of this case.  The court does not believe allowing the counterclaim will be inconvenient or confusing since the counterclaim is essentially duplicative of the Welch Firm's counterclaim and any new privilege issues can easily be resolved by the court.  The court is not concerned with the timing of the motion with regard to the close of discovery because the court does not believe the change in DISH's status would have resulted in significant additional discovery even if the motion had been ruled on during the discovery period.[5] Additionally, to the extent the privilege issues have the potential to become more complicated than the court anticipates, the court does not believe any potential resulting delay outweighs the judicial inefficiency that would be caused by DISH having to litigate its third-party beneficiary claim separately.  Accordingly, DISH's motion to file a counterclaim is GRANTED.

---

[5]  If OneBeacon has *specific* narrowly tailored requests relating to DISH's counterclaim, it may seek leave to serve very limited discovery on DISH by submitting a letter brief to the court along with a copy of the proposed requests.  Similarly, if OneBeacon wishes to challenge DISH's privilege claim with regard to *specific* documents that it believes are outcome determinative, it may do so by submitting a letter brief and the documents to the court.

11

**IV. CONCLUSION**

DISH's motion to file a counterclaim (Dkt. 225) is GRANTED.  The counterclaim shall be

filed with the court within three days of the date of this order.

Signed at Houston, Texas on July 28, 2014.

Gray H. Miller
United States District Judge