IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

OneBeacon Insurance Company,

        *Plaintiff,*

v.

T. Wade Welch & Associates, *et al.,*

        *Defendants.*

§
§
§
§
§
§
§
§

Civil Action H-11-3061

## Order

Pending before the court is a motion for entry of judgment filed by DISH Network Corporation. Dkt. 397. After considering the jury verdict, motion, response, replies, and applicable law, the court is of the opinion that the motion should be GRANTED IN PART AND DENIED IN PART.

## I. Background

This is an insurance coverage case that went to trial before a jury from October 3 through 17, 2014. On October 17, 2014, the jury entered a verdict in favor of T. Wade Welch & Associates (the "Welch Firm"), T. Wade Welch (collectively, the "Welch Litigants"), and DISH Network Corporation ("DISH"). Dkt. 392. The first question on the verdict form inquired about whether plaintiff OneBeacon Insurance Company ("OneBeacon") had proven by a preponderance of the evidence that a reasonable attorney, as of December 20, 2006, could have expected the acts, errors, or omissions of an attorney employed by the Welch Firm, Ross Wooten, to give rise to a malpractice claim. *Id.* This question related to whether the prior knowledge exclusion in the insurance contract

OneBeacon had issued to the Welch Firm precluded coverage.  The jury responded, "no."  Thus, the prior knowledge exclusion did not preclude coverage.

The second question related to whether or not OneBeacon could properly rescind the policy based on an alleged misrepresentation made in the policy application.  The jury was asked whether OneBeacon had proven by a preponderance of the evidence that (1) the Welch Firm made a false statement in the application; (2) the Welch Firm willfully intended to deceive OneBeacon; (3) the Welch Firm's false statement was material to OneBeacon's decision to underwrite the policy; and (4) OneBeacon relied on the false statement.  The jury answered "no."  *Id.*

The third question related to whether OneBeacon gave notice of its decision to rescind the policy within the amount of time an insurer is statutorily required, under Texas law, to do so.  The jury was asked whether OneBeacon had proven by a preponderance of evidence that it gave notice of the rescission before the 91st day after the date OneBeacon discovered the falsity of the representation on the application.  *Id.*  The jury answered "no."[1]

Question six dealt with the contention that OneBeacon violated Chapter 541 of the Texas Insurance Code.  The jury was asked whether the Welch Litigants proved by a preponderance of the evidence that OneBeacon failed to attempt in good faith to effectuate a prompt, fair, and equitable settlement on the claim once OneBeacon's liability became reasonably clear.  *Id.*  The jury was instructed that liability had become "reasonably clear" if the Welch Firm's liability to DISH was reasonably clear and DISH's *Stowers* settlement demand was such that an ordinarily prudent insurer

---

[1]  The jury was not required to answer questions four and five, which related to affirmative defenses, because they answered no to questions 2 and 3.

would accept it.  *Id.*  The jury answered "yes," thus finding OneBeacon liable under Chapter 541 of the Texas Insurance Code.

Question seven related to "additional damages" under Chapter 541 of the Texas Insurance Code.  *Id.*  It inquired whether the Welch Litigants had proven by a preponderance of the evidence that OneBeacon engaged in the conduct described in question 6 "knowingly."  *Id.*  The jury answered "yes."

Question eight related to the Welch Litigants' common law *Stowers* claim.  *Id.*  It asked whether the Welch Litigants had proven by a preponderance of the evidence that the terms of the June 14, 2011 *Stowers* demand were such that an ordinarily prudent insurer would have accepted the demand, considering exposure to an excess judgment.  *Id.*  The jury answered "yes."

Question nine dealt with exemplary damages for the common law *Stowers* claim.  It asked whether the Welch Litigants had proven by clear and convincing evidence that OneBeacon's refusal to settle the claim was gross negligence.  *Id.*  The jury answered, "yes."

The jury was next presented with questions about damages.  They were first asked to calculate the Welch Firm's lost profits sustained in the past and the lost profits the firm would reasonably sustain in the future.  They answered $3,000,000 and $5,000,000, respectively.  *Id.*

The second damages question related to exemplary damages on the common law *Stowers* claim.  The jury was instructed that if it answered "yes" to the question about a *Stowers* violation, it should answer the exemplary damages question.  The question asked what sum should be awarded as exemplary damages for the *Stowers* violation.  The jury responded, "$5,000,000.00."  *Id.*

The third damages question was about additional damages with regard to the Texas Insurance Code violation.  The jury was asked what sum of money, in addition to actual damages, should be

awarded against OneBeacon because its conduct was committed knowingly. *Id.* The jury responded, "$7,500,000.00." *Id.*

DISH and the Welch Litigants request that the court enter final judgment on this verdict, awarding (1) monetary damages resulting from OneBeacon's breach, OneBeacon's *Stowers* violation, and OneBeacon's violation of the Texas Insurance Code; (2) additional damages due to a knowing violation of the Texas Insurance Code; (3) exemplary damages resulting from OneBeacon's gross negligence; (4) prejudgment interest at the rate of 5% per annum pursuant to Texas Finance Code section 304.003; (5) attorneys' fees and costs pursuant to Texas Insurance Code sections 541.152 and 542.060 and the Texas Civil Practices and Remedies Code section 38.001(8); (6) post-judgment interest on the total of the foregoing pursuant to 28 U.S.C. § 1961; and (7) taxable and nontaxable costs or expenses. Dkt. 397. DISH and the Welch Litigants seek $5,000,000.00 for the breach itself; $8,607.308.60 plus $1,720.70 per day from December 16, 2014 until paid in full for the *Stowers* violation; $3,000,000.00 in lost profits; $498,081.17 plus $410.96 from December 15, 2014, until paid in full, in prejudgment interest on the lost profits; $5,000,000.00 in future lost profits for the Chapter 541 violation; $7,500,000.00 additional damages for the knowing violation of Chapter 541; $5,000,000 exemplary damages for gross negligence; reasonable attorneys' fees for both DISH and the Welch Litigants; nontaxable expenses and costs related to the attorneys' fees; and post-judgment interest.

OneBeacon takes issue with several of these requests. OneBeacon asserts that the Welch Litigants may recover under Chapter 541 or *Stowers*, but not both, because there was only one wrongful act. Dkt. 398. OneBeacon argues that because the Welch Litigants can only recover under one of these theories, they cannot recover punitive damages under both. *Id.* OneBeacon also argues

4

that the Welch Litigants are not entitled to $1,720.70 per day interest going forward because this amount should have stopped accruing the day the jury reached its verdict. *Id.* OneBeacon contends that the Welch Litigants and DISH are not entitled to nontaxable expenses. And, finally, OneBeacon objects to a reference to Rule 58(e) in the proposed final judgment, arguing that this reference is extraneous. *Id.* The court will address these arguments *seriatim*.

## II. Recovery under Both Chapter 541 and *Stowers*

All parties agree that a plaintiff must elect between two theories of recovery where both result in the same compensable injury. They disagree, however, as to whether, in this case, the Welch Litigants are entitled to punitive damages under two different theories—gross negligence *and* Chapter 541. OneBeacon insists that there is only one "wrong," failure to settle the claim within policy limits, and that the Welch Litigants must therefore choose their remedy. Dkt. 398. The Welch Litigants and DISH contend that the jury's award of both additional damages and exemplary damages must be upheld, as punitive damages are predicated on the wrongdoer's state of mind, as applied to their actions, and here the jury found that OneBeacon engaged in different types of misconduct warranting punitive damages. Dkts. 399, 400. Specifically, OneBeacon refused to settle despite knowing that the Welch Firm would be exposed to an excess judgment, and it also committed other acts that evidenced a conscious indifference to the rights of the Welch Litigants. These other acts include relying on what was described by DISH's expert as "post-claim underwriting" to support OneBeacon's decision not to settle. Dkt. 399. The Welch Litigants and DISH also argue that OneBeacon waived the right to object to the separate punitive damages awards because OneBeacon insisted that the court include separate instructions and questions for each claim. *Id.*

DISH and the Welch Litigants rely on *Berry Property Management, Inc. v. Bliskey*, 850 S.W.2d 644, 665 (Tex. App.—Corpus Christi 1993, writ dism'd by agr.), for their argument that they may recover punitive damages under two different theories even though they are only entitled to compensatory damages under only one theory. In *Berry*, Juli Bliskey lived in a townhome in managed by Berry Property Management, Inc. 850 S.W.2d at 651. In October 1987, an intruder broke into Bliskey's apartment while she was asleep, using a key to her unit. *Id.* The intruder sexually assaulted Bliskey. *Id.* Bliskey sued Berry, asserting a negligence claim and a claim under the Texas Deceptive Trade Practices Act ("DTPA"). *Id.* The negligence claim was based on the contention that the property manager left the keys of its residents on a peg board with their apartment number clearly identified, and this peg board was right next to an unlocked file cabinet containing the leases of all residents (which contained information such as whether the residents lived alone). *Id.* at 654. The DTPA claim was based on the Bliskey's contention that Berry failed to provide her with a night latch for her door when she asked even though a Texas statute required the installation of a night latch when requested. *Id.* at 658.

The appellate court found that it was foreseeable that somebody could enter the management office and access resident rental information and keys, that the management owed its residents a duty of reasonable care with regard to maintaining its residents' keys and rental information, and that but for the management company's conduct, Bliskey would not have been harmed. *Id.* at 655. It also found that there was sufficient evidence to support the jury's finding that Berry engaged in a false, misleading, or deceptive act when its agent stated that Berry must have a key to any locks placed on Bliskey's front door and that the company acted knowingly in refusing the keyless night latch. *Id.* at 659, 661.

The jury awarded $3,013,760 as actual damages resulting from Berry's negligence, $5,000,000 as common law exemplary damages, $3,000,000 as actual damages resulting from Berry's deceptive conduct, and $3,000,000 as additional DTPA damages. *Id.* at 664. Berry asserted that under the one satisfaction rule, an injured party is entitled to one satisfaction for sustained injuries. *Id.* It argued that no recovery of both actual damages and penalties for the same act or practice should be permitted under the DTPA and another law. *Id.* at 665. The court noted that the issue was whether the actual and punitive damages resulted from the *same* act. *Id.* It stated that the "one satisfaction rule applies to prevent a plaintiff from obtaining more than one recovery for the same injury." *Id.* at 666. "This act is applied when defendants commit the same act as well as when defendants commit technically different acts which result in a single injury." *Id.* The court held that Bliskey "suffered one injury and should receive one recovery for her compensatory damages." *Id.* The court pointed out, however, that "Berry engaged in two different acts, . . . [thus] the trial court did not err in awarding Bliskey both common law exemplary damages and statutory additional damages." *Id.* at 665.

Here, the Welch Litigants and DISH urge that, like in *Berry*, the jury found separate acts justifying separate common law exemplary and statutory additional damages. In *Berry*, there were two completely different underlying wrongful acts—leaving the keys out with the actual apartment numbers labeled next to an unlocked file cabinet containing lease information and failing to provide a night lock when it was requested. Both of these wrongful acts led to Bliskey's compensable injury. While there could be only one recovery of compensatory damages for this injury, the court found it appropriate to allow punitive damages for both wrongful acts. Here, while multiple wrongful acts may be encompassed in OneBeacon's ultimate failure to settle within policy limits, both claims for

which punitive damages were awarded involve a failure to settle.  The exemplary damages awarded related to the common law *Stowers* claim were because the "refusal to settle . . . was 'gross negligence.'"  The additional damages awarded related to the Chapter 541 violation were for engaging in the conduct (failing to attempt in good faith to effectuate a prompt, fair, and equitable settlement once liability had become reasonably clear) "knowingly."  While the jury may have considered some of OneBeacon's actions in handling the settlement decision more when assessing the common law *Stowers* claim than in assessing the additional damages claim under Chapter 541, both claims related to essentially the same series of actions and the ultimate refusal to settle.  The two separate damage awards are thus simply not awarded for distinct wrongful acts like the awards in *Berry*.  The court therefore finds that the Welch Litigants must choose between Chapter 541 and *Stowers* for the punitive damages.

### III. WAIVER

DISH and the Welch Litigants argue that even if the court finds that there is a problem with awarding both types of punitive damages, OneBeacon insisted on separate awards, so it induced the error and accordingly has waived any objection.  Dkt. 399.  As authority for this argument, DISH and the Welch Litigants rely on the rule that a party who fails to timely object to a proposed jury instruction waives the right to appeal that issue and on cases about the "invited error doctrine."

OneBeacon argues that the Texas Supreme Court has directly rejected this argument, holding that defendants are not required to object to the submission of more than one acceptable measure of damages to preserve error on the issue of double recovery.  Dkt. 398 (citing *Waite Hill Servs. v. World Class Metal Works*, 959 S.W.2d 182, 184 (Tex. 1998)).  This is so because parties are "'generally entitled to sue and to seek damages on alternative theories.'"  *Id.* (quoting *Waite Hill*

*Servs.*, 959 S.W.2d at 184).  OneBeacon argues that its submission of separate charges on the alternative theories is not invited error because it would have been improper for OneBeacon to object to the multiple theories before the jury verdict.  *Id.*

DISH and the Welch Litigants principally rely on *Thompson & Wallace of Memphis, Inc. v. Falconwood Corp.*, 100 F.3d 429 (5th Cir. 1996).  In *Thompson & Wallace*, the defendant challenged the district court's failure to dismiss a Texas DTPA claim because Texas law did not apply.  100 F.3d at 432.  The defendant made a Rule 50(a) motion to dismiss the claim, but it did not object to the inclusion of the DTPA instruction in the jury charge.  *Id.*  The Fifth Circuit noted that "where the questions of fact are uncontested and the question of law is brought to the court's attention, an objection to the jury charge is not necessary."  *Id.*  The Fifth Circuit extended that rule to "situations where the appealing party does not challenge the jury's fact finding, only its right to decide the issue altogether."  *Id.*  It pointed out that the "contrary rule would require a party to object to a charge that it believes is a perfectly accurate statement of the law and that is not confusing to the jury, even though the court already has decided the legal issue."  *Id.*  On a different issue, however, the court found that the defendant's "proposed instructions were insufficient to notify the court of the potential problem with the instructions" and that the defendant had thus "waived review of that portion of the instructions."  *Id.* at 433.

Here, the issue is not whether there is a problem with the instructions.  They jury made its findings of fact and determined what it believed to be the fair amount of damages under each theory.  Whether the Welch Litigants can actually recover under both theories is a question of law for the court to decide now that it has the jury's factual findings.  Thus, the portion of *Thompson* indicating

that the defendant waived review because it did not inform the court about a "problem with the instructions" is not on point.

In *Waite Hill Services*, the Texas Supreme Court held that a litigant "was not required to object to the submission of more than one acceptable measure of damages to preserve error on the issue of actual damages double recovery." 959 S.W.2d at 184.  This is because a "party is generally entitled to sue and to seek damages on alternative theories," making "such an objection improper." *Id.*  A party, however, is not entitled to double recovery just because alternative theories are on the jury charge.  *Id.*  The party objecting to double recovery must do so prior to judgment.  *Id.*  That is precisely what happened here.  The court finds that OneBeacon did not waive its objection to double recovery by advocating for separate instructions for the alternative grounds of recovery.

### IV.  $1,720.70 PER DAY

The parties agreed that the damages resulting from a common law *Stowers* violation were set as a matter of law as the amount of the excess judgment in the underlying arbitration.  DISH and the Welch Litigants argue that the amount due for the *Stowers* violation is $8,607,308.60 as of December 15, 2014, because DISH was awarded $12,561,123.00 plus $1720.70 per day, which has been accruing since April 17, 2013.  The total of the judgment from April 17, 2013, through December 15, 2014, including this interest, is $13,607,308.60.  Since the policy limits were $5,000,000.00, $13,607,308.60 minus $5,000,000.00 equals $8,607,308.60. Dkt. 397 at 4–5 & n.5. DISH and the Welch Litigants contend that their damages on the *Stowers* and Chapter 541 claims should increase by $1720.70 per day from December 16, 2014, until paid in full.  *Id.* at 5, 16–17.

OneBeacon argues that the Welch Litigants are not entitled to $1,720.70 per day from December 16, 2014, until paid in full or for *any* period following the date of the verdict. Dkt. 398.

OneBeacon contends that the $1,720.70 per day award was postjudgment interest on the award under Texas law. It notes that because the amount of the arbitration award was not disputed, the court did not submit a question to the jury about the amount to award, but that if they court had done so, the jury would have undoubtedly calculated the amount as of the date of the jury's verdict. *Id.* This amount would then be subject to *post-judgment* interest pursuant to federal law. *Id.* OneBeacon contends that the correct amount is the amount of the award, $12,561,123, minus the policy amount, $5,000,000, plus $1720.70 per day from the date of the award through the *date of the verdict*, $942,943.60, which equals $8,504,066.60. *Id.* OneBeacon argues that allowing postjudgment interest to continue to accrue on the underlying judgment *and* the *Stowers* claim would be allowing postjudgment interest on two judgment at the same time. *Id.*

Federal courts award post-judgment interest pursuant to 28 U.S.C. § 1961. The court is not inclined to award any interest on either this judgment or the underlying judgment after the date of judgment. Thus, once the court has signed the final judgment in this matter, the $1720.70 per day that has been accruing on the arbitration award will discontinue, and the post-judgment interest available under section 1961 will start to accrue. That being said, the court disagrees with OneBeacon's argument that the interest on the arbitration award should stop on the date of the verdict. The jury reached a verdict indicating that the Welch Litigants were entitled to recover the excess judgment, and that excess includes the interest awarded by the arbitrator. It would be improper for the award to freeze and not accrue any interest simply because there was extensive post-judgment briefing in this case. The court thus rules that the Welch Litigants are entitled to $1720.70 per day interest until the date the final judgment is signed. After this date, the statutory post-judgment interest will kick in.

11

## V. Nontaxable Expenses

DISH and the Welch Litigants argue that they are entitled to nontaxable expenses related to the Welch Litigants' and DISH's attorneys' fees pursuant to Texas Insurance Code section 541.152 and/or Texas Civil Practices and Remedies Code section 38.001(8). Dkt. 397 at 18–19. OneBeacon argues that neither section 38.001 nor section 541.152 allow recovery of nontaxable expenses.[2] Dkt. 398 at 14.

In reply, DISH argues that the court needs not resolve whether nontaxable expenses are available at this time, as the court awards nontaxable expenses related to attorneys' fees pursuant to Federal Rule of Civil Procedure 54(d)(2), and it may determine the amount of nontaxable expenses when it determines the amount of attorneys' fees.  Dkt. 399; *see* Fed. R. Civ. P. 54(d)(2)(A) ("A claim for attorney's fees and related nontaxable expenses must be made by motion . . . .").  The court finds that this is the right course.  Defendants are free to move for nontaxable expenses associated with their attorneys' fees at the time the court considers the fees, and after OneBeacon files its response, the court will make a determination at that time (when it has an actual listing of the requested costs) as to whether they are appropriate.

## VI. Rule 58(e)

The proposed final judgment states that "the Court has determined in accordance with Federal Rule of Civil Procedure 58(e) that there is no just reason for delay with respect to the entry

---

[2] Section 541.152 allows a plaintiff who prevails on a claim under that subchapter to obtain damages plus court costs, reasonable attorney's fees, and any other relief the court determines is proper.  Tex. Ins. Code § 541.152.  Section 38.001(8) of the Civil Practices and Remedies Code allows recovery of attorneys' fees if the claim is for a breach of contract.  Tex. Civ. Prac. & Rem. Code § 38.001(8).

of judgment . . . ." Dkt. 397-12.  OneBeacon argues that the reference to Rule 58(e) is unnecessary.

Dkt. 398.  The court agrees that it is unnecessary and will not include this reference in the final

judgment.

### VII. CONCLUSION

The motion for entry of final judgment is GRANTED IN PART AND DENIED IN PART.

For the reasons discussed above, (1) the Welch Litigants are entitled to $1720.70 per day interest

until the date the final judgment is signed; (2) the court will determine whether nontaxable costs

associated with the Welch Litigants' and DISH's attorneys' fees are appropriate when ruling on

attorneys' fees; and (3) the Welch Litigants must choose between Chapter 541 and *Stowers* for

punitive damages.  Accordingly, the court ORDERS the Welch Litigants to advise the court which

damages it chooses within five (5) days of the date of this order.  The court will enter final judgment

soon thereafter.

Signed at Houston, Texas on January 13, 2015.

_____
Gray H. Miller
United States District Judge