IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

ONEBEACON INSURANCE COMPANY,

      *Plaintiff,*

v.

T. WADE WELCH & ASSOCIATES, *et al.,*

      *Defendants.*

§
§
§
§
§
§
§
§

CIVIL ACTION H-11-3061

## ORDER

      Pending before the court is a motion for attorneys' fees filed by T. Wade Welch & Associates (the "Welch Firm") and T. Wade Welch (collectively, the "Welch Litigants"). Dkt. 416. After considering the motions, responsive filings, and applicable law, the court is of the opinion that the motion should be GRANTED IN PART and DENIED IN PART.

### I. BACKGROUND

      This is an insurance coverage case that went to trial before a jury from October 3 through 17, 2014. On October 17, 2014, the jury entered a verdict in favor of the Welch Litigants and intervenor and counter-claimant DISH Network Corporation ("DISH"). Dkt. 392. The court entered judgment on March 17, 2015, but reserved ruling on attorneys' fees and costs. Dkt. 409. The Welch Litigants now move for attorneys' fees. Dkts. 416.

      The Welch Litigants seek attorneys' fees on a contingent basis in the amount of $8,937,623. Dkt. 416 at 2. They alternatively request an award of attorneys' fees based on an enhanced lodestar model of between $6,641,048.70 and $8,854,732.60. *Id.* at 23. They also seek $407,500 in conditional attorneys' fees in the event of an unsuccessful appeal by OneBeacon. *Id.* at 24.

In support of their request for attorneys' fees on a contingent basis, the Welch Litigants provide an affidavit of Welch, who represented himself and the Welch Firm for a significant time period during this litigation; an affidavit of David L. Miller of Miller, Scamardi & Carabba, P.C. ("MSC"), who represented the Welch Litigants at trial and from 2011 through September 2012; Miller's and Welch's billing records; a copy of an agreement between the Welch Litigants and DISH relating to prosecution of the *Stowers* claim and allocation of proceeds ("DISH-Welch Agreement"); and a copy of an agreement between Welch and MSC ("Welch-MSC Agreement").  Dkt. 416, Exs. A–C.

The Welch Firm billing records, after billing judgment and other deductions made by Welch, reflect that Welch worked a total of 1,470 hours on this case at $475 per hour, a senior associate worked 1,061.50 hours at $350 per hour, two junior associates worked a total of 539.5 hours at $275 per hour, and a paralegal worked 484.5 hours at $145 per hour.  Dkt.416, Exs. A, A1–7.  MSC's billing records indicate that five different partners billed 1,371.8 hours at $475 per hour, one senior associate billed 421.3 hours at $350 per hour, five junior associates billed 442.9 hours at $275 per hour, two paralegals billed 27.8 hours at $145 per hour, and a law clerk billed .5 hours at $145 per hour.  Dkt. 416, Exs. B, B-1.

In the DISH-Welch Agreement, the Welch Litigants assigned their economic interest in their common law *Stowers* claim to DISH and granted DISH the authority to prosecute the claim on the Welch Litigants' behalf.  Dkt. 416, Ex. A-8.  The DISH-Welch Agreement does not give DISH the right to prosecute the Welch Litigants' breach of contract, Texas Deceptive Trade Practices Act, or Texas Insurance Code claims.  *Id.*  The DISH-Welch Agreement allocates all recovery for DISH or the Welch Litigations as follows: DISH will receive 85%, and the Welch Litigants will receive 15%

2

of all OneBeacon payments until the arbitration award, including all post-judgment interest, is satisfied. *Id.* After DISH is completely paid for the arbitration award, including interest, and its costs and fees, any remaining payments from OneBeacon will be split with the Welch Litigants receiving 85% and DISH receiving 15%. *Id.* The allocation of the Welch Litigants' percentage under the agreement is to be "free and clear of any and all liens or claims that DISH" has against the Welch Litigants. *Id.*

In the Welch-MSC Agreement, Welch and MSC agree "to work together on a thirty-six percent contingency fee" in this case. Dkt. 416 & Exs. They additionally agree that if there were any recovery of *Stowers* damages under section 541.0602(a), the 36% contingency fee would be split with 82% going to Welch and 18% going to MSC. *Id.*

The Welch Litigants argue that the Welch Firm and MSC are entitled to attorneys' fees pursuant to the Welch-MSC Agreement based on the damages for breach of contract and for a knowing violation of section 541.060 of the Texas Insurance Code, which totaled $29,826,731.41 through March 31, 2015. Dkt. 416. They assert that a contingent fee of 36% of the entire judgment is fair and reasonable, but that since DISH is also entitled to fees under Texas Civil Practices and Remedies Code section 38.001, the Welch Litigants are willing to have the 36% contingent fee applied only to the $24,826,731 in excess of the $5 million policy limits for a total fee of $8,937,623, which represents 29.9% of the entire judgment. *Id.*

In the alternative, the Welch Litigants request fees based on the lodestar method with an enhancement due to the rare and exceptional circumstances in this case. *Id.* They contend that the base lodestar amount for the Welch Firm is $1,288,389.00 and the base lodestar amount for MSC is $925,293.90. *Id.* As an enhancement, they request that the court apply a multiplier of three or

four times the base lodestar amount, resulting in fees totaling between $6,641,048.70 and $8,854,731.60.  *Id.*  They also request conditional attorneys' fees to cover a potential unsuccessful appeal of $407,500, which they contend would cover about 500 hour of partner time, 250 hours of senior associate time, and 300 hours of junior associate time.  *Id.*

OneBeacon argues first and foremost that the Welch Firm cannot receive a contingency fee for representing itself, as it did not have a contingency contract with itself.  Dkt. 429.  It also contends that, despite the Welch-MSC Agreement, MSC should not receive a contingency fee because the amount is unreasonable given the number of hours MSC actually worked.  *Id.* OneBeacon argues that the lodestar amount is presumptively reasonable, and allowing recovery of the fees requested based on the contingency agreement would effectively make the recovery for the hours worked nearly $1,050 per hour, an unreasonable rate.  *Id.*  OneBeacon additionally asserts that the base lodestar amount should actually be reduced because, in addition to other reasons, Welch engaged in block billing and MSC duplicated much of the Welch Firm's work.  *Id.*  OneBeacon requests that the court award no more than $832,764.51 for MSC's work and $953,912.06 for the Welch Firm's work.  *Id.*  OneBeacon additionally urges the court to defer ruling on appellate fees until after the appeal.  *Id.*

In reply, the Welch Litigants argue that they have proven the fees under the Welch-MSC Agreement were reasonable and necessary, that the Welch-MSC Agreement is a sufficient written agreement to allow recovery of contingency fees for both firms, that the contingency fee does not have to be reasonable in light of the hours as the considerations for reasonableness differ for contingency fees as opposed to the lodestar method, that if the court elects to use lodestar an enhancement is in order, and that the reductions OneBeacon seeks are unwarranted.  Dkt. 437.

## II. LEGAL STANDARD AND ANALYSIS

"State law controls both the award of and the reasonableness of fees awarded where state law supplies the rule of decision." *Mathis v. Exxon Corp.*, 302 F.3d 448, 461 (5th Cir. 2002). Here, the Welch Litigants' breach of contract claim and Texas Insurance Code claim were governed by Texas law, and the Welch Litigants are entitled to an award of attorneys' fees. Under section 38.001 of the Texas Civil Practices and Remedies Code, the Welch Litigants may recover "reasonable attorney's fees . . . in addition to the amount of a valid claim and costs" for prevailing in their breach of contract claim. Tex. Civ. Prac. & Rem. Code Ann. § 38.001. An award of reasonable fees to the party that prevails in a breach of contract action is mandatory, but the amount of reasonable fees is discretionary. *Fluorine on Call, Ltd. v. Fluorogas Ltd.*, 380 F.3d 849, 866 (5th Cir. 2004).

One method of calculating reasonable attorneys' fees under section 38.001 is the "lodestar" method, though Texas courts generally do not *require* parties to use the lodestar method to prove the fees requested are reasonable. *See, e.g.*, *Mid-Continent Cas. Co. v. Kipp Flores Architects,* L.L.C., 602 F. App'x 985, 999 (5th Cir. 2015) (unpublished) (per curiam) (disagreeing with the non-prevailing party's argument that Texas courts require lodestar evidence for attorneys' fees and noting that "Texas courts permit otherwise reasonable contingency fee awards under § 38.001"); *Structural Metals, Inc. v. S&C Elec.* Co., 590 F. App'x 298, 308 & n.6 (5th Cir. 2014) (unpublished) (per curiam) ("It is unclear whether the lodestar is the correct method for calculating attorney's fees under section 38.001."); *Hovanec v. Midwest Underground, Inc.*, No. 4:14-cv-409, 2015 WL 4082863, at *2 (E.D. Tex. June 23, 2015) ("The Texas Supreme Court has not ruled on whether a specific method is required for calculating attorney's fees under § 38.001; however, it has indicated that the lodestar is acceptable."); *Nilesh Enters., Inc. v. Lawyers Title Ins. Co.*, No. SA-08-CV-661-XR, 2010

WL 2671728, at *2 (W.D. Tex. July 1, 2010) ("The preferred method of computing a reasonable fee under Section 38.001 is the 'lodestar' method."); *Paez v. Trent Smith Custom Homes, Inc.*, No. 04-13-00394-CV, 2014 WL 1089751, at *4 (Tex. App.—San Antonio Mar. 19, 2014, no pet.) (holding, in a "garden-variety breach of contract" case, that the lodestar method of proving fees was not required); *Toshiba Mach. Co., Am. v. SPM Flow Control, Inc.*, 180 S.W.3d 761, 782 (Tex. App.—Fort Worth 2005, no pet.) ("One method of computing a reasonable fee is the 'lodestar' method, or 'the product of reasonable hours times a reasonable rate.'"). Under Texas law, the "party applying for an award of attorney's fees under the lodestar method bears the burden of documenting the hours expended on the litigation and the value of those hours." *El Apple I, Ltd. v. Olivas*, 370 S.W.3d 757, 760 (Tex. 2012). To calculate reasonable attorneys' fees under the lodestar method, courts must first establish a lodestar fee by multiplying the reasonable number of hours expended on the case by the reasonable hourly rates of the participating lawyers. *Migis v. Pearle Vision, Inc.*, 135 F.3d 1041, 1047 (5th Cir. 1998). "[O]nce the base lodestar has been calculated, a court may raise or lower the lodestar amount if certain relevant factors indicate an adjustment is necessary." *Williams-Pyro, Inc. v. Barbour*, 408 S.W.3d 467, 483 (Tex. App.—El Paso 2013, pet. denied); *see also, e.g.*, *La. Power & Light Co. v. Kellstrom*, 50 F.3d 319, 324 (5th Cir. 1995); *El Apple I*, 370 S.W.3d at 761.

Texas courts determine the reasonableness of the hours and rates by applying the *Arthur Andersen* factors. *See Arthur Andersen & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 818 (Tex. 1997). These factors are:

> (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill required to perform the legal service properly;

6

      (2) the likelihood . . . that the acceptance of the particular employment will preclude other employment by the lawyer;
      (3) the fee customarily charged in the locality for similar legal services;
      (4) the amount involved and the results obtained;
      (5) the time limitations imposed by the client or by the circumstances;
      (6) the nature and length of the professional relationship with the client;
      (7) the expertise, reputation, and ability of the lawyer or lawyers performing the services; and
      (8) whether the fee is fixed or contingent on results obtained or uncertainty of collection before the legal services have been rendered.

*Id.* "[E]vidence of each of the *Andersen* factors is not required to support an award of attorney's fees." *Arthur J. Gallagher & Co. v. Dieterich*, 270 S.W.3d 695, 706 (Tex. App.—Dallas 2008, no pet.). "The court can also look at the entire record, the evidence presented on reasonableness, the amount in controversy, the common knowledge of the participants as lawyers and judges, and the relative success of the parties." *Jarvis v. Rocanville Corp.*, 298 S.W.3d 305, 318 (Tex. App.—Dallas 2009, pet. denied). "The lodestar method aims to provide a relatively objective measure of attorney's fees," and, to ensure this, trial courts "should obtain sufficient information to make a meaningful evaluation of the application for attorney's fees." *El Apple I*, 370 S.W.3d at 762. The court should keep in mind when applying these factors that there is a strong presumption that the lodestar rate is reasonable. *Saizan v. Delta Concrete Prods., Inc.*, 448 F.3d 795, 800 (5th Cir. 2006).

      The Welch Litigants are also entitled to attorneys' fees under Texas Insurance Code section 541.152(a)(1), which, similar to section 38.001, provides for "reasonable and necessary attorney's fees" for plaintiffs who prevail in an action under subchapter D of chapter 541 of the Texas Insurance Code. Tex. Ins. Code Ann. § 541.152(a)(1). A party entitled to fees under section 541.152 is not required to prove its fees using the lodestar method, but it may choose to do so.

*United Nat.'l Ins. Co. v. AMJ Invests., LLC*, 447 S.W.3d 1, 16 (Tex. App.—Houston [14 Dist.] 2014, pet. dism'd).  The party seeking attorneys' fees under the Texas Insurance Code bears the burden of proof.  *See Northwinds Abatement, Inc. v. Emp'rs Ins. of Wausau*, 258 F.3d 345, 353 (5th Cir. 2001).

The Welch Litigants argue that the court should award a reasonable contingency fee and consider reasonableness pursuant to the *Arthur Andersen* factors.  *See Arthur Andersen & Co. v. Perry Equipment Corp.*, 945 S.W.2d 812 (Tex. 1997).  OneBeacon argues that the U.S. Supreme Court, in *Perdue v. Kenny A.*, 559 U.S. 542, 551 (2010), criticized the method discussed in *Arthur Andersen* in favor of the lodestar method, and that the Texas Supreme Court in *El Apple I* held that the lodestar method presumptively produces a reasonable fee that may only be enhanced in exceptional circumstances.

In *Arthur Andersen*, the Texas Supreme Court noted:

> Attorney contingency contracts serve two main purposes.  First, they allow plaintiffs who cannot afford to pay a lawyer up-front to pay the lawyer out of any recovery. . . . Second, such contracts, because they offer the potential of a greater fee than might be earned under an hourly billing method, compensate the attorney for the risk that the attorney will receive no fee whatsoever if the case is lost. . . . The lawyer, in effect lends the value of his services, which is secured by a share in the client's potential recovery.

945 S.W.2d at 818 (citations omitted).  Arthur Andersen argued that awarding contingency fees under a fee-shifting statute unfairly forced the defendant to pay fees that were not related to the work performed.  *Id.*  The Texas Supreme Court agreed that there were some problems with shifting contingency fees to defendants when fees are required under a fee-shifting statute.  *Id.*  The fee-shifting statute in *Arthur Andersen*, the Texas Deceptive Trade Practices Act ("DTPA"), allowed recovery only for "'reasonable and necessary attorneys' fees.'"  *Id.* (quoting Tex. Bus. & Com Code

8

§ 17.50(d)).  The court noted first that if the contingency fee award is based "solely on evidence of a percentage fee agreement between a lawyer and client," then the award may have been determined without considering whether it is reasonable.  *Id.*  The court determined that the DTPA did not authorize "the shifting of the plaintiff's entire contingent fee to the defendant without consideration" of the eight factors listed above.  *Id.*  It held that the contingent fee could be considered when awarding fees under the DTPA, but that the "agreement cannot alone support an award of attorney's fees."  *Id.*  It pointed out, as well, that Texas juries that award fees as a percentage of the judgment often do not know the amount of the final judgment, so a fee award based on a percentage of the judgment would be only speculative as to reasonableness.  *Id.* at 819.  The court ultimately held that "to recover attorney's fees under the DTPA, a plaintiff must prove that the amount of fees was both reasonably incurred and necessary to the prosecution of the case at bar, and just ask the jury to award the fees in a specific dollar amount, not as a percentage of the judgment."  *Id.*

In *Perdue v. Kenny A. ex rel. Winn*, the United States Supreme Court addressed "whether the calculation of an attorney's fee, under the federal fee-shifting statutes, based on the 'lodestar,' i.e., the number of hours worked multiplied by the prevailing hourly rates, may be increased due to superior performance and results."  559 U.S. at 546.  The Court reaffirmed the rule that increases for superior performance and results are permitted in "extraordinary circumstances."  *Id.*  The Court noted, however, that "there is a strong presumption that the lodestar is sufficient; factors subsumed in the lodestar calculation cannot be used as a ground for increasing an award above the lodestar; and a party seeking fees has the burden of identifying a factor that the lodestar does not adequately take into account and proving with specificity that an enhanced fee is justified."  *Id.*  The Supreme Court criticized the district court for relying on the contingency of the outcome in determining if the fee

9

was reasonable, citing *City of Burlington v. Dague*, in which the Court had held that an enhancement to the lodestar under certain federal fee-shifting statutes was inappropriate, as a contingency "enhancement would make the setting of fees more complex and arbitrary, hence more unpredictable, and hence more litigable." *Id.*; *Dague*, 505 U.S. 557, 566–67, 112 S. Ct. 2638 (1992).

In *El Apple I*, the plaintiff's case was filed under the Texas Commission on Human Rights Act ("TCHRA"), which is similar to Title VII of the Civil Rights Act of 1964. *See* 370 S.W.3d at 766. The *El Apple* defendant relied on *Perdue* and *Dague* to argue that the lodestar is presumptively reasonable and that the lodestar should only be enhanced in extraordinary circumstances. The Texas Supreme Court noted that while state procedural rules generally apply when awarding attorneys' fees under the TCHRA, the court "may draw on the far greater body of federal court experience with lodestar and fee shifting under the similar federal statutes." *Id.* The court thus accepted "the premise that lodestar presumptively produces a reasonable fee, but that exceptional circumstances may justify enhancements to the base lodestar." *Id.* The court held that fee applications in TCHRA cases must contain evidence necessary to calculate the fee under the lodestar method, such as detailed billing records. *Id.*

Since *El Apple*, several Texas appellate courts have considered whether its holding extends to other types of cases and held that *El Apple* does not require admission of hourly time records in all cases. *See Ferrant v. Graham Assocs., Inc.*, No. 02-12-00190, 2014 WL 1875825, at *4 (Tex. App.—Fort Worth 2014, no pet.) (collecting cases from the Dallas, Texarkana, and Houston (14th District) courts of appeals). The Fort Worth Court of Appeals specifically held that it does "not read *El Apple* to mean that evidence of attorney's fees is legally insufficient in an ordinary, non-lodestar, hourly-fee breach of contract case unless contemporaneous time records are admitted into evidence."

10

However, at least one court in this district has ruled, in a breach of contract case, that "both federal and state law require primary reliance on the lodestar method." *Gabbanelli Accordions & Imports, L.L.C. v. Hohner, Inc.*, No. H-12-0381, 2014 WL 6674145, at *1 (S.D. Tex. Nov. 24, 2014) (Rosenthal, J.). This court finds that the lodestar is the best method of determining reasonable attorneys' fees in this case. The prevailing party has provided evidence of the lodestar amount, and the lodestar method provides the court with the flexibility to consider the contingency contract when considering the overall reasonableness of the rate.

## A.   The Base Lodestar

The third and seventh *Arthur Andersen* factors relate to the reasonableness of the rates charged. Under factor three, courts must consider "the fee customarily charged in the locality for similar legal services," and under factor seven, courts look at "the expertise, reputation, and ability of the lawyer or lawyers performing the services." The Welch Litigants propose the following rates for calculating the base lodestar: $475 per hour for Welch and for partners at MSC; $350 per hour for senior associates at both firms; $274 per hour for junior associates at both firms; and $145 per hours for paralegals or law clerks at both firms.[1] The Welch Firm bills indicate that Welch worked

---

[1]   Later in their brief, the Welch Litigants indicate that the "usual and customary rate" is actually $500 to $600 per hour and that, given the difficulties with this case, the court "should properly use an increased hourly rate in determining the lodestar even before addressing enhancement." Dkt. 461 at 22. This is in contrast to the section of its brief discussing calculating the lodestar, which notes that the rates it used are "*at* or below the usual and customary rates charged in Houston, Harris County by lawyers of similar skill, experience and reputation in similar cases . . . ." Dkt. 416 at 16 (emphasis added). The Welch Litigants then go on to note that if the court rejects the contingent fee, it "should find that the actual placeholder hourly rates set forth in the TWW and MSC invoices in this case are in fact *well below* the customary, reasonable and appropriate rates given the rare and exceptional circumstances, [and] [w]hen the Court reaches the enhancement section . . . TWW suggests the Court should use a multiplier of no less than three-to-four to account for the specifics of the case." *Id.* at 16–17 (emphasis added). It is thus far from clear whether the Welch Litigants believe the lodestar should be calculated with the initial reasonable

1,470 hours, the Welch Firm's senior associates worked 1,064.50 hours, the Welch Firm's junior associates worked 539.5 hours, and the Welch Firms paralegals worked 484.5 hours on this case. MSC submitted billing records indicating that partners at MSC spent 1,371.8 hours on this case, senior associates spent 421.3 hours, junior associates spent 442.9 hours, and paralegals or law clerks spent 28.3 hours. When these hours are multiplied by the proposed rates for each group, the product is $1,288,389.00 for the Welch Firm and $925,293.90 for MSC.

OneBeacon does not dispute that the proposed rates are reasonable. Dkt. 429 at 12, 18. It contends, however, that the number of hours is not reasonable. *Id.* at 17. The court will thus determine whether the number of hours billed is reasonable by considering any *Arthur Andersen* factors relevant to the hours calculation. It will then calculate the lodestar by multiplying the reasonable hours by the reasonable hourly rates. After finding that base lodestar, the court will determine if there are exceptional circumstances that warrant adjustment to the base lodestar.

The only factor that bears on whether the number of hours billed is reasonable in this case is the first *Arthur Andersen* factor (time and labor required, the novelty and difficulty of the questions involved, and the skill required to perform the legal service properly). OneBeacon argues that this case was not very difficult and that much of the work by MSC and Welch was duplicative or otherwise unnecessary. *Id.* at 18. For instance, OneBeacon points out that Miller billed eight hours for a deposition that only lasted three hours and forty-five minutes. *Id.* OneBeacon also complains that Miller charged 0.3 hours every time he reviewed a simple notice of deposition, which should not have taken that long. *Id.* Finally, OneBeacon argues that Miller duplicated much of

rates—or placeholder rates—they provide and then adjusted upwards if there are rare and exceptional circumstances or whether they are asserting the "placeholder rates" are not reasonable in the first instance.

Welch's work by reviewing and analyzing the deposition transcripts from depositions that took place while MSC was not working on the case. *Id.* at 18–19.

OneBeacon also argues that Welch Firm's hours should be adjusted. First, OneBeacon contends that Welch's hours are inflated because he engaged in block billing and billed in quarter-hour increments. *Id.* at 21. OneBeacon also contends that Welch's hours are duplicative, as both he and Miller prepared for and attended depositions after MSC was back on the case, and there was no need for both attorneys to attend. *Id.* OneBeacon urges the court to reduce MSC's fees by 10% for duplicative or unreasonably high charges, and it requests that the court reduce the Welch Firm's fees by $16,506.25 for the depositions that both Welch and Miller attended and then further reduce the fees by 10% to 15% for Welch's block billing and billing in quarter-hour implements. *Id.* at 22.

The Welch Litigants argue that it was necessary for MSC to review deposition transcripts because Miller was lead counsel at trial and needed to review the transcripts to prepare for trial. Dkt. 437. The Welch Litigants point out that Miller would likely have needed to review the deposition transcripts prior to trial even if he had attended the depositions. *Id.* As far as both Welch and Miller attending depositions, the Welch Litigants point out that OneBeacon often had two partner-level attorneys attending depositions. *Id.* The Welch Litigants argue that a reduction for block billing and for billing in quarter-hour implements should not be automatic—particularly if a review of the bills indicates that the hours expended were reasonable. *Id.* The Welch Litigants point out that Welch's block billing contains significant detail and that it is clear that the amount of time expended for the described work was reasonable. *Id.* The Welch Litigants provide affidavits of Welch and Miller stating that the attorneys' fees they request are the product of billing judgment and are reasonable and necessary. Dkt. 416, Ex. A, ¶¶ 29–37, Ex. B, ¶¶ 32–34.

13

The court finds, notwithstanding OneBeacon's contention that this case "was not complicated or difficult on its face," that this was a complex case and that, given that complexity, it certainly was not unreasonable for both Miller and Welch to attend depositions or at least review the transcripts before the trial. The court will not reduce hours for both partners going to or reviewing the depositions. However, the Welch Litigants have not offered a reason for Miller billing extra hours for the deposition that lasted only three hours and forty-five minutes, so the court will reduce Miller's hours by four hours and fifteen minutes.[2] Additionally, while it is clear from a review of their affidavits, as well as the billing records themselves, that Miller and Welch used billing judgment and deleted various unnecessary hours prior to submitting their records, the court finds that a small deduction in Welch's hours for billing in quarter-hour implements is merited. The court will thus reduce Welch's hours by 5%.[3] The court is unconcerned with the block billing, given the level of detail on the bills.

If the court multiplies the billing rates that both the Welch Litigants and OneBeacon agree are reasonable by the hours billed, adjusted as discussed above, the base lodestar for the Welch Firm and MSC is represented in the following tables:

---

[2] The billing records demonstrate that MSC partners billed a total of 1,371.8 hours in this case. When one subtracts 4.25 from 1,371.8, the result is 1,367.55.

[3] The billing records demonstrate that Welch worked 1,470 hours on this case. Five percent of 1,470 is 73.5. When one subtract 73.5 from 1,470, the result is 1,396.5.

**The Welch Firm**

| Position | Rate | Hours | Total |
|---|---|---|---|
| Owner | $475 | 1,396.5 | $663,337.50 |
| Senior Associate | $350 | 1,064.50 | $371,525.00 |
| Junior Associate | $275 | 539.5 | $148,362.00 |
| Paralegal | $145 | 484.5 | $70,252.00 |
| | | | **$1,253,476.50** |

**MSC**

| Position | Rate | Hours | Total |
|---|---|---|---|
| Partners | $475 | 1,367.55 | $649,586.25 |
| Senior Associates | $350 | 421.3 | $147,455.00 |
| Junior Associates | $275 | 442.9 | $121,797.50 |
| Paralegals/Law Clerks | $145 | 28.3 | $4,103.50 |
| | | | **$922,942.25** |

**B.      Adjustments to the Lodestar**

OneBeacon argues that no upward adjustment is warranted because the lodestar is presumptively reasonable, and none of the factors outlined by the Welch Litigants is exceptionally important and warrants an adjustment to the base lodestar. Dkt. 429. The Welch Litigants argue that this is an exceptional case and that the court must adjust the lodestar based on the twelve *Johnson* factors. Dkt. 416. In the Fifth Circuit, courts use the twelve *Johnson* factors to determine whether the lodestar rate should be adjusted. *La. Power & Light Co.*, 50 F.3d at 329; *see also Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974) (setting forth twelve factors), overruled on other grounds by *Blanchard v. Bergeron*, 489 U.S. 87, 109 S. Ct. 939 (1989)). Texas state courts

15

will often consider "the far greater body of federal court experience with lodestar and fee shifting"

when assessing attorneys' fees. *Id.* at 765. The *Johnson* factors are as follows:

> 1) the time and labor required for the litigation;
> 2) the novelty and complication of the issues;
> 3) the skill required to properly litigate the issues;
> 4) whether the attorney had to refuse other work to litigate the case;
> 5) the attorney's customary fee;
> 6) whether the fee is fixed or contingent;
> 7) whether the client or case circumstances imposed any time constraints;
> 8) the amount involved and the result obtained;
> 9) the experience, reputation and ability of the attorneys;
> 10) whether the case was "undesirable";
> 11) the type of attorney-client relationship and whether that relationship was long-standing; and
> 12) awards made in similar cases.

*Id*. at 329 n.19 (citing *Johnson*, 488 F.2d at 717-19).

Both the Fifth Circuit and the Texas Supreme Court have noted that there is substantial

similarity and overlap in the *Arthur Andersen* factors, which Texas state courts generally consider

when using the lodestar method, and the *Johnson* factors used by federal courts. *Mid-Continent Cas.*

*Co. v. Chevron Pipe Line Co.*, 205 F.3d 222, 232 (5th Cir. 2000); *El Apple I*, 370 S.W.3d at 761.

A court should not consider any of the same factors that it has already considered when determining

the lodestar amount to determine whether to adjust the amount using the *Johnson* factors. *Shipes*

*v. Trinity Indus.*, 987 F.2d 311, 320 (5th Cir. 1993). Four of the *Johnson* factors have been

"presumed" to be fully reflected in the lodestar calculation. These factors are (1) the novelty and

complexity of the issues; (2) the special skill and experience of counsel; (3) the quality of

representation; and (4) the results obtained from the litigation. *Id.* The court should also keep in

mind when applying these factors that there is a strong presumption that the lodestar rate is

16

reasonable. *Saizan v. Delta Concrete Prods., Inc.*, 448 F.3d 795, 800 (5th Cir. 2006). "A district court must 'explain with a reasonable degree of specificity the findings and reasons upon which the award is based, including an indication of how each of the *Johnson* factors was applied.'" *McClain v. Lufkin Indus., Inc.*, 519 F.3d 264, 284 (5th Cir. 2008) (quoting *Von Clark v. Butler*, 916 F.2d 255, 258 (5th Cir. 1990)). Since OneBeacon has briefed the *Arthur Andersen* factors, the Welch Litigants rely on the *Johnson* factors, and because there is substantial overlap, the court will consider both sets of factors simultaneously when determining whether an adjustment to the base lodestar is warranted in this case.

### 1.        Time and Labor

The first *Arthur Andersen* factor is "the time and labor required, the novelty and difficulty of the questions involved, and the skill required to perform the legal service properly." This is essentially the same as the first three *Johnson* factors. While this was a difficult case involving more than the usual number of filings and many novel issues, these factors are adequately accounted for with the number of hours the attorneys spent on the case and the hourly rates used in determining the base lodestar.

### 2.        Preclusion of Other Employment

The second *Arthur Andersen* factor, the likelihood that the acceptance of the particular employment will preclude other employment by the lawyer, is substantially similar to the fourth *Johnson* factor. OneBeacon argues that this factor is subsumed into the lodestar. Dkt. 429. The court agrees that if MSC and the Welch Firm are paid for their reasonable hours during this timeframe, then there is no need to increase the base lodestar because they could not perform work for other clients during the same time period.

### 3.    Customary Fee

The third *Arthur Andersen* and fifth *Johnson* factor consider the fee customarily charged. This factor was also considered in determining the lodestar and has no bearing on whether to apply a multiplier.  The court considered the usual and customary fees in this area for this type of case when concluding that the base fees proposed by the Welch Litigants were reasonable.  The Welch Litigants argue that the "hourly rates in a usual case simply cannot be used as a basis for determining what a reasonable rate would be in handling the instant case." Dkt. 416 at 19.  They go on to assert that the initial rates it proposed "are based on the assumption that the attorney is working for a client with the ability to timely pay as the services are rendered, . . . [which] was not the case here." *Id.* at 19–20.  It argues that the usual and customary rate in this area is actually $500 to $600 and that they needed a higher rate to entice MSC to take the case, thus the contingency arrangement.

First, the facts relating to how difficult it was to get representation in this case are more properly considered under the contingency-fee factor.  Second, after reviewing recent cases and the affidavits of Welch and Miller, and based on the court's own experience, the court finds the rates it used in calculating the base lodestar are reasonable and customary for this type of case in Houston, Texas.  *See, e.g.*, *Haynesville Shale Rentals, LLC v. Total Equip. & Serv., INc.*, No. H-12-0860, 2014 WL 1379884, at *6 (S.D. Tex. Apr. 8, 2014) (Werlein, J.) (finding that, based on the judge's "more than 50 years as a lawyer/judge in Houston," "a blended hourly rate of $300 per hour is reasonable and customary"); *Reagan v. U.S. Bank, Nat'l Ass'n*, No. H-13-43, 2013 WL 3323185, at *4 (S.D. Tex. July 1, 2013) (Miller, J.) (finding that partner rates ranging from $448 to $564 per hour, associate rates at $200 per hour, and paralegal rates at $180 per hour were reasonable and customary fees in Houston for similar cases); *Preston Exploration Co., LP v. GSP, LLC*, No. H-08-3341, 2013

18

WL 3229678, at *11 (S.D. Tex. June 25, 2013) (Miller, J.) (finding rates in Houston of $407.03 per partner, $224.27 per non-partner, and $132.84 per legal assistant reasonable for purposes of calculating the lodestar in a "difficult case involving a substantial sum of money").

### 4.    Time Limitations

The fourth *Arthur Andersen* factor, time limitations imposed by the client or circumstances, is substantially similar to the seventh *Johnson* factor.  There were no time limitations in this case that would justify adjusting the base lodestar.

### 5.    Nature and Depth of Relationship with Client

The court will analyze the fifth *Arthur Andersen* factor last.  The sixth *Arthur Andersen* factor is "the nature and length of the professional relationship with the client," and it is substantially similar to the eleventh *Johnson* factor.  There is no evidence that the nature and depth of the relationship with the client should impact the base lodestar in this case.

### 6.    Experience, Reputation, and Ability of Lawyers

The seventh *Arthur Andersen* factor, "the expertise, reputation, and ability of the lawyer or lawyers performing the services," is similar to the ninth *Johnson* factor, "the experience, reputation, and ability of the attorneys."  The court considered the expertise, reputation, and ability of the lawyers when determining that the hourly billing rates submitted were reasonable, and thus will not take lawyers' qualifications into account when determining if a multiplier should be used.

### 7.    Contingent or Fixed Nature of Fee

The next *Arthur Andersen* factor, "whether the fee is fixed or contingent on results obtained or uncertainty of collection before the legal services have been rendered," is not as simple.  The *Johnson* factors that relate to this factor are the sixth, "whether the fee is fixed or contingent," and

the tenth, "whether the case was 'undesirable.'"  Certainly, MSC may have considered this case to be "undesirable," as it initially was not paid and had to withdraw, and it appeared that DISH would be paid out of any recovery before the Welch Litigants and MSC would be able to recover attorneys' fees.  *See* Dkt. 416.  The Welch Litigants argue that a "premium [must] be applied to take into account [that] "there may have been no recovery in this long protracted complex litigation" [and] . . . . that expenses, payroll, travel, experts[,] and other case related expenditures were paid by [Welch] . . . with no assurance of any reimbursement."  *Id.*

The Welch Litigants note that Texas courts consistently allow the use of a multiplier based upon the contingent nature of a fee, citing *Gonzales*, 72 S.W.3d at 412.  In *Gonzales*, the El Paso Court of Appeals held that, notwithstanding U.S. Supreme Court authority prohibiting the consideration of contingency arrangements in federal cases, the trial court did not err in considering the contingent nature of the fee when it enhanced the attorney fee award as federal cases, while instructive, did not control. 72 S.W.3d at 413.  In the U.S. Supreme Court case at issue (*Dague*, 505 U.S. at 566–67), the Court determined that it was improper to consider a contingent fee agreement in a case involving federal fee-shifting statutes not at issue in *Gonzales* or in this case.  Here, the court must award the fees pursuant to state law, and Texas state courts consider the contingent nature of the case when determining the reasonableness of fees under Texas state law.  *See, e.g.*, *Gonzales*, 72 S.W.3d at 412, *Stratton v. STO Energy Inc.*, No. 02-10-004830CV, 2012 WL 407385, Tex. App.—Fort Worth Feb. 9, 2012, no pet.) (holding that a multiplier of 2.17 was appropriate given, among other things, "the high risk borne by its contingent nature" and the "undesirability of the litigation"); *see also Edwards v. Aaron Rents, Inc.*, 482 F. Supp. 2d 803, 813 (W.D. Tex. 2006) (finding that "Plaintiff's counsel should be compensated for the risk he took in advocating this case

on a contingent basis and for the delay in his compensation" and granting "an upward adjustment based on this factor").

OneBeacon argues that under *El Apple* the lodestar is presumptively reasonable and that the Welch Litigants have not shown that the contingency fee factor "is such an exceptionally important factor here that it merits an upward adjustment to the lodestar." Dkt. 429 at 15. It points out that federal courts have forbade upward adjustments based on the contingent nature of cases for important policy reasons. *Id.* First, an enhancement may duplicate factors already considered when calculating the lodestar, such as the risk of loss, merits of the claim, etc. *Id.* Additionally, OneBeacon argues that an upward adjustment for the contingent nature of the case rewards attorneys for taking nonmeritorious claims. *Id.* at 16. Finally, OneBeacon asserts that even if the court is inclined to consider the contingent nature of the case with regard to MSC, MSC was only operating on a contingency fee for a short amount of time. *Id.* And with regard to the Welch Firm, OneBeacon argues that Welch was not representing himself on a contingency-fee basis because he could not have a contingency fee contract with himself. *Id.* at 20. OneBeacon asserts that any fear of non-recovery that the Welch Litigants had was the same fear every plaintiff faces and not a rare and exceptional factor that would justify increasing the base lodestar. *Id.*

First, the court agrees that the Welch Firm could not have a contingency agreement with itself. While the contingency fee agreement it has with MSC makes allowances for the Welch Firm's recovery of fees, it is not the type of contingency fee agreement that is contemplated by this *Arthur Andersen*/*Johnson* factor. The court will not apply a multiplier to the Welch Firm's base lodestar based on the contingent and undesirable nature of this case.

MSC's fees, however, are different.  The court is unconvinced that it is precluded from considering the contingent nature of the case when determining whether an adjustment to the base lodestar is necessary, as the court is applying state law to determine fees.  Moreover, the lodestar method is not even required in this case; fees could technically be awarded solely based on the contingency agreement so long as they are reasonable after a consideration of the *Arthur Andersen* factors.  As far as the other concerns expressed by OneBeacon, the court will not double count its considerations in determining whether a multiplier is necessary; there is no concern in this case about luring lawyers to take nonmeritorious claims with contingency agreements; and while MSC was only on a contingency fee agreement a short time during this case, the court finds that the purposes the Texas Supreme Court expressed for allowing contingency fees in *Arthur Andersen* still apply.  The court noted that contingency agreements aid plaintiffs who cannot afford to pay a lawyer up-front and compensate the attorney for the risk that he or she will receive no fee.  *Arthur Andersen*, 945 S.W.2d at 818.  The Welch Litigants' argument that the contingency agreement was necessary because MSC had concerns about getting paid in this case is particularly compelling since MSC originally had to withdraw from the case because it was not being paid.  Thus, the fact that the contingent fee was not in effect the entire case is of little consequence since it was needed for the Welch Litigants to secure the type of representation they believed they needed to prevail on their claims.

**8.     Results Obtained**

The final factors the court will consider are the fourth *Arthur Andersen* factor, which is the same as the eighth *Johnson* factor, "the amount involved and the results obtained," and the twelfth *Johnson* factor, "awards in similar cases."  OneBeacon argues that these factors are already reflected

in the lodestar amount, citing *Shipes*, 987 F.2d at 320.  In *Shipes*, the Fifth Circuit determined that many of the factors the district court considered in enhancing the lodestar were unwarranted.  It noted that the plaintiff's "victory was complete on all issues" and "resulted in a substantial award of monetary damages . . . ."  987 F.2d at 322.  The court instructed the district court to determine if it was "customary in the area for attorneys to charge an additional fee above their hourly rate for an exceptional result after lengthy and protracted litigation" and that if the plaintiff could "demonstrate this area custom, the district court would be warranted in enhancing the lodestar in an appropriate amount based on this factor."  *Id.*  The court cautioned, however, that "this factor is presumably reflected in the lodestar amount and enhancement based on results obtained is proper only in rare and exceptional cases supported by specific evidence and detailed findings by the district court."  *Id.* at 311 n.9.

The Welch Litigants cite *Black v. SettlePou, P.C.*, 732 F.3d 492, 502 (5th Cir. 2013) for the opposite contention.  Dkt. 416 at 18.  In *Black*, the Fifth Circuit noted, in a Fair Labor Standards Act case, that the "'most critical factor in determining an attorney's fee award is the degree of success obtained.'" 732 F.3d at 503 (citations omitted).  *Black* and the cases upon which *Black* relies for this rule deal with whether the award should be reduced for a less-than-stellar outcome.  *See id.*; *see also, e.g.*, *Romaguera v. Gegenheimer*, 162 F.3d 893, 896 (5th Cir. 1998) (noting that the district court "is required to consider . . . whether the plaintiff failed on alternative claims and whether the award is excessive in light of the plaintiff's overall success").  Here, the Welch Litigants are asking for a multiplier for securing the desired outcome.

The court finds that this factor is already considered in (1) the lodestar, to the extent that experienced lawyers with higher billing rates had to work more hours to be victorious in this case;

23

and (2) the multiplier the court will apply for the contingency fee factor.  Accordingly, the court will not increase either the Welch Firm's or MSC's fees for the results obtained or awards in similar cases.

### 9.      Conclusion

In sum, all of the factors other than whether there was a contingent fee and that the case was undesirable are either accounted for in the base lodestar or are irrelevant.  The contingent nature of the case and its undesirability warrant an adjustment to the base lodestar for MSC only.  The judgment in this case is $29,826,731, and the excess judgment after deducting DISH's $5 million policy limit is $24,826,731.[4]  *Id.*  The contingency fee agreement is for 36% of the judgment, and 36% of $24,826,731 is $8,937,623.  *Id.*  The Welch-MSC Agreement allows for the fees for recovery under the statutory *Stowers* claim to be split with 82% going to the Welch Firm and 18% to MSC, and other portions of the fees are to be split so that MSC receives 10-18% of the Welch Firm's recovery under its agreement with DISH.  Dkt. 416, Ex. B-2.  Thus, under the contingency agreement, MSC would have received at most 18% of $24,826,731, or $4,468,811.58.  The base lodestar amount is $922,942.25, so the contingency amount is more than 4.8 times the amount of the base lodestar.  While some courts have applied large multipliers, the court finds that a multiplier of 4.8 is not necessary in this case to sufficiently take into account the contingent nature of the case. *See In re Enron Corp. Securities, Derivative & ERISA Litig.*, 586 F. Supp. 2d 732, 752 (S.D. Tex. 2008) (noting that "the Ninth Circuit performed a survey of multipliers and found 'a range of 0.6–19.6, with most (20 of 24, or 83%) from 1.0 to 4.0 and a bare majority (13 of 24, or 54%) in the

---

[4]  The Welch Litigants asserted that they were "willing" to have the 36% contingent fee applied to only the amount of the judgment in excess of the $5 million policy limits so as to "not double dip."  Dkt. 416 at 2.

1.5–3.0 range.'" (quoting *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1051 n.6 (9th Cir. 2002)).

The court will apply a multiplier of 3.0. MSC's total fee award, taking into account the base lodestar

of $922,942.25 and multiplying it by 3.0, is $2,768,826.75. The Welch Firm's total attorneys' fee

award is the lodestar amount: $1,253,476.50.

## C.     Conditional Attorneys' Fees

The Welch Litigants request that the court award conditional attorneys' fees of $407,500.00

for its reasonable and necessary appellate fees, should OneBeacon pursue an unsuccessful appeal.

Dkt. 416 at 23–24. They arrived at this figure by adding fees for 500 hours of partner time, 250

hours of senior associate time, and 300 hours of junior associate time. *Id.* OneBeacon argues first

that 1,050 hours is a significant amount of time to spend on the appellate process, especially since

all of the issues have already been thoroughly researched and analyzed during the course of this

litigation. Dkt. 429 at 23. OneBeacon additionally argues that predicting attorneys' fees on appeal

is a fruitless exercise and urges the court to wait to determine appellate fees until after the appeal is

complete. *Id.* The court agrees with OneBeacon. The Welch Litigants' motion, insofar as they

request an award of conditional attorneys' fees, is DENIED without prejudice.

## IV. CONCLUSION

The Welch Litigants' motion for attorneys' fees is GRANTED IN PART.  OneBeacon shall pay to the Welch Litigants $4,022,303.25, which is the sum of the award to MSC ($2,768,826.75) and the Welch Firm ($1,253,476.50).  The court declines to award conditional appellate attorneys' fees.

Signed at Houston, Texas on August 24, 2015.

_____
Gray H. Miller
United States District Judge