# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

OneBeacon Insurance Company,

|  |  |  |
|---|---|---|
| *Plaintiff,* | § | |
| | § | |
| | § | |
| v. | § | Civil Action H-11-3061 |
| | § | |
| T. Wade Welch & Associates, *et al.,* | § | |
| | § | |
| *Defendants.* | § | |

## ORDER

Pending before the court are (1) a motion for attorneys' fees (Dkt. 420); (2) a supplemental motion for attorneys' fees (Dkt. 441); and (3) a bill of costs (Dkt. 419), all filed by intervenor and counter-claimant DISH Network Corporation ("DISH"). Plaintiff and counter-defendant OneBeacon Insurance Company ("OneBeacon") has filed objections to the bill of costs and disputes the amounts requested in both the motion for attorneys' fees and the supplemental motion. Dkts. 430, 431, 444. After considering the motions, bill of costs, objections, related filings, and applicable law, the court finds that the motion for attorneys' fees (Dkt. 420) should be GRANTED IN PART and DENIED IN PART, the supplemental motion for fees (Dkt. 441) should be GRANTED IN PART and DENIED IN PART, the objections to the bill of costs should be SUSTAINED IN PART and OVERRULED IN PART, and the costs contained in the bill of costs (Dkt. 419) should be TAXED IN PART.

## I. BACKGROUND

Both DISH and OneBeacon agree that DISH is entitled to recover attorneys' fees for prevailing on its breach-of-contract claim. *See* Dkt. 420, 430. They disagree about the amount of

fees.  In its original motion for fees, DISH requests a lodestar award of $2,820,365.23 in attorneys' fees, enhanced to $4,230,547.50 after a multiplier of 1.5 is applied, and $550,000 in conditional attorneys' fees in the event OneBeacon's appeal is unsuccessful.  Dkt. 420.  OneBeacon contends that the lodestar amount is too high, the use of a multiplier is inappropriate in this case, and that the court should only award $2,120,901.26 in fees and deny the request for conditional appellate fees without prejudice to refiling after the appeal. Dkt. 430.

In the supplemental motion for fees, DISH requests an additional award of $205,412.11, representing $156,313.51 in fees billed by Coblentz Patch and $49,098.60 in fees billed by Gardere since March 2015.  Dkt. 441.  OneBeacon contends that most of the fees requested in the supplemental motion are untimely as they could have been requested in the original motion, and the remainder of the fees requested are too high for the type of legal work involved.  Dkt. 444.

In the bill of costs, DISH seeks $108,369.16 in costs.  Dkt. 419.  OneBeacon objects to many of the costs, contending that DISH should not be able to recover various types of costs it has requested, such as costs for certain video depositions, and PACER fees, and that the copy costs are too high.  Dkt. 431.

The court will address the motion for attorneys' fees, supplemental motion for attorneys' fees, and bill of costs, *seriatim*.

## II. ORIGINAL MOTION FOR ATTORNEYS' FEES

DISH requests a base lodestar amount of $2,820,365.23 in its original fee application and requests that the court apply a multiplier of 1.5, resulting in a total fee request of $4,230,547.50. Dkt. 420.  OneBeacon argues that the court should reduce the hours used for the lodestar in the original fee application for (1) time spent on issues not related to DISH's claim for breach of

contract; (2) paralegal time spent on administrative tasks; (3) unproductive travel; (4) excessive, vague, duplicative, and otherwise inappropriate time entries; (5) time spent by local counsel on the *Stowers* issues; and (6) local counsel's block billing. Dkt. 430. DISH concedes that there are some minor items that may be deducted from its base lodestar. Dkt. 439 & Exs. However, it argues that most of the amounts requested in the original application are correct. *Id.* It asserts it is entitled, in addition to those fees, to an upward adjustment using a multiplier of 1.5 due to the complexity of the case, barriers to bringing the case to trial, and the success achieved. Dkt. 420. OneBeacon asserts that upward adjustments are permitted only in exceptional cases and that there are no particularly compelling reasons to enhance the lodestar in this case. Dkts. 430.

As to conditional attorneys' fees, DISH requests $550,000 due to the anticipated complexity of issues that will be raised on appeal. Dkt. 420. OneBeacon argues that predicting attorneys' fees for an appeal is a fruitless exercise and that the court should wait until the appeal is complete to consider the issue. Dkt. 430.

## A.    Legal Standard

DISH and OneBeacon agree that the court should use the lodestar method to determine DISH's reasonable attorneys' fees. *See* Dkts. 420, 430. Under Texas law, the "party applying for an award of attorney's fees under the lodestar method bears the burden of documenting the hours expended on the litigation and the value of those hours." *El Apple I, Ltd. v. Olivas*, 370 S.W.3d 757, 760 (Tex. 2012). To calculate reasonable attorneys' fees under the lodestar method, courts must first establish a lodestar fee by multiplying the reasonable number of hours expended on the case by the reasonable hourly rates of the participating lawyers. *Migis v. Pearle Vision, Inc.*, 135 F.3d 1041, 1047 (5th Cir. 1998). "[O]nce the base lodestar has been calculated, a court may raise or lower the

3

lodestar amount if certain relevant factors indicate an adjustment is necessary." *Williams-Pyro, Inc. v. Barbour*, 408 S.W.3d 467, 483 (Tex. App.—El Paso 2013, pet. denied); *see also, e.g.*, *La. Power & Light Co. v. Kellstrom*, 50 F.3d 319, 324 (5th Cir. 1995); *El Apple I*, 370 S.W.3d at 761.

Texas courts determine the reasonableness of the hours and rates by applying the *Arthur Andersen* factors. *See Arthur Andersen & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 818 (Tex. 1997). These factors are:

> (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill required to perform the legal service properly;
> (2) the likelihood . . . that the acceptance of the particular employment will preclude other employment by the lawyer;
> (3) the fee customarily charged in the locality for similar legal services;
> (4) the amount involved and the results obtained;
> (5) the time limitations imposed by the client or by the circumstances;
> (6) the nature and length of the professional relationship with the client;
> (7) the expertise, reputation, and ability of the lawyer or lawyers performing the services; and
> (8) whether the fee is fixed or contingent on results obtained or uncertainty of collection before the legal services have been rendered.

*Id.* "[E]vidence of each of the *Andersen* factors is not required to support an award of attorney's fees." *Arthur J. Gallagher & Co. v. Dieterich*, 270 S.W.3d 695, 706 (Tex. App.—Dallas 2008, no pet.). "The court can also look at the entire record, the evidence presented on reasonableness, the amount in controversy, the common knowledge of the participants as lawyers and judges, and the relative success of the parties." *Jarvis v. Rocanville Corp.*, 298 S.W.3d 305, 318 (Tex. App.—Dallas 2009, pet. denied). "The lodestar method aims to provide a relatively objective measure of attorney's fees," and, to ensure this, trial courts "should obtain sufficient information to make a meaningful evaluation of the application for attorney's fees." *El Apple I*, 370 S.W.3d at 762. The

4

court should keep in mind when applying these factors that there is a strong presumption that the lodestar rate is reasonable. *Saizan v. Delta Concrete Prods., Inc.*, 448 F.3d 795, 800 (5th Cir. 2006).

In the Fifth Circuit, courts use the twelve *Johnson* factors to determine whether the lodestar rate should be adjusted. *La. Power & Light Co.*, 50 F.3d at 329; *see also Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974) (setting forth twelve factors), overruled on other grounds by *Blanchard v. Bergeron*, 489 U.S. 87, 109 S. Ct. 939 (1989)). Texas state courts will often consider "the far greater body of federal court experience with lodestar and fee shifting" when assessing attorneys' fees. *Id.* at 765. The *Johnson* factors are as follows:

> 1) the time and labor required for the litigation;
> 2) the novelty and complication of the issues;
> 3) the skill required to properly litigate the issues;
> 4) whether the attorney had to refuse other work to litigate the case;
> 5) the attorney's customary fee;
> 6) whether the fee is fixed or contingent;
> 7) whether the client or case circumstances imposed any time constraints;
> 8) the amount involved and the result obtained;
> 9) the experience, reputation and ability of the attorneys;
> 10) whether the case was "undesirable";
> 11) the type of attorney-client relationship and whether that relationship was long-standing; and
> 12) awards made in similar cases.

*Id*. at 329 n.19 (citing *Johnson*, 488 F.2d at 717-19).

Both the Fifth Circuit and the Texas Supreme Court have noted that there is substantial similarity and overlap in the *Arthur Andersen* factors, which Texas state courts generally consider when using the lodestar method, and the *Johnson* factors used by federal courts. *Mid-Continent Cas. Co. v. Chevron Pipe Line Co.*, 205 F.3d 222, 232 (5th Cir. 2000); *El Apple I*, 370 S.W.3d at 761. A court should not consider any of the same factors that it has already considered when determining

the lodestar amount to determine whether to adjust the amount.  *Shipes v. Trinity Indus.*, 987 F.2d 311, 320 (5th Cir. 1993).  Four of the *Johnson* factors have been "presumed" to be fully reflected in the initial lodestar calculation.  These factors are (1) the novelty and complexity of the issues; (2) the special skill and experience of counsel; (3) the quality of representation; and (4) the results obtained from the litigation.  *Id.*  "A district court must 'explain with a reasonable degree of specificity the findings and reasons upon which the award is based, including an indication of how each of the *Johnson* factors was applied.'"  *McClain v. Lufkin Indus., Inc.*, 519 F.3d 264, 284 (5th Cir. 2008) (quoting *Von Clark v. Butler*, 916 F.2d 255, 258 (5th Cir. 1990)).

**B.    Hours Reductions**

### 1.    Issues Not Related to the Breach-of-Contract Claim

DISH concedes that it is entitled to attorneys' fees for the hours it spent on the breach-of-contract claim only.  Dkt. 420.  DISH provides declarations of its lead counsel and local counsel indicating that they exercised billing judgment by reviewing all time entries prior to submitting the bills and deleted any entries that were disproportionate to the tasks.  *Id.*  They also assert that they removed hours attributable to the *Stowers* claim that were independent of the breach-of-contract claim, and that they segregated the entries that involved the Welch litigants' bad faith claims and their efforts to recover lost profits or punitive damages.  *Id.*  DISH contends that it segregated and excluded a total of $536,000 between Coblentz Patch Duffy & Bass LLP ("Coblentz Patch"), its main firm, and Gardere Wynne Sewell LLP ("Gardere"), its local counsel's firm.  *Id.*  DISH asserts that, as a result of its segregation and billing judgment efforts, it reduced Coblentz Patch's hours from 7,707.50 to 6,473.57, and it reduced Gardere's hours from 947.50 to 578.93.  *Id.*

### a. *Coblentz Patch*

**1) Blum and Welch Depositions.** OneBeacon argues that DISH should have deleted the time spent on the deposition of Jeff Blum, who was the DISH representative who testified at trial, and that it should have reduced the hours spent on defendant T. Wade Welch's deposition more than it did. Dkt. 430. With regard to Blum, OneBeacon notes that it deposed Blum during discovery to uncover facts relating to the lost profits issue, which is completely unrelated to DISH's breach-of-contract claim. *Id.* While DISH reduced its time relating to the Blum deposition by 25% because some of the deposition related to lost profits, OneBeacon argues that at least 75% of the Blum deposition related to lost profits. *Id.* Applying a 75% reduction results in an additional hours deduction of 11.1 hours, or $6,060. *Id.* With regard to Welch, OneBeacon argues that the deduction DISH applied to the hours used for the T. Wade Welch deposition is inadequate as DISH applied a 25% deduction and the hours should actually be reduced by 50%. Dkt. 430. The additional 25% reduction urged by OneBeacon would result in an overall fee reduction of $4,030. DISH responds to all of these arguments by pointing out that it deducted approximately $521,000 in fees based upon billing judgment, a 15% total reduction of the fees actually incurred in this litigation, to address the exact issues OneBeacon raises. Dkt. 439.

After reviewing all materials, the court finds that the reduction DISH used for the Blum and Welch depositions, 25%, adequately discounts for the time during the depositions spent on issues unrelated to the breach-of-contract claim.

**2) *Stowers* Claim.** OneBeacon next argues that DISH missed many of the Coblentz Patch entries that it claims it attempted to delete relating to the *Stowers* claim. Dkt. 430.

OneBeacon identifies 15 time entries relating to the *Stowers* claim that were not omitted from DISH's lodestar calculation. *Id.* The identified charges total $8,538. *Id.*

DISH agrees to delete $7,684.20 from its lodestar request for these *Stowers* charges. The amount represents the $8,538 of charges identified by OneBeacon minus the 10% that DISH already deducted off of these stated fees in its final bills. Dkt. 439, Morgan Dec. at 11 n.5. The court agrees that this suggestion remedies the issues outlined by OneBeacon and will accordingly deduct $7,684.20 from the lodestar.

   **3) Brawley Deposition.** OneBeacon next argues that DISH inappropriately charged for hours relating to the deposition of James Brawley. Dkt. 430. OneBeacon points out that DISH concedes that Brawley's testimony is relevant only to help establish that OneBeacon knew that its insured faced malpractice liability above the policy limits, which is relevant only to the *Stowers* and Chapter 541 claims, not the breach-of-contract claim. *Id.* OneBeacon argues that it appears DISH left 30 entries relating to Brawley on its bill, amounting to a dollar charge of $17,631. *Id.*

DISH concedes that some, but not all, of the entries remaining on its bills that contain the name "Brawley" should have not have been included in the lodestar. Dkt. 439, Morgan Dec. ¶ 20. It proposes a 50% reduction of the disputed Brawley fees, or $7,933.95.[1] *Id.* DISH specifically identifies $2,910 worth of charges with descriptions that contain the name "Brawley" that it contends are inextricably intertwined with fees it may recover. *Id.* & Ex. G.

The amount of fees in the bills containing the name "Brawley" that DISH contends relate to work inextricably intertwined with recoverable fees is far less than the 50% reduction it proposes.

---

[1] DISH points out that it already reduced the $17,631 in fees resulting from descriptions containing the word "Brawley" by 10% of the total invoice, so these fees are actually $15,867.90 of the proposed lodestar amount, and half of that $15,867.90 is $7,933.95.

The court finds 50% to be inadequate. The court will reduce the overall fee by $13,247.90. The court arrived at this figure be first reducing the amount OneBeacon requested be deducted ($17,631) by 10% to reflect the 10% deduction DISH had already taken from the raw bills, which equals $15,867.90. Then, the court applied the 10% deduction to the $2,910 in charges that DISH indicates contain the word "Brawley" but are inextricably interwoven with fees it may recover to arrive at the billed amount of these fees, which equals $2,619. Next, the court subtracted $2,619 from $15,867.90. The result is $13,248.90, which reflects the amount of fees in the lodestar that came from hours billed that contain the name "Brawley" that DISH has not shown are recoverable.

**4) Matters Not Relating to Breach of Contract.** OneBeacon next argues that DISH did not delete many fees and underestimated the amount of time spent in connection with matters that do not relate to the breach-of-contract claim. Dkt. 430. First, OneBeacon asserts that DISH did not adequately delete hours spent on the duty-to-defend claim. *Id.* It points out that there are 31 time entries relating to the duty to defend totaling 79.1 hours. *Id.* DISH billed $35,551 for these hours. *Id.* DISH contends that the briefing on the duty-to-defend claim focused almost exclusively on the prior knowledge exclusion, which had a direct impact on DISH's breach-of-contract claim. *Id.* Thus, DISH contends its work on this briefing was inextricably intertwined with its own claim, and the fees are entirely recoverable under *Tony Gullo Motors, L.L.P v. Chapa*, 212 S.W.3d 299, 313 (Tex. 2006).

The court agrees that the duty-to-defend analysis hinged almost exclusively on the prior knowledge exclusion, which is also a major issue that would have had to be analyzed and briefed for the breach-of-contract claim. Thus, the two claims are inextricably intertwined, and DISH is entitled to recover fees for the time spent working on that issue. *Tony Gullo Motors*, 212 S.W.3d

at 313–14 ("[I]t is only when discrete legal services advance both a recoverable and unrecoverable claim that they are so intertwined that they need not be segregated.").

### b.   *Gardere*

OneBeacon argues that there are 94 time entries in Gardere's invoices that specifically relate to the *Stowers* issues, totaling $80,407.50, and that this amount should be deducted from the base lodestar proposed by DISH.  Dkt. 430.  DISH responds that Gardere exercised billing judgment by reducing its total fees by 35%.  Dkt. 439.  DISH additionally argues that not every entry that contains the word "*Stowers*" should be written off, as some of the work on the *Stowers* claim overlapped with the breach-of-contract claim, as the existence of coverage was important to both analyses.  *Id.*

The court has reviewed the time entries and the declaration of lead local counsel from Gardere, Jim Cooper.  Cooper asserts that he identified people who only worked on non-recoverable matters or whose time spent on the case was minimal.  He highlighted these individuals on the billing records and completely removed their time from the lodestar analysis.  Dkt. 420, Ex. B.  He then reduced the bills of two attorneys who primarily worked on *Stowers* or Texas Insurance Code matters by 60%.  *Id.*  He states that he did not completely remove their fees because of the overlap between those claims and the breach-of-contract claim.  *Id.*  He then reviewed his time entries and those of the only other attorney whose time had not yet been reduced, Stacy Obenhaus, and determined that the proper discount rate for them was 30%.  *Id.*  The discounts he discusses amount to $45,025.50 for the individuals whose bills were completely discounted, $10,835.40 for the two attorneys whose bills were discounted by 60%, and $142,320.60 for Cooper and Obenhaus—a total of $198,181.50.  Since the *Stowers* entries OneBeacon identifies amount to only $80,407.50, and

Gardere discounted its fees by $198,181.50 to account for work on non-recoverable claims, the court finds no additional discount is needed.

OneBeacon also urges the court to reduce the hours for which DISH is reimbursed for Gardere's work by 20% due to Gardere's use of block billing. Dkt. 430. OneBeacon points out that courts have reduced the lodestar amount by 10% to 50% when time has been block billed. *Id.* DISH contends that a reduction for block billing is not automatic, and that the court should instead determine if the hours were reasonable for the work performed. Dkt. 439. The court has reviewed the Gardere billing records and finds that the detailed descriptions tend to match up with the hours charged and that no deduction for block billing is necessary in this case.

### 2.  Paralegal Time

OneBeacon challenges many of the paralegal fees on DISH's bills. It contends that paralegal time is only recoverable for time spent performing work traditionally done by attorneys and that much of the work billed by paralegals in this case was administrative in nature. Dkt. 430. OneBeacon points, specifically, to several entries in the time records of Fernando Mariano, Jennifer Nelson, and Steve Jang. *Id.* OneBeacon requests that the court delete all hours billed for Mariano from the lodestar—$76,668.90 in fees—and reduce the lodestar by 40% of the fees billed for Nelson and Jang—a $72,671.86 reduction. *Id.*

DISH argues that the deductions OneBeacon requests for paralegal fees are excessive. Dkt. 439. It agrees that Nelson's tasks related to organizing the Houston war room for trial and Mariano's clerical tasks may not represent "legal work," but it disagrees that all the entries challenged by OneBeacon relate to non-legal work. Dkt. 439, Morgan Dec. ¶¶ 12–15. As far as Jang, DISH contends that the three entries OneBeacon identifies as relating to administrative tasks

are actually legal tasks. *Id.* ¶ 14.  It suggest a deduction of $3,096.90 for Nelson's tasks associated with the war room and a 50% deduction, or $37,527.60, in Mariano's fees to account for the sometimes clerical nature of his tasks. *Id.* ¶¶ 13, 15.

The court has reviewed the contested time records of the paralegals and agrees with DISH that much of the work is legal work.  For instance, the three Jang entries relate to reviewing and compiling documents for depositions and briefing.  *See* Dkt. 439, Morgan Dec. Exs. C, E.  If Jang were just compiling documents that the attorneys told him to compile, it would be administrative. However, the work descriptions convey that he was conducting an independent review and then exercising legal judgment as to which documents would be necessary, which is legal work.  The court finds the deductions suggested by DISH in its reply adequately reduces the fees for non-legal work.  Therefore, the court will reduce the overall paralegal fees by $3,096.90 plus $37,527.60, which totals $40,624.50.

### 3.    Unproductive Travel

OneBeacon next argues that $44,598.50 of the amount billed by the Coblentz Patch lawyers and staff for "travel" is not proper.  Dkt. 430.  OneBeacon contends that if the individuals billing for travel were not actually working while they were traveling, then the time should have been billed at half rate.  *Id.*  DISH asserts that the travel entries, for the most part, already reflect an approximately 50% discount.  Dkt. 439.  DISH concedes that there are six entries for travel to and from Houston for trial that do not appear to be discounted.  Dkt. 439, Morgan Dec. ¶ 11.  DISH thus agrees to a deduction of $5,674.72 from its total invoice, which is half of the total time billed for these six entries after the ten percent discount already included in the total bill is applied.  *Id.*

Since DISH has shown that most of the entries are already appropriately discounted and concedes that $5,674.72 should be deducted, the court will deduct $5,674.72 from the total lodestar amount to account for travel time that DISH previously failed to discount or failed to adequately document as productive travel time.

### 4.     Excessive, Vague, Duplicative, and Otherwise Inappropriate Time Entries

OneBeacon next argues that DISH's attorneys failed to exercise billing judgment, as (1) they spent significant time on straightforward tasks and administrative work; (2) they billed time for conferences and discussions; (3) many of their time entries are vague; and (4) they billed for work not related to the breach-of-contract claim.  OneBeacon requests an additional discount of 15% to the time properly billed (after deductions are taken for the paralegal's administrative tasks, etc.). Dkt. 430.

DISH notes that it already deducted approximately $521,000 in Coblentz Patch's fees for billing judgment, which is approximately a 15% overall reduction of the fees incurred in this litigation.[2]  Dkt. 439.  DISH contends that these billing judgment deductions adequately account for the "handful of time entries" OneBeacon "cherry picked out of the over 4,000 total Coblentz [Patch] time entries."  *Id.*   As far as the instances that OneBeacon asserts Coblentz Patch billed for administrative work, DISH clarifies in a declaration that the entries that one of its attorneys described as "filing briefs" did not reflect time spent filing via ECF; instead, this meant finalizing the documents for filing, such as final cite checks, preparing exhibits, etc.  Dkt. 439, Morgan Dec. ¶ 5.

_____

[2] This amount includes a $440,789 reduction in pre-invoice billing reductions by DISH's lead counsel, which included deletions of time entries he felt were disproportionate and then a 10% overall discount, plus a total of $80,471.00 that DISH's lead counsel determined, for the purposes of this motion, were not recoverable.  Dkt. 420, Patch Dec. ¶¶ 88–89.

DISH additionally clarifies that the entries by Richard Patch stating that he was reviewing notices of appearance at the beginning of trial relate to actual discussion among counsel relating to the addition of appellate counsel on the eve of trial. *Id.*

As far as time spent on attorney conferences, DISH's counsel disagrees that the time spent in discussions with colleagues is not recoverable, asserting that "strategizing and debating issues with your colleagues [is a] necessary and beneficial part of the drafting process." Dkt. 439, Morgan Dec. ¶ 7. OneBeacon cites one case from a federal district court in the Northern District of Mississippi for the proposition that attorneys should work independently and not constantly be conferring with each other. Dkt. 430 at 12 (citing *Miss. State Chapter Operation Push v. Mabus*, 788 F. Supp. 1406, 1418 (N.D. Miss. 1992)). In that case, the court noted that the submitted timesheets "consist[ed] of page after page of teleconference entries" and that a "substantial amount of [a particular attorney's] calls [were] to the other six attorneys." *Mabus*, 788 F. Supp. at 1417–18. The court was concerned about duplication of effort and noted specifically the "sheer excess and frequency of these random calls" which the court felt "smack[ed] of inefficiency and waste." *Id.* at 1418.

The time records in this case are much different than those described by the court in *Mabus*. Here, OneBeacon notes that Morgan mentioned reviewing and revising a draft in the same time entry as discussing it with two other people and failed to log the time separately. Dkt. 430 at 13. OneBeacon cites about thirty hours of time billed by Morgan that contained notes about discussion with colleagues. *Id.* at 13 & n.20. There is no concern about "page after page" of entries relating to discussion with colleagues. The court agrees with DISH that some discussion with colleagues,

so long as it is not excessive, is beneficial.  There is no indication that DISH's bills relating to discussion or conferences are excessive.

OneBeacon next asserts that many of DISH's time entries are vague, citing forty-one instances totaling 261.3 hours  in which DISH's timekeepers described their work as "prepare for trial" with no additional detail. Dkt. 430 at 14.  OneBeacon also takes issue with descriptions solely stating "legal research re: discovery," "discovery issues," "correspondence to W. Murray," and "research regarding settlement issues; review and memo regarding same."  *Id.*  Additionally, OneBeacon complains about redacted entries that make it impossible for OneBeacon or the court to determine whether the entries relate to the appropriate claims or were reasonable.  *Id.* at 15.

DISH responds that the paralegals that billed hours to "prepare for trial," were actually preparing for trial by reviewing exhibits, transcripts, etc., and that it has already discounted one of the paralegal's bills by 50%. Dkt. 439, Morgan Dec. at 5.  As far as the redactions, DISH contends that they were necessary to protect the attorney-client privilege and that DISH excluded any time related to a non-recoverable task in its lodestar.  *Id.*  DISH contends that its 15% reduction of the total entries more than accounts for OneBeacon's concerns with a limited number of vague or redacted entries.  *Id.* at 6.  The court agrees that the deductions DISH has already applied cover these minor issues.

Finally, the court has already considered whether DISH properly reduced its fees for the time DISH's counsel spent on hours not related to the breach-of-contract claim.  OneBeacon reasserts its argument about bills containing descriptions not related to the breach-of-contract claim under its argument about "otherwise inappropriate time entries." Dkt. 430 at 15.  OneBeacon identifies a handful of entries related to the breach-of-contract claim that were not written off and contends that

15

"[o]n nearly every page of the invoices, it is possible to find an entry that leaves one wondering whether the claim for breach of contract was actually advanced by the work performed." Dkt. 430 at 16. The court finds that while one may wonder if the claim was advanced by every single hour of time spent on this case, the reductions already in place plus the additional reductions discussed above are sufficient.

### 5.    Conclusion Regarding Hours Deductions

In sum, the following amounts will be subtracted from the lodestar: $7,684.20 for the *Stowers* charges, $13,248.90 for Brawley-related charges, $40,624.50 for paralegal fees for non-legal work, and $5,674.72 for non-productive travel. The proposed lodestar is $2,820,365.23. After subtracting $7,684.20, $13,248.90, $40,624.50, and $5,674.72, the adjusted lodestar is $2,753,132.91.

## C.    Use of a Multiplier

DISH argues that this is a rare and exceptional case in which a multiplier should be used to enhance the lodestar. Dkt. 420 at 21. DISH specifically cites the complexity of the case, the barriers to bringing the case to trial, and the success achieved. *Id.* at 21–22. DISH requests a 1.5 multiplier to its already significantly reduced and segregated fees. *Id.* at 22. It points out that it prevailed on every jury question and that the character of this victory weighs in favor of an upward adjustment. *Id.* It additionally argues that the court should apply a multiplier because of OneBeacon's behavior in rejecting DISH's settlement offer, electing to rescind its policy and file this claim just days before the mediation of the underlying claim, and abandoning its insured. *Id.* at 24.

OneBeacon asserts that none of these reasons makes this case rare or exceptional meriting an upward adjustment. Dkt. 430 at 20. It contends that the complexity of the case is already fully reflected in the lodestar. *Id.* Additionally, it points out that the issues associated with the breach-of-

16

contract claim, as opposed to other claims in this case, were not complex. *Id.* OneBeacon argues that the results obtained factor is also subsumed in the lodestar calculation, and not a proper factor to consider in deciding whether to enhance the lodestar. *Id.* at 21. OneBeacon contends that its behavior is not a relevant factor that courts take into account when determining whether the lodestar should be adjusted. *Id.* at 22.

DISH replies that the breach-of-contract claim *would* have been straightforward and not required an enhancement if OneBeacon had not decided to rescind the policy at issue. Dkt. 439 at 5. Because of the rescission, DISH contends it was required to establish the contract's validity prior to litigating the breach. *Id.* DISH thus reiterates that the lodestar amount should be enhanced because of OneBeacon's behavior and the results obtained. *Id.*

The court finds that all of the factors outlined by DISH to justify a lodestar enhancement are already subsumed in the lodestar. The rates DISH used to calculate the lodestar are rates paid to good, experienced attorneys, and the hours used to calculate the lodestar reflect the number of hours needed for these experienced attorneys to try a complex case and, if the case was meritorious in the first instance, achieve victory. DISH's motion, to the extent DISH requests a multiplier, is DENIED.

## D.   Conditional Attorneys' Fees

DISH requests conditional attorneys' fees in the event OneBeacon is unsuccessful in its appeal. Dkt. 420. DISH's request for conditional attorneys' fees is DENIED WITHOUT PREJUDICE for the reasons outlined in the court's order on the Welch Litigants' motion for fees.

### III. SUPPLEMENTAL ATTORNEYS' FEES

DISH timely filed its original motion for attorneys' fees on April 7, 2015. Dkt. 420. On April 14, 2015, OneBeacon filed a motion to alter judgment under Federal Rule of Civil Procedure

50 or for a new trial under Federal Rule of Civil Procedure 59 ("Motion to Alter Judgment").  Dkt.

425.  DISH responded to OneBeacon's motion on May 19, 2015.  Dkt. 432.  On May 29, 2015, DISH

filed its supplemental motion for attorneys' fees.  Dkt. 441.  The court denied OneBeacon's Motion

to Alter Judgment on July 17, 2015.  Dkt. 448.

DISH seeks a total of $205,412.11 in additional attorneys' fees, which includes $156,313.51

in fees billed by Coblentz Patch and $49,098.60 in fees billed by Gardere.[3]  Dkt. 441.  DISH asserts

that the vast majority of the supplemental fees it requests relate to DISH's motion for attorneys' fees

and the bill of costs and that such fees are recoverable.  *Id.* (citing *INS v. Jean*, 496 U.S. 154, 162

(1990)).  The remainder of the fees sought relate to analyzing and opposing the Motion to Alter

Judgment.  *Id.*  DISH concedes that Gardere's time working on the opposition to the Motion to Alter

Judgment mostly was spent on the validity of the *Stowers* demand, which is not recoverable.  *Id.*

DISH thus applied a 60% reduction to Gardere's fees for working on the response to the Motion to

Alter Judgment.  *Id.*  With regard to Coblentz Patch's time spent on the Motion to Alter Judgment,

DISH states that it segregated approximately $10,000 for time entries referencing non-recoverable

issues from the bills from early March 2015, and it reduced its fees by fifty percent, or $31,162.25,

from the date of OneBeacon's motion until DISH filed its opposition on May 19, 2015 to account

---

[3]   The total time billed by Gardere during this period times its billing rates equals
$122,746.50.  Dkt. 441, Cooper Dec. at 5.  Gardere arrived at the amount it requests by reducing
their bills by 60% to account for non-recoverable work.  *Id.* at 5–6.  Coblentz Patch's total fees
during this period total roughly $221,591.00.  Dkt. 441, Morgan Dec. at 2.  It initially reduced the
bills by $4,167.50 and segregated and excluded specific entries totaling $41,244.75.  It then applied
an overall 10% discount to its fees.  Additionally, it wrote off $4,307 solely for the purposes of its
supplemental motion for attorneys' fees.  *Id.*  One does not mathematically arrive at the total fee
request of $156,313.57 with these numbers, but it is a relatively close approximation.

for non-recoverable fees. *Id.* & Morgan Dec. ¶ 9. DISH then re-reviewed the bills and subtracted about 10% of the fees incurred for billing judgment. Dkt. 441 & Morgan Dec. ¶ 11.

OneBeacon argues that DISH's supplemental motion for fees, as to most of the fees requested, is untimely, as these fees were incurred before DISH filed its original motion for fees. Dkt. 444. Additionally, as to the fees on fees, OneBeacon contends that the court has discretion to deny fees on fees or substantially reduce them. *Id.* OneBeacon urges the court to do so, arguing that the fees are too high for the routine legal work needed to request fees. *Id.* OneBeacon proposes that the court award, at most, $62,310.85 for Coblentz Patch's fees incurred between April 14, 2015 and May 19, 2015, which is the amount billed for this time period minus $31,162.25—the amount DISH contends was spent working on matters relating to non-recoverable fees. *Id.* As far as Gardere, OneBeacon contends that $40,278 of Gardere's total $122,746.50 in fees were incurred prior to DISH filing its original motion for fees, and thus are waived and not recoverable. *Id.* The remaining fees are $82,468.50. OneBeacon asserts that a 60% reduction should be applied to all the remaining Gardere fees since Gardere asserted that a 60% across the board reduction was in order. *Id.* OneBeacon thus proposes that the court award $32,987.40 in fees (40% of $82,468.50) for Gardere's work performed during the supplemental period.

As to fees on fees, OneBeacon argues that the court should not award *any* fees on fees. *Id.* OneBeacon then argues that if the court does not completely deny the fees on fees, it should substantially reduce them because the hourly rates charged for these fees are too high for the simple legal tasks involved.[4] *Id.* Additionally, OneBeacon argues the fees-on-fees charges are out of line

---

[4] OneBeacon states that it did not oppose these rates in the original motion for fees because they were within reason given the nature of the issues in dispute and the attorneys' levels of experience, but that the attorneys' fees issues are not complex and did not require the work of highly

because DISH"s counsel spent a great deal of time arguing for an astronomical fee, including an upward adjustment, and it would not be just to require OneBeacon to pay for the time spent "attempting to gouge OneBeacon with such a large request for fees." *Id.* OneBeacon suggests that the court reduce the recoverable fees on fees by 65%. *Id.*

DISH replies that OneBeacon's waiver argument is wrong. Dkt. 447. DISH asserts that OneBeacon's Motion to Alter Judgment, which included a Rule 59 motion, was filed one week after DISH filed its original motion for attorneys' fees, and a Rule 59(e) motion resets the deadline for fees until fourteen days after the Rule59(e) motion is resolved. *Id.* DISH additionally argues that courts regularly entertain supplemental fee motions that seek fees on fees even if the supplemental motions are filed after the deadline. *Id.* DISH contends that it could have just included the fees-on-fees request in its reply to the original motion, but that it filed a new motion instead so that OneBeacon would have an opportunity to respond to the request. *Id.* It argues that it should not be penalized for giving OneBeacon this consideration. *Id.*

Under Federal Rule of Civil Procedure 54(d)(2)(B)(i), a motion for attorneys' fees should be filed "no later than 14 days after the entry of judgment." Fed. R. Civ. P. 54(d)(2)(B)(i). Here, the court extended that date by a week and ordered that the motions filed pursuant to Rule 54(d)(2) be filed by April 7, 2015. Dkt. 412. Under Rule 59(e), a "motion to alter or amend a judgment must be filed no later than 28 days after the entry of judgment." Fed. R. Civ. P. 59(e). Thus, motions for attorneys' fees are due under the rule, and under the amended deadline in this case, before the deadline for motions to alter or amend judgments. It only makes sense that fees incurred defending

---

paid partners (up to $615 for partners at Gardere and up to $770 for partners at Coblentz Patch). *Id.*

the judgment are recoverable if incurred after the original deadline but before the court rules on the motion to alter the judgment.

The parties here do not dispute that fees are recoverable for defending the judgment with regard to the claims for which fees are recoverable. The disagreement is whether DISH can recover for fees incurred prior to the date of the original motion for fees. The court finds that any fees that were incurred prior to the deadline the court set for attorneys' fees motions should have been included in the original motion. Any entitlement to fees dated prior to the date of the original motion that were not included in that motion has been waived.[5]

As to fees on fees, OneBeacon does not argue that DISH cannot recover fees on fees. Rather, it argues that the court has discretion to reduce or deny the fees and disputes that the rates charged are reasonable. First, under Texas law, a request for fees is not independent of the underlying claim. *Cessna Aircraft Co. v. Aircraft Network, LLC*, 345 S.W.3d 139, 146 (Tex. App.—Dallas 2011, no pet.) ("[A] claim for attorney's fees is not an independent cause of action; it is part of a successful party's remedy."). So, reasonable fees associated with seeking attorneys' fees for prosecuting a breach-of-contract claim are recoverable fees under Chapter 38 of the Texas Civil Practices and Remedies Code. *Id.*

Second, while the court agrees, to some extent, that the legal work performed in arguing for fees was less complex than the work performed prior to and during trial, it was necessary for the attorneys who were familiar with the work done to be extensively involved in the fee request.

---

[5] The court does not hold that this is a bright-line rule, as even OneBeacon concedes that fees incurred the day before and the day of the deadline are recoverable. But, in general, a deadline is a deadline, and parties should attempt to gather and request all fees incurred up to the date of the deadline or risk waiver.

OneBeacon has already acknowledged that the rates these experienced attorneys charged are not unreasonable.  The court thus finds the rates to be reasonable.

DISH's supplemental motion for fees is GRANTED IN PART and DENIED IN PART.  It is DENIED to the extent that DISH requests fees for work done prior to the court's original deadline for filing a motion for fees.  It is otherwise GRANTED.  The court AWARDS $95,298.25 ($62,310.85 + $32,987.40) in fees related to preparing the opposition to the motion to alter the judgment and in seeking fees on fees.

## IV. BILL OF COSTS

DISH seeks $108,369.16 in costs.  Dkt. 419.  OneBeacon contends that DISH seeks costs that are not recoverable in a bill of costs.  Dkt. 431.  Specifically, OneBeacon argues that the costs associated with the mediator fee, the costs of accessing PACER, and the cost of videotaping depositions that were also recorded stenographically are not recoverable.  *Id.*  Additionally, OneBeacon takes issue with the high copying costs.  *Id.*  In total, OneBeacon requests a $25,409.26 reduction in the amount DISH requests.  *Id.*  DISH responds that courts routinely award costs for most of the categories of costs about which OneBeacon complains.  Dkt. 438.

### A.    Legal Standard

"The district court has broad discretion in taxing costs, and [the Fifth Circuit] will reverse only upon a clear showing of abuse of discretion."  *Migis v. Pearle Vision, Inc.*, 135 F.3d 1041, 1049 (5th Cir. 1998).  Under Federal Rule of Civil Procedure 54(d)(1), costs "should be allowed to the prevailing party," with some exceptions.  Fed. R. Civ. P. 54(d)(1).  Under 28 U.S.C. § 1920, a "judge or clerk of any court in the United States may tax costs as the following:"

(1) Fees of the clerk and marshal;
(2) Fees for printed or electronically recorded transcripts necessarily obtained for use in the case;
(3) Fees and disbursements for printing and witnesses;
(4) Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case;
(5) Docket fees under section 1923 of this title;
(6) Compensation of court appointed experts, compensation of interpreters, and salaries, expenses, and costs of special interpretation services under section 1828 of this title.

28 U.S.C. § 1920.

## B.    Mediation Fees

DISH requests $1,650 in mediator fees.  In *Cook Children's Medical Center v. New England PPO Plan of General Consolidated Management, Inc.*, 491 F.3d 266, 276 (5th Cir. 2007), the Fifth Circuit stated that "mediation fees do not reasonably fit within the statutory language of § 1920(6) and instructed that "case law from [the Fifth Circuit] and other circuits does not support the taxation of mediation fees as costs under § 1920." *Id.* at 276–77.  DISH agrees in its reply that it is not entitled to the $1,650 incurred as a mediator's fee and withdraws its request.  Dkt. 438.  The court will thus deduct $1,650 from the bill of costs.

## C.    Costs of Accessing PACER

DISH seeks $1,471.26 in fees associated with accessing PACER.  Dkt. 419.  OneBeacon argues that courts "often" do not allow parties to recover PACER costs, and points out that the court should be particularly reticent to award PACER costs here because DISH did not specifically identify which documents were accessed, making it impossible to determine if the accessed documents were relevant to this case.  Dkt. 431.  OneBeacon additionally points out that all litigants who filed

appearances in this case were able to access the filed documents once for free, and if DISH's counsel failed to print or save the documents at that point, OneBeacon should not have to pay for it.  *Id.*

DISH points out that not all PACER documents were free because it was necessary to access document from the underlying cases.  Dkt. 438.  DISH notes that courts have rejected a burdensome requirement of making parties identify each document requested in favor of relying on the parties' declarations under penalty of perjury that the costs requested are correct and necessarily incurred. *Id.*

The parties have pointed to no Fifth Circuit authority that directly addresses whether PACER fees are recoverable under section 1920, and the court has found none.  District courts in this circuit are split on the issue.  *See Giner v. Estate of Higgins*, No. EP-11-CV-126-KC, 2012 WL 2397440, at *5 (W.D. Tex. June 22, 2012) (collecting cases).  The courts that do allow the costs generally find that PACER documents qualify as "copies" under subsection (4), and courts have found that it is not necessary to delineate why every photocopy is necessary because the party submitting the bill of costs attests that all costs were necessarily incurred.  *See id.*  The amount in dispute in *Giner* was $0.40, and the court held that the plaintiff was entitled to the $0.40 for obtaining a copy of an answer from PACER.  *Id.* at *6.  A subsequent case, *United States ex rel. DeKort v. Integrated Coast Guard Systems, LLC*, No. 3:06-cv-1792-O, 2013 WL 1890283, at *4 (N.D.Tex. Mar. 27, 2013), followed *Giner*.  In another recent case, *Maher v. Vaughn, Silverberg & Associates, LLP*, No. A-13-CA-543-SS, 2015 WL 1807056, at *4 (W.D. Tex. Apr. 20, 2015), the court reached the opposite conclusion. The *Maher* court considered whether to award $260.40 for accessing documents via PACER.  2015 WL 1807056, at *4.  The court noted that it appeared the fees related to searching for and accessing the documents rather than copying, and noted that the documents had not been specifically identified.

24

*Id.* The court held that the defendants failed to demonstrate that the PACER fees appropriately fell under "the costs of making copies" and did not allow the costs. *Id.*

Here, while it is possible that DISH incurred the $1,471.26 in PACER costs solely to obtain copies of documents in the underlying litigation that were not otherwise available to it, DISH has not adequately documented that PACER was used to obtain copies of documents in the underlying litigation as opposed to simply being used to more easily access copies of documents in the current case. *See* Dkt. 419, Ex. C (invoice showing "computerized research info - Pacer Service," the dates, and the price of each PACER access). The court agrees, to some extent, with the courts that have found that it is unnecessary to provide an itemized list of copies because the attorney completing the bill of costs attests that the "costs are correct and were necessarily incurred in this action." However, in some circumstances, such as when a party is requesting reimbursement for a nontraditional cost such as the PACER fees here, more proof is required, as what the requesting attorney deems necessary may not be considered necessary by the court.

OneBeacon's objection to the PACER fees is SUSTAINED.

**D.    Videotaping Depositions**

DISH requests $59,568.37 for videotapes of depositions. Dkt. 419 & Ex. A. OneBeacon contends that Texas courts do not award costs for both transcripts and videos of depositions unless the videos were actually used at trial. Dkt. 431. OneBeacon asserts that the costs for videos that were not used at trial is $19,694.25, and the court should deduct this amount from the costs awarded. *Id.* DISH argues that the costs associated with videotaping depositions are generally recoverable so long as the deposition could reasonably be expected to be used for trial preparation rather than

merely discovery.  Dkt. 438.  It points out that all of the witnesses except for one were on at least one party's witness or designation lists on the eve of trial.  *Id.*

Under 28 U.S.C. § 1920, a prevailing party may recover fees "for printed or electronically recorded transcripts necessarily obtained for use in the case."  While both types of transcripts are recoverable, the requesting party bears the burden of showing that the transcripts were obtained for use in the case.  *Nilesh Enters., Inc. v. Lawyers Title Ins. Corp.*, No. SA-08-CV-661-XR, 2010 WL 2671728, at *3 (W.D. Tex. July 1, 2010).

DISH cites *Baisden v. I'm Ready Productions, Inc.*, 793 F. Supp. 2d 970 (S.D. Tex. 2011) (Lake, J.), in which the court determined that the parties could recover costs for both stenographic and video versions of depositions.  In *Baisden*, the defendants argued that they only obtained video depositions of witnesses whose live attendance at trial was uncertain or whose credibility was disputed.  *Baisden*, 793 F. Supp. 2d at 977.  The court noted that the plaintiff did not dispute that the video depositions were only obtained for witnesses whose attendance at trial was uncertain or whose credibility was at issue, and the court concluded that the videotaped and stenographic versions of the depositions were thus necessarily obtained for use in this case and were taxable as costs.  *Id.* at 978.

Here, DISH does not assert that it was uncertain that the witnesses would be available or that there was any question as to their credibility.  It simply states that the videotaped deposition costs were reasonably necessary and points out that all of the witnesses deposed were either on the witness list or designation lists until the eve  of trial.  *See* Dkt. 438.  Certainly, if the videos were on designation lists until the eve of trial, there was clearly some concern that the witnesses would not be available for live testimony.  But DISH provides no breakdown of which witnesses were simply on witness lists as opposed to designation lists.  And it provides no argument as to why it needed

both a video deposition and a written transcript for witnesses that were simply expected to be called as live witnesses at trial.   OneBeacon's objection to $19,694.25 of the deposition costs is SUSTAINED.

### E.   Copy Costs

DISH seeks $25,937.53 in fees for photocopies.   Dkt. 419.   OneBeacon argues that DISH does not provide any substantiation for its claim that the copies were necessary for use in this litigation.   Dkt. 431.   OneBeacon points out that some of the copies may have been made merely for attorney convenience.   *Id.*   OneBeacon notes that DISH merely provides conclusory statements accompanying its receipts for copies that the copies were necessarily incurred to use in preparation for or during trial.   *Id.* (citing Dkt. 419-3 at 2).

DISH contends that it is not required under Fifth Circuit law to itemize the documents copied.   Dkt. 438.   DISH then points out that two of the invoices are clearly for copies of exhibits to be used at trial, and one of the invoices is for rental of a photocopier to be used in Houston for trial preparation.   *Id.*   DISH points out that it is seeking only a fraction of the actual copy costs it incurred during the four years of this litigation.   *Id.*

The court has reviewed the submitted invoices as well as the itemization document provided by DISH.   Dkt. 417, Ex. C.   While the itemization does not include what each and every document copied is, it is clear that these charges were necessarily incurred.   *See id.*   OneBeacon's objection is OVERRULED.

In sum, OneBeacon's objections to DISH's bill of costs are SUSTAINED IN PART and OVERRULED IN PART.   The objections to the $1,650 in mediation fees, the objection to $1,471.26 in PACER fees, and $19,694.25 for video depositions are SUSTAINED.   The objection to copy costs

27

is OVERRULED.  The costs requested, $108,369.16, minus the costs for which the court sustained objections, equals $85,553.65.

## V. CONCLUSION

DISH's motion for attorneys' fees (Dkt. 420) is GRANTED IN PART and DENIED IN PART.  DISH is hereby AWARDED $2,753,132.91 for the fees outlined in it original motion for attorneys' fees.

DISH's supplemental motion for fees (Dkt. 441) is GRANTED IN PART and DENIED IN PART.  DISH is hereby AWARDED $95,298.25 for the fees outlines in its supplemental motion for attorneys' fees.

OneBeacon's objections to the bill of costs are SUSTAINED IN PART and OVERRULED IN PART.  The court hereby TAXES $85,553.65 in costs.

It is so ORDERED.

Signed at Houston, Texas on August 31, 2015.

Gray H. Miller
United States District Judge